# **<u>EXHIBIT A</u>**



## LEVINE-PIRO LAW

**Melissa A. Levine-Piro, Esq.**
melissa@levinepirolaw.com

**Christopher R. Wurster, Esq.**
chris@levinepirolaw.com

**Alexandra D. Ressa, Esq.**
alexandra@levinepirolaw.com

**Amanda Castro, Esq.**
amanda@levinepirolaw.com

**Kathleen A. Murphy, Esq.**
katie@levinepirolaw.com

**Christine M. Boutin, Esq.**
Of Counsel
christine@levinepirolaw.com

163 Main Street
Maynard, MA
01754

(978) 637-2048
(978) 637-2182(f)

www.levinepirolaw.com

September 21, 2020

Civil Clerk's Office
Middlesex Superior Court
200 Trade Center
Woburn MA 01801-1812

RE:   **Bonifacio Sta Maria vs Target Corporation
        and Sedgwick Claims Management Services
        Civil Docket No.: 2081CV01494**

Dear Sir or Madam:

Enclosed please find the Returns of Service for the abovementioned matter.
Kindly file same.

If you should have any questions, please do not hesitate to contact our office.

Sincerely,

Debra Adley

Enc.

# Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2081 CV 01494

_Bonifacio Sta Mana_ , PLAINTIFF(S),

v. _Target Corporation and
Sedgwick Claims Management_ , DEFENDANT(S)
_Servnas, Inc._



### SUMMONS

THIS SUMMONS IS DIRECTED TO _Target Corporation_ . (Defendant's name)

**You are being sued.**  The Plaintiff(s) named above has started a lawsuit against you.  A copy of the
Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been
filed in the _Middlesex Superior_ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**  If you do not respond, the court may decide
   the case against you and award the Plaintiff everything asked for in the complaint.  You will also lose the
   opportunity to tell your side of the story.  You must respond to this lawsuit in writing even if you expect
   to resolve this matter with the Plaintiff.  **If you need more time to respond, you may request an
   extension of time in writing from the Court.**

2. **How to Respond.**  To respond to this lawsuit, you must file a written response with the court **and** mail a
   copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented).  You can do this by:

   a. Filing your **signed original** response with the Clerk's Office for Civil Business, _Middlesex Sup_ Court,
      _370 Jackson St. Lowell, MA_ (address), by mail or in person, **AND**

   b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following
      address: _Christopher Wurster, 163 Main St, Maynard, MA 01754_

3. **What to include in your response.**  An "**Answer**" is one type of response to a Complaint.  Your Answer
   must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.
   Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to
   use them in court.  If you have any claims against the Plaintiff (referred to as **counterclaims**) that are
   based on the same facts or transaction described in the Complaint, then you must include those claims
   in your Answer.  Otherwise, you may lose your right to sue the Plaintiff about anything related to this
   lawsuit.  If you want to have your case heard by a jury, you must **specifically** request a jury trial in your
   Answer or in a written demand for a jury trial that you must send to the other side and file with the
   court no more than 10 days after sending your Answer.  You can also respond to a Complaint by filing a
   "**Motion to Dismiss,**" if you believe that the complaint is legally invalid or legally insufficient.  A Motion
   to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.**  If
   you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions"
   described in the rules of the Court in which the complaint was filed, available at
   www.mass.gov.courts/case-legal-res/rules of court.

4.    **Legal Assistance.**  You may wish to get legal help from a lawyer.  If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.    **Required information on all filings:**  The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _June 30_, 20_20_.

_[signature]_

Michael A. Sullivan
Clerk-Magistrate

Note:  The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

**PROOF OF SERVICE**

I hereby certify and return that I served a copy of the within summons, together with a copy of the complaint in this action upon the within named defendant by:

☑ In hand service to: _SEQUEIRA LAVENDER - RECORDS_
☐ Accepted by an adult male/female over the age of 18
☐ Left at last & usual place of abode
☐ Copy mailed first class on:
To: _155 FEDERAL ST #700_
_BOSTON, MA   02110_

DATE OF SERVICE: _9-16-2020_

Signed under the penalties of perjury

_[signature]_
Robert Sweeney
CONSTABLE & PROCESS SERVER

☑ Motion _APPOINT SPECIAL PROCESS SERVER_
☐ Motion _FIRST AMENDED COMPLAINT_
☐ Motion _____
☐ Affidavit Disclosing Care or Custody Proceedings
☐ Public Assistance Affidavit
☐ Track Assignment Notice
☐ Exhibits
☐ Financial Statement
☐ Affidavit
☑ Other _CIVIL TRACKING COVER SHEET_
_TRACKING ORDER_

_TARGET CORP._

**N.B.    TO PROCESS SERVER:**

    PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH
    ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

_, 20___

## Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. _2081 CV 01494_

_Bonifacio Sta Maria_ , PLAINTIFF(S),

v. _Target Corporation and
Sedgwick Claims Management_ , DEFENDANT(S)
_Services, Inc._



**SUMMONS**

THIS SUMMONS IS DIRECTED TO _Sedgwick Claims Management_ . (Defendant's name)
_Services, Inc._

**You are being sued.**   The Plaintiff(s) named above has started a lawsuit against you.  A copy of the
Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been
filed in the _Middlesex Superior_ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.   **You must respond to this lawsuit in writing within 20 days.**  If you do not respond, the court may decide
the case against you and award the Plaintiff everything asked for in the complaint.  You will also lose the
opportunity to tell your side of the story.  You must respond to this lawsuit in writing even if you expect
to resolve this matter with the Plaintiff.  **If you need more time to respond, you may request an
extension of time in writing from the Court.**

2.   **How to Respond.**  To respond to this lawsuit, you must file a written response with the court **and** mail a
copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented).  You can do this by:

   a.   Filing your **signed original** response with the Clerk's Office for Civil Business, _Middlesex Sup_ Court,
_370 Jackson St., Lowell, MA_ (address), by mail or in person, **AND**

   b.   Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following
address: _Christopher Wurster, 163 Main St., Maynard, MA 01754_

3.   **What to include in your response.**  An **"Answer"** is one type of response to a Complaint.  Your Answer
must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.
Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to
use them in court.  If you have any claims against the Plaintiff (referred to as **counterclaims**) that are
based on the same facts or transaction described in the Complaint, then you must include those claims
in your Answer.  Otherwise, you may lose your right to sue the Plaintiff about anything related to this
lawsuit.  If you want to have your case heard by a jury, you must **specifically** request a jury trial in your
Answer or in a written demand for a jury trial that you must send to the other side and file with the
court no more than 10 days after sending your Answer.  You can also respond to a Complaint by filing a
**"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient.  A Motion
to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.**  If
you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions"
described in the rules of the Court in which the complaint was filed, available at
www.mass.gov.courts/case-legal-res/rules of court.

4. **Legal Assistance.** You may wish to get legal help from a lawyer.  If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _June 30_____, 20_20_.

_____

Michael A. Sullivan
Clerk-Magistrate

Note:  The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE

I hereby certify and return that I served a copy of the within summons, together with a copy of the complaint in this action upon the within named defendant by:

☑ In hand service to BERNARDO MONTINEZ- *RECORDS*
☐ Accepted by an adult male/female over the age of 18
☐ Left at last & usual place of abode
☐ Copy mailed first class on:_____
To: _84 STATE ST._____
_BOSTON MA 02129_
DATE OF SERVICE: _9-16-2020_

Signed under the penalties of perjury

_Robert Sweeney_
Robert Sweeney
CONSTABLE & PROCESS SERVER

☑ Motion _APPOINT Special Process Server_ *FIRST AMENDED COMPLAINT*
☐ Motion _____
☐ Motion _____
☐ Affidavit Disclosing Care or Custody Proceedings
☐ Public Assistance Affidavit
☐ Track Assignment Notice
☐ Exhibits
☐ Financial Statement
☐ Affidavit
☑ Other _CIVIL TRACKING COVER SHEET TRACKING NOTICE_

_SEDGWICK CLAIMS MGMT SERVICES, INC_

**PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

_____, 20____



CSC

**null / ALL**
**Transmittal Number: 22026730**
**Date Processed: 09/16/2020**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Leah Frederick |
| | Sedgwick Claims Management Services, Inc. |
| | 8125 Sedgwick Way |
| | Memphis, TN 38125-1128 |
| **Electronic copy provided to:** | Jonathan Garrett |
| | Lindsay Campbell |
| | Valerie Cadigan |
| | Heather Jackson |
| | Joshua Jimenez |

| | |
|---|---|
| **Entity:** | Sedgwick Claims Management Services, Inc. |
| | Entity ID Number  0527865 |
| **Entity Served:** | Sedgwick Claims Management Services, Inc. |
| **Title of Action:** | Bonifacio Sta Maria vs. Target Corporation |
| **Matter Name/ID:** | Bonifacio Sta Maria vs. Target Corporation  (10510131) |
| **Document(s) Type:** | Summons and Amended Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Middlesex County Superior Court, MA |
| **Case/Reference No:** | 2081CV01494 |
| **Jurisdiction Served:** | Massachusetts |
| **Date Served on CSC:** | 09/16/2020 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Christopher Wurster |
| | 978-637-2048 |
| **Client Requested Information:** | Claim Number(s): 000267465G-001 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

## Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2081 CV 01494

Bonifacio Sta Maria , PLAINTIFF(S),

v. Target Corporation and
Sedgwick Claims Management , DEFENDANT(S)
Services, Inc.

**SUMMONS**

THIS SUMMONS IS DIRECTED TO Sedgwick Claims Management . (Defendant's name)
Services, Inc.

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the
Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been
filed in the Middlesex Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide
    the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the
    opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect
    to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an
    extension of time in writing from the Court.**

2.  **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a
    copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

    a.  Filing your **signed original** response with the Clerk's Office for Civil Business, Middlesex Sup Court,
        370 Jackson St., Lowell, MA (address), by mail or in person, **AND**

    b.  Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following
        address: Christopher Wurster, 163 Main St., Maynard, MA 01754

3.  **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer
    must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.
    Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to
    use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are
    based on the same facts or transaction described in the Complaint, then you must include those claims
    in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this
    lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your
    Answer or in a written demand for a jury trial that you must send to the other side and file with the
    court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a
    **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion
    to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If
    you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions"
    described in the rules of the Court in which the complaint was filed, available at
    www.mass.gov.courts/case-legal-res/rules of court.

4.   **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.   **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on __June 30_____, 20 _20_.

_____
Michael A. Sullivan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on_____, 20 ___ , I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated:_____, 20 ____          Signature: _____

**N.B.      TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

9/16 _____, 20 _20_

# 1

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

MIDDLESEX SUPERIOR COURT
C.A. No:

|  |  |
|---|---|
| BONIFACIO STA MARIA, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>TARGET CORPORATION, )<br>)<br>    Defendant ) | 6/29/2020<br><br>NH<br><br>**RECEIVED** |

## COMPLAINT AND JURY CLAIM

### Parties

1. Plaintiff Bonifacio Sta Maria is a resident of Acton, Middlesex County, Massachusetts.

2. Defendant Target Corporation ("Target") is a corporation duly organized under the laws of the State of Minnesota, with a principal place of business located at 1000 Nicollet Mall, Minneapolis, Minnesota.

3. On or about July 15, 2017, Defendant Target Corporation operated a place of business located at 86 Orchard Hill Park Drive, Leominster, Worcester County, Massachusetts.

### Jurisdiction and Venue

4. Jurisdiction is properly conferred by M.G.L. c. 212 § 4 and c. 223A § 3.

5. Venue is properly laid in Middlesex County pursuant to M.G.L. c. 223 § 1 because Plaintiff lives in Middlesex County.

### Facts

6. On or about July 15, 2017, Bonifacio Sta Maria was lawfully on the premises of the Target Corporation place of business located at 86 Orchard Hill Park Drive, Leominster, Worcester County, Massachusetts (the "Store").

7. Mr. Sta Maria was lawfully on the premises of the Store in his capacity as a customer and/or business invitee of the Store.

8. While on the premises of the Store, Mr. Sta Maria slipped/tripped on, and/or was caused to fall by the presence of a dangerous defect and/or defective condition on the ground near the checkout area of the Store.

9. The dangerous defect and/or defective condition near the checkout area of the Store was directly in a pathway used by customers of the Store and in an area frequently monitored by numerous Target Corporation employees.

10. As a result of the fall, Mr. Sta Maria was caused to suffer severe injuries of body and mind, was forced to seek medical treatment, incurred medical expenses, lost substantial wages, and was prevented from carrying out his usual activities for a long period of time.

11. By operating the Store in an unsafe manner as described above, Target Corporation engaged in unfair and deceptive trade practices.

## COUNT I - NEGLIGENCE

12. The Plaintiff repeats the allegations set forth in the preceding paragraphs of this Complaint as if set forth herein.

13. On or about July 15, 2017, and at all times pertaining to this Complaint, Defendant Target Corporation, was the owner, the entity in control, and/or the entity responsible for the maintenance of the location in which Mr. Sta Maria fell.

14. On or about July 15, 2017, and at all times pertaining to this Complaint, Defendant Target Corporation, had a duty to maintain the location in which Mr. Sta Maria fell in a safe manner and to keep it free from defects and hazards.

15. Defendant Target Corporation was negligent in its failure to maintain in a safe manner the location in which Mr. Sta Maria fell.

16. Defendant Target Corporation was negligent in its failure to correct or to warn Mr. Sta Maria of the presence of the dangerous and defective condition that caused Mr. Sta Maria to fall.

17. Defendant Target Corporation knew or should have known of its failure to maintain safely and properly the location in which Mr. Sta Maria fell, thereby creating an unreasonable danger to Mr. Sta Maria.

18. On or about July 15, 2017, Mr. Sta Maria sustained injuries due the negligent failure of Defendant Target Corporation to maintain safely and properly the location in which Mr. Sta Maria fell.

19. As a direct and proximate result of the negligence of Defendant Target Corporation, Mr. Sta Maria, when he fell, was caused to suffer severe injuries of body and mind, was forced

to seek medical treatment, incurred medical expenses, lost wages, and was prevented from carrying out his usual activities for a long period of time.

## COUNT II – VIOLATION OF M.G.L. c. 93A

20. The Plaintiff repeats the allegations set forth in the preceding paragraphs of this Complaint as if set forth herein.

21. Defendant Target Corporation operated the Store in an unsafe manner, leading to Mr. Sta Maria's injuries, as described above.

22. Plaintiff has satisfied all requirements of the presentment of a claim under M.G.L. c. 93A by sending to Target Corporation a demand letter, dated April 15, 2020, pursuant to that statute (a copy of which is attached as Exhibit 1). To date, Target Corporation has failed to respond properly in writing to the 93A demand letter or otherwise make a reasonable offer of settlement.

23. The acts of Defendant Target Corporation were unfair and deceptive acts in violation of M.G.L. c. 93A.

24. The acts of Defendant Target Corporation were willful and knowing acts in violation of M.G.L. c. 93A.

25. Plaintiff has been damaged as a direct and proximate result of these actions.

**WHEREFORE,** Plaintiff prays that this Honorable Court grant the following relief:

I.    Judgment against the Defendants jointly and severally;

II.   Restitution for all unpaid wages owed to Plaintiff by Defendants;

III.  Multiple damages and attorney's fees and costs attributable to the Defendant's violations of M.G.L. c. 93A;

IV.   Costs and disbursements of suit;

V.    All reasonable attorney's fees incurred in bringing suit;

VI.   Pre-judgment and post-judgment interest;

VII.  Appropriate injunctive, declaratory and other equitable relief; and

VIII. Such other relief as this Honorable Court may deem just and appropriate under the circumstances.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: 6/29/2020                    The Plaintiff,
                                    BONIFACIO STA MARIA,
                                    By His Attorney,


                                    /s/ Christopher Wurster
                                    Christopher Wurster, Esq. (BBO #679835)
                                    Levine-Piro Law, P.C.
                                    163 Main Street
                                    Maynard, MA 01754
                                    978-637-2048
                                    Fax 978-737-2182
                                    chris@levinepirolaw.com

# EXHIBIT 1



# LEVINE-PIRO
# LAW

**Melissa A. Levine-Piro, Esq.**
melissa@levinepirolaw.com

**Christopher R. Wurster, Esq.**
chris@levinepirolaw.com

**Alexandra D. Ressa, Esq.**
alexandra@levinepirolaw.com

**Amanda Castro, Esq.**
amanda@levinepirolaw.com

**Kathleen A. Murphy, Esq.**
katie@levinepirolaw.com

**Christine M. Boutin, Esq.**
Of Counsel
christine@levinepirolaw.com

**Jared J. Kelly, Esq.**
jared@levinepirolaw.com

163 Main Street
Maynard, MA
01754

(978) 637-2048
(978) 637-2182(f)

www.levinepirolaw.com

April 15, 2020

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Target
86 Orchard Hill Park Drive
Leominster, MA 01453

RE:    My Client:       Bonifacio Sta Maria
         Date of Loss:     7/15/2017

To Whom It May Concern:

As you know, Levine-Piro Law, P.C. represents Mr. Bonifacio Sta Maria in his claim for personal injuries stemming from a fall that occurred on July 15, 2017 at the Target store in Leominster, Massachusetts. This letter is a demand for settlement, sent pursuant to the Massachusetts Consumer Act, M.G.L. c. 93A, §9.

Your failure to make a reasonable, written tender of relief within **thirty (30)** days of this demand may result in Target's liability for multiple damages, costs, and reasonable attorney's fees.

Attached, please find a copy of the demand letter I am sending to Sheryl Bruce at Sedgwick CMS, your insurance carrier or third-party administrator. That letter is incorporated herein by reference. Target's violations of Chapter 93A are spelled out in the demand to Ms. Bruce. The medical records and bills referenced in that letter are available to you upon request, and they are being provided to Ms. Bruce.

For the reasons enumerated in my letter to Ms. Bruce, demand is made in the amount of $300,000.00. Please respond with a reasonable offer of settlement within thirty (30) days, in compliance with Chapter 93A.

Sincerely,

Christopher Wurster

Christopher R. Wurster, Esq.

CC: Sheryl Bruce (by e-mail_



# LEVINE-PIRO
# LAW

Melissa A. Levine-Piro, Esq.
melissa@levinepirolaw.com

Christopher R. Wurster, Esq.
chris@levinepirolaw.com

Alexandra D. Ressa, Esq.
alexandra@levinepirolaw.com

Amanda Castro, Esq.
amanda@levinepirolaw.com

Kathleen A. Murphy, Esq.
katie@levinepirolaw.com

Christine M. Boutin, Esq.
Of Counsel
christine@levinepirolaw.com

Jared J. Kelly, Esq.
jared@levinepirolaw.com

163 Main Street
Maynard, MA
01754

(978) 637-2048
(978) 637-2182(f)

www.levinepirolaw.com

April 15, 2020

**VIA E-MAIL AND PRIORITY MAIL**

Shery Bruce
Sedgwick Claims Management Services
P.O. Box 14453
Lexington, KY 40512-4453
Sheryl.Bruce@sedgwickcms.com

RE:  My Client:      Bonifacio Sta Maria
     Claim No.:      000267465G-001
     Your Insured:   Target Corporation
     Date of Loss:   7/15/2017

Dear Ms. Bruce:

As you know, Levine-Piro Law, P.C. represents Mr. Bonifacio Sta Maria in his claim for personal injuries stemming from a fall that occurred on July 15, 2017 at the Target store in Leominster, Massachusetts. This letter is a demand for settlement, sent pursuant to the Massachusetts Consumer Act, M.G.L. c. 93A, §9.

Your failure to make a reasonable, written tender of relief within **thirty (30) days** of this demand may result in Target's liability for multiple damages, costs, and reasonable attorney's fees.

I am sending you the following documents in hard copy and by secure download.

1. Guest Incident Report regarding 7/15/17 incident (dated 7/17/17);
2. Guest receipt dated 7/15/17 at 2:09PM;
3. Emerson Hospital medical records, 1/1/17-6/28/18;
4. Emerson Hospital medical records 6/28/18-10/19/19;
5. Emerson Hospital medical bills 1/1/17-6/28/18;
6. Emerson Hospital medical bills 6/28/18-10/19/19;
7. Acton Medical Associates medical records, 1/1/17-6/27/18;
8. Acton Medical Associates medical records, 6/27/18-4/1/19;
9. Acton Medical Associates medical records, 7/20/18-11/5/19;
10. Acton Medical Associates medical bills, 1/1/17-6/27/18;
11. Acton Medical Associates medical bills, 6/27/18-4/1/19;
12. Acton Medical Associates medical bills, 7/20/18-11/5/19;
13. Barron Chiropractic medical records 12/22/17-4/8/19;

1

14. Barron Chiropractic medical records, 3/16/19-10/21/19;
15. Barron Chiropractic medical bills 12/22/17-4/8/19;
16. Barron Chiropractic medical bills, 3/16/19-10/21/19;
17. Katherine Imhoff, LMHC, medical records and bills 10/18/17-8/24/18;
18. Katherine Imhoff, LMHC, medical records and bills, 8/24/18-4/1/19
19. Employment and wage information

## I.   Background

On July 15, 2017, Mr. Sta Maria was at the Target store in Leominster, Massachusetts with his young daughter. Near the check-out area, Mr. Sta Maria slipped on water on the floor. At the time, he was holding his daughter. He briefly lost consciousness as a result of the fall. His daughter remained conscious, witnessing her father's fall and resulting loss of consciousness. It was terrifying for Mr. Sta Maria to go through this incident and realize that his daughter could have been injured as well.

Mr. Sta Maria describes hearing a sound when he hit the floor and feeling like his head had exploded. After he regained consciousness, his vision was blurry and he heard ringing in his ears. He could not immediately get up; he had to lay on the floor for several moments.

Mr. Sta Maria stated that, when he regained consciousness, he noticed that the area where he fell was wet, and there was a large area of wet floor that looked like it had been improperly mopped. The floor in the store was very smooth tile, meaning that a wet floor was particularly dangerous. Mr. Sta Maria, at the time of the incident, was wearing black work boots, so he had good traction, underscoring how slippery the floor in the store was.

After the fall, Mr. Sta Maria was helped by another customer. Target staff did not immediately attend to Mr. Sta Maria and only assisted him after he had already sat up and then stood up with the assistance of the other customer. Staff did not offer to fill out an incident report. Two days later, on July 17, 2017, at the urging of his sister, Mr. Sta Maria returned to Target to request that an incident report be filled out. The incident report confirms the above-mentioned details.

It is indisputable that this fall occurred as a result of the negligence of your insured, Target Corporation. Simply put, there was water on the floor in a commercial store. This should never have occurred. Moreover, there was no "wet floor" sign or other warning to customers regarding this danger. This water was near the check-out area, a high-traffic area of the store with many Target staff members available who should have seen this hazard. Accordingly, Target knew or should have known about the existence of this hazard.

2

## II.    Damages

**Acton Medical Associates**

Just a few days after the fall at Target, on July 18, 2018, Mr. Sta Maria reported to his primary care physician at Acton Medical Associates. Mr. Sta Maria "reported hearing a loud smack noise from the back of his head. He woke up a few second later surrounded by other people. . . . He noticed later in the day that he felt a slight forgetfulness [and] continued to have a mild sense of mental fog and fatigue." He also developed pain in his right trapezius, right elbow, right wrist and neck. Mr. Sta Maria was diagnosed with a concussion, acute neck pain, and right wrist pain. Records stated that "after mechanical fall and loss of consciousness very briefly, patient has been experiencing symptoms consistent with concussion." Note that Mr. Sta Maria had been to Acton Medical for a general health exam approximately one month earlier, where he received an essentially clean bill of health and was not experiencing any of the issues that he began suffering from after the fall nor did he have a history of any such issues.

Mr. Sta Maria was seen again at Acton Medical on July 21, 2017 for a follow up for his concussion and other injuries. Because his symptoms were not improving as quickly as expected, Mr. Sta Maria was referred to the Cantu Concussion Center.

At a follow up visit on September 7, 2017, Mr. Sta Maria reported ongoing headaches, symptoms of depression, and poor energy, as well as continued scapular, neck, elbow, and wrist pain. He was prescribed Amitryptiline.

Mr. Sta Maria had another follow up appointment on October 12, 2017. Headaches were improved with Amitryptiline, but Mr. Sta Maria was experiencing ongoing scapular pain. He was referred to Occupational Therapy.

On January 5, 2018, Mr. Sta Maria reported increased symptoms of depression, related to his concussion and resulting loss of employment. He had lost his job because he was unable to work due to his concussion symptoms. In addition to anxiety, difficulty sleeping, and decreased appetite, Mr. Sta Maria was also experiencing physical symptoms from his concussion. He was still enduring headaches and difficulty concentrating as well as neck pain.

Mr. Sta Maria had an evaluation on July 20, 2018, which noted headaches, depressed mood associated with post-concussive symptoms, difficulty with concentration and short-term memory. He was also experiencing upper back and neck symptoms and pain and tingling in his left arm. Mr. Sta Maria followed-up regarding his depression on August 17, 2018.

3

On September 28, 2018, Mr. Sta Maria again reported to Acton Medical. His mood was noted to be improving on Duloxetine, but he was still experiencing neck pain, headaches, and dizziness. While he was able to work, at times, his pain would flare up.

On December 12, 2018, Mr. Sta Maria returned to Acton Medical with continued anxiety and depression, problems sleeping, difficulty concentrating, neck pain and left post scalp pain, irritability, and anger. He was noted to be meditating several times per week to help with his symptoms.

Mr. Sta Maria reported to Acton Medical again on February 1, 2019. He had experienced no major improvement in pain in myofascial area/neck but was experiencing less irritability and more calm.

On October 18, 2019, Mr. Sta Maria reported to Acton Medical for a general health evaluation. He was diagnosed with ongoing chronic neck and lower back pain and post-concussive syndrome with mood symptoms.

**Cantu Concussion Center at Emerson Hospital**

Mr. Sta Maria was first seen at the Cantu Concussion Center on August 1, 2017 for symptoms beginning after his fall at Target. Immediately after the fall, Mr. Sta Maria felt wrist and neck pain, as well as confusion. On the date of his initial evaluation, Mr. Sta Maria reported balance issues, confusion, difficulty concentrating and remembering, dizziness, bell rung, drowsy, fatigue, feeling in a fog, feeling more emotional, feeling slowed down, headache, irritability, nausea, neck pain, nervousness, numbness, ringing in ears, sadness, sensitivity to light and noise, and sleeping problems. His head pain was at a 10/10. He reported "constant" neck pain that occasionally radiated into his right shoulder with numbness and tingling down to his right hand. Mr. Sta Maria's family reported that he was often repeating things. He was feeling anxious and sad with flashbacks to the fall. Mr. Sta Maria was diagnosed with a concussion with loss of consciousness, cervicogenic headaches, and neck pain.

At another visit on August 29, 2017, Mr. Sta Maria reported "little improvement." In fact, his headaches had worsened. In addition, Mr. Sta Maria reported severe neck pain with constant numbness and tingling down the right arm into all fingers. Mr. Sta Maria was now remaining out of work because his employer was unable to grant the accommodations his doctor had recommended. Additionally, Mr. Sta Maria reported blurred vision occasionally when reading, difficulty sleeping, depression, and anxiety. He had no previous history of depression or anxiety.

On October 10, 2017, Mr. Sta Maria reported some improvement, including in the frequency of his headaches, which were no longer constant. Neck pain had improved, but there was no

4

change in the numbness and tingling down his right arm into his right hand. Mr. Sta Maria was still out of work and unable to return to work. Mr. Sta Maria had another follow up appointment on October 17, 2017, where return to work was discussed, but he and his providers decided he was not yet ready.

Injections

On November 14, 2017, Mr. Sta Maria returned to the Cantu Center. He had had cervical spine injections since his previous appointment. His symptoms had worsened since his previous visit and included confusion, difficulty concentrating and remembering, dizziness, bell rung, drowsy, fatigue, feeling in a fog, feeling more emotional, feeling slowed down, headaches, irritability, nausea, neck pain, nervousness, numbness, ringing in the ears, sadness, sensitivity to light and noise, sleeping problems, and visual problems. Mr. Sta Maria had been discharged from physical therapy because there was no marked improvement in neck pain.

On December 12, 2017, Mr. Sta Maria reported improvement in his concussion symptoms but continued severe neck pain. While his neck pain had initially improved, it subsequently worsened; Mr. Sta Maria rated it as 8/10 with tingling down his left arm. He noted that he was very anxious and depressed about his continued neck pain and consequently was seeing a therapist regularly. Mr. Sta Maria was discharged on this date from the Concussion Clinic.

**Spine Clinic at Emerson Hospital**

On September 11, 2017, Mr. Sta Maria was seen at the Emerson Hospital Spine Clinic at the request of both the Cantu Concussion Center and his primary care physician, Dr. Girolamo. Dr. Arthur Lee noted that Mr. Sta Maria had been experiencing neck pain and cervicogenic headaches since his fall at Target. He was also suffering from left arm pain and right-hand numbness at times. Dr. Lee diagnosed post-concussive syndrome and possible cervical radiculopathy, as well as axial pain and cervicogenic headaches.

On October 5, 2017, Mr. Sta Maria reported to the Spine Clinic again. He reported continued cervical axial neck pain and headaches. His range of motion was "extremely limited," with pain at a 7 out of 10. Reviewing MRIs that had recently been performed, Dr. Lee noted disc herniations with mild impingement on the nerve roots. Dr. Lee recommended cervical facet injections.

Mr. Sta Maria had his first round of injections on October 20, 2017. He returned to Dr. Lee on November 2, 2017, with pain at a level 7 out of 10. Dr. Lee noted that Mr. Sta Maria had done well from the cervical injections, with about 60% improvement for about a week, but he had slowly started returning to baseline. Dr. Lee recommended another round of injections.

5

Mr. Sta Maria had another round of injections on December 1, 2017. He returned to Dr. Lee on December 14, 2017, with significant pain and multiple ADLs limited. His headaches were improved, but he was still experiencing neck pain and myofascial pain along the midline in the cervical spine. He recommended trigger point injections with Dr. Spinelli.

On January 3, 2018, Mr. Sta Maria reported to Dr. Spinelli in the Emerson Spine Program. Dr. Spinelli noted that Mr. Sta Maria's symptoms began after he fell at a Target store in July 2017. "He has been symptomatic ever since with bilateral neck pain and headaches. Pain is described as 7/10, sharp, aching, worse with increased activity in general." His "symptoms decrease function, quality of life, ability to perform activities of daily living." Dr. Spinelli stated that "his ongoing neck pain with headaches may be from chronic muscle spasm," and trigger point injections were performed.

Mr. Sta Maria returned to Dr. Spinelli on April 12, 2018 for continued bilateral neck pain and headaches. Dr. Spinelli noted that Mr. Sta Maria "has returned to work without restrictions despite the pain."

At this visit, Dr. Spinelli noted the following: "His ongoing neck pain with headaches may be from chronic muscle spasm. It could also be due to the . . . mild to moderate degenerative changes seen on MRI. Symptoms began after his fall at Target . . . and he has been symptomatic ever since. He was asymptomatic before the fall. He has tried numerous treatments to include giving things time, physical therapy, chiropractic, cervical facet injections, trigger point injections, but he remains symptomatic. At this point, I think it is reasonable to say that he has reached maximum medical improvement." At this time, Mr. Sta Maria had returned to work; Dr. Spinelli noted that "while this may cause some . . . increase in symptoms, I do not believe he is damaging his spine."

Mr. Sta Maria returned to the Spine Clinic on May 15, 2019. Dr. Spinelli noted that Mr. Sta Maria continued to be symptomatic despite multiple interventions. Dr. Spinelli recommended trigger point injections, which were performed on May 28, 2019 without significant benefit. Mr. Sta Maria followed up with Dr. Spinelli on June 24, 2019 and had another round of trigger point injections on July 18, 2019.

**Physical and Occupational Therapy at Emerson Hospital**

<u>Physical Therapy</u>

Mr. Sta Maria also did physical therapy at Emerson Hospital, beginning with an initial evaluation on August 8, 2017. Mr. Sta Maria was noted to have experienced confusion, dizziness, fogginess, and right upper extremity numbness following his fall at Target. His neck pain had increased since the fall. At a follow-up visit on August 16, 2017, Mr. Sta Maria

6

displayed balance deficits and visual blurriness. He also reported vertigo, ringing in his ears, nausea, headaches, concentration problems and memory loss.

Mr. Sta Maria was re-evaluated on September 21, 2017, with some improvement. On September 26, 2017, clinicians noted that Mr. Sta Maria's cervical pain was improved, but his radicular symptoms were unchanged. On October 11, 2017, it was noted that Mr. Sta Maria had been considering returning to work for financial reasons, not medical reasons, but ultimately had concluded that his pain levels were too high to work at that time.

On November 3, 2017, Mr. Sta Maria was discharged from PT. While he had made some improvements, his neck and low back pain had increased towards the end of his course of PT, and as a result, he was discharged due to lack of progress/regressions with cervical pain.

Between his initial evaluation on August 8, 2017 and his discharge on November 3, 2017, Mr. Sta Maria had 16 sessions of physical therapy.

<u>Occupational Therapy</u>

At the recommendation of his other providers, Mr. Sta Maria pursued occupational therapy services, also at Emerson Hospital, beginning with an initial evaluation on September 11, 2017. At this time, clinicians noted decreased grip strength, pinch strength of right upper extremity and localized elbow and wrist pain. OT was recommended to address right elbow and wrist pain, with continued PT to address cervical and radiating symptoms as well as the concussion. At this evaluation, Mr. Sta Maria was noted to be unable to lift or carry his daughter, lift or carry groceries or heavier items, push heavy doors, or push himself up. Mr. Sta Maria was given exercised to do at home to help his symptoms.

On October 26, 2017, clinicians noted increased grip strength in right elbow flexion but decreased grip with elbow in extension. His pain was lower, but still at a 5 out of 10. He was able to carry his daughter at this time, but only for periods of 5 minutes at a time.

Mr. Sta Maria had eight sessions of OT between his initial evaluation on September 11, 2017 and his final appointment on October 26, 2017.

**Barron Chiropractic**

Mr. Sta Maria pursued chiropractic treatment at Barron Chiropractic & Wellness Center, beginning with an initial evaluation on December 22, 2017 to address neck pain, shoulder pain, and back pain. Of note, Dr. Barron noted that Mr. Sta Maria presented with "visible anxiety and depression," which had only manifested since the fall and concussion. He reported difficulty with lifting, bending over, reaching overhead.

7

On December 27, 2018, Mr. Sta Maria rated his upper back/neck pain at an 8 out of 10, and chest discomfort at an 8 out of 10. Dr. Barron gave Mr. Sta Maria an impairment rating of 5-8%. His initial neck pain disability index score was 72%.

Mr. Sta Maria continued with significant pain for subsequent visits. For example, on March 16, 2018, Mr. Sta Maria rated his neck pain as 8 out of 10, his chest pain as 8 out of 10, and his upper back pain as 7 out of 10. On May 25, 2018, Mr. Sta Maria rated his neck pain as a 9; chest pain as an 8; upper back pain as an 8; and trapezius pain as an 8. Dr. Barron indicated his progress was "very slow." These pain levels continued for the majority of his chiropractic care, underscoring the severity of his condition.

Between his initial evaluation on December 22, 2017 and a re-evaluation on December 7, 2018, Mr. Sta Maria's neck pain disability index score only improved from 72% to 68%. Mr. Sta Maria remained in treatment with only modest benefits.

Mr. Sta Maria is still in treatment with Dr. Barron. At the time records were obtained on in October 2019, Mr. Sta Maria had seen Dr. Barron for forty (54) sessions since his first appointment on December 22, 2017.

### Mental Health Counseling – Katherine Imhoff, LMHC

Mr. Sta Maria has seen Katherine Imhoff, LMHC for counseling services since October 18, 2017, for symptoms related to his fall at Target. Initially, Ms. Imhoff diagnosed Mr. Sta Maria with unspecified anxiety disorder and major depressive disorder due to his fall. His initial symptoms included sleeping problems, anxiety, and depressive symptoms, including depressed mood, sadness, and irritability, all revolving around the fall and not being able to work. In January 2018, Ms. Imhoff changed Mr. Sta Maria's diagnosis to Posttraumatic Stress Disorder (PTSD) due to Mr. Sta Maria's symptoms including anger and thinking about the fall over and over.

In the winter of 2018, Mr. Sta Maria became more depressed and anxious. His primary care provider prescribed Duloxetine.

Mr. Sta Maria's therapy sessions centered exclusively around his fall and how that impacted his life, work, and relationships.

### Lost Wages

At the time of the collision, Mr. Sta Maria was employed full-time as a CNA at Life Care Center of Acton with a wage of $17.04/hour. Mr. Sta Maria averaged 37.5 hours per week prior to the accident.

8

Due to his injuries, Mr. Sta Maria missed 22.14 weeks of work from July 30, 2017 through February 2, 2018.

25.43 weeks x 37.5 hours x $17.04/hour = $16,249.77 in lost wages

Additionally, I must note that Mr. Sta Maria was actually temporarily terminated by Life Care Center of Acton because he had been out of work so long due *solely* to his injuries from this fall. I spoke directly with Life Care to get Mr. Sta Maria's job back, but the stress and anxiety caused by this incident were significant and added to Mr. Sta Maria's pain and suffering. In short, due to the negligence of your insured, Mr. Sta Maria not only could not work, he was then terminated because he had been out on leave for so long.

1. **Economic Damages**

    **Medicals**
    | | | |
    |---|---|---|
    | Emerson Hospital | | $30,117.86 |
    | Acton Medical | | $3,108.00 |
    | Barron Chiro | | $7,013.00 |
    | K. Imhoff | | $3,600.00 |
    | CVS (Prescriptions) | | $257.91 |
    | | Total | $44,096.77 |

    **Lost Wages**            **$16,249.77**

    **TOTAL ECONOMIC DAMAGES**       **$60,346.54**

2. **Non-Economic Damages**

    **Pain & suffering/limitation of activities**   **$239,653.46**

    **TOTAL DEMAND: $300,000.00**

III. **Conclusion**

Liability is clear in this case. My client slipped and fell on a water in the busiest area of a commercial store, an area with the most staff around but no signs or other warnings telling customers to be careful of the wet floor.

Mr. Sta Maria's resulting injuries were severe. He was diagnosed with a concussion, which brought with it wide-ranging symptoms including headaches, memory and concentration issues, vision problems, and psychiatric symptoms. In addition, my client had severe neck,

9

back, and shoulder pain, which necessitated physical therapy and chiropractic treatment, the latter of which is still ongoing. In the years that Mr. Sta Maria has been in chiropractic treatment, his neck pain has only improved slightly. Additionally, Mr. Sta Maria injured his elbow and wrist, requiring occupational therapy services. My client was dealing with significant symptoms that impacted every aspect of his life.

Mr. Sta Maria's neck and back pain is so severe that he has had to try a variety of interventions, all with little to no long-term improvement.

In short, as a result of the fall, Mr. Sta Maria was simply unable to do the things he was normally accustomed to doing.

This includes work. At the time of the fall, Mr. Sta Maria was working as a CNA in a nursing home. Due to the fall, Mr. Sta Maria was out of work for approximately six months. Additionally, Mr. Sta Maria had to deal with the stress of being terminated (temporarily, until I intervened).

Mr. Sta Maria also experienced a variety of psychiatric symptoms, including depression, anxiety, and PTSD, as a result of the fall and resulting concussion. These issues have necessitated significant ongoing counseling services.

It is difficult to put into words the extent to which this fall upended my client's entire life. This is a case where pain and suffering was, and is, clear. Demand is therefore made in the amount of $300,000.00. Please respond with a reasonable offer of settlement within thirty (30) days, in compliance with Chapter 93A.

Sincerely,

Christopher R. Wurster, Esq.

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

CHRISTOPHER WORSTER
LEVINE PIRO LAW
163 MAIN ST.
MAYNARD, MA 01754

6020200917016688

000267465G0001

9/17/2020 12:00:00 AM

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

TARGET
64 ORCHARD HILL PARK DR
LEOMINSTER, MA
01453

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X S. TOWNSEND C19                    ☐ Agent
                                     ☑ Addressee

B. Received by (Printed Name)        C. Date of Delivery
06 #16 C19                           4/1/20

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☐ Certified Mail®          ☐ Priority Mail Express™
☐ Registered              ☐ Return Receipt for Merchandise
☐ Insured Mail            ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)

7019 0700 0001 7250 4887

PS Form 3811, July 2013          Domestic Return Receipt

6020200917016688

000267465G0001

9/17/2020 12:00:00 AM

4

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

MIDDLESEX SUPERIOR COURT
C.A. No: 2081CV01494

BONIFACIO STA MARIA, )
)
    Plaintiff, )
)
v. )
)
TARGET CORPORATION AND )
SEDGWICK CLAIMS MANAGEMENT )
SERVICES, INC., )
)
    Defendant )
)

**9/2/2020**

**RECEIVED**

### FIRST AMENDED COMPLAINT AND JURY CLAIM

#### Parties

1. Plaintiff Bonifacio Sta Maria is a resident of Acton, Middlesex County, Massachusetts.

2. Defendant Target Corporation ("Target") is a corporation duly organized under the laws of the State of Minnesota, with a principal place of business located at 1000 Nicollet Mall, Minneapolis, Minnesota.

3. Defendant Sedgwick Claims Management Services, Inc. ("Sedgwick") is a corporation duly organized under the laws of the State of Tennessee, with a principal place of business located at 8125 Sedgwick Way, Memphis, Tennessee.

4. On or about July 15, 2017, Defendant Target Corporation operated a place of business located at 86 Orchard Hill Park Drive, Leominster, Worcester County, Massachusetts.

#### Jurisdiction and Venue

5. Jurisdiction is properly conferred by M.G.L. c. 212 § 4 and c. 223A § 3.

6. Venue is properly laid in Middlesex County pursuant to M.G.L. c. 223 § 1 because Plaintiff lives in Middlesex County.

#### Facts

7. On or about July 15, 2017, Bonifacio Sta Maria was lawfully on the premises of the Target

AJ

Corporation place of business located at 86 Orchard Hill Park Drive, Leominster, Worcester County, Massachusetts (the "Store").

8. Mr. Sta Maria was lawfully on the premises of the Store in his capacity as a customer and/or business invitee of the Store.

9. While on the premises of the Store, Mr. Sta Maria slipped/tripped on, and/or was caused to fall by the presence of a dangerous defect and/or defective condition on the ground near the checkout area of the Store.

10. The dangerous defect and/or defective condition near the checkout area of the Store was directly in a pathway used by customers of the Store and in an area frequently monitored by numerous Target Corporation employees.

11. As a result of the fall, Mr. Sta Maria was caused to suffer severe injuries of body and mind, was forced to seek medical treatment, incurred medical expenses, lost substantial wages, and was prevented from carrying out his usual activities for a long period of time.

12. By operating the Store in an unsafe manner as described above, Target Corporation engaged in unfair and deceptive trade practices.

13. At all times material to this Complaint, Sedgwick has served as a "third party administrator" handling claims against Target Corporation, a self-insured entity.

14. To effectuate settlement of his claim, Mr. Sta Maria, through counsel, sent a demand letter, dated April 15, 2020, to Target (a copy of which is attached as Exhibit A).

15. Mr. Sta Maria also sent a demand letter to Sedgwick at this time, clearly outlining a basis for Target's liability and the extent of Mr. Sta Maria's injuries caused by his fall at Target. This demand letter included medical records from Mr. Sta Maria's primary care provider, dated from just prior to the fall at Target, showing that, prior to the fall, Mr. Sta Maria had a clean bill of health and was not experiencing any of the issues that he began suffering from after the fall, nor did he have a history of any such issues.

16. Despite this, on June 9, 2020, Sedgwick informed Mr. Sta Maria, through counsel, that it required medical records from three years prior to the fall at Target to complete its evaluation of the claim.

17. As a result of Sedgwick's failure to make an offer when liability was reasonably clear, Mr. Sta Maria was forced to file suit against Target Corporation and to incur the substantial time and expense of litigation to pursue a claim that should have been resolved based on the demand package that was sent to Target and Sedgwick on April 15, 2020.

18. Liability was reasonably clear based on the demand package dated April 15, 2020, which showed: that prior to the fall at Target, Mr. Sta Maria was in good health; the nature and extent of Mr. Sta Maria's injuries from the fall and treatment therefore; details surrounding

Mr. Sta Maria's medical bills, lost wages, and pain and suffering.

19. Despite this, Sedgwick has failed to effectuate a prompt, fair, and equitable settlement of Mr. Sta Maria's claim.

20. Sedgwick also took the position in a letter dated January 14, 2020 – prior to receiving a single medical record pertaining to Mr. Sta Maria – that Mr. Sta Maria that was involved in a "relatively minor slip and fall to the ground" and that his "contentions that he struck his head and lost consciousness are not accurate . . . [and] we do not expect a jury will consider any head injury in their evaluation of this claim."

21. Sedgwick has also refused to allow Mr. Sta Maria to see a video in its possession of his fall, which would have facilitated settlement of this claim.

## COUNT I - NEGLIGENCE
### *Plaintiff v. Target Corporation*

22. The Plaintiff repeats the allegations set forth in the preceding paragraphs of this Complaint as if set forth herein.

23. On or about July 15, 2017, and at all times pertaining to this Complaint, Defendant Target Corporation, was the owner, the entity in control, and/or the entity responsible for the maintenance of the location in which Mr. Sta Maria fell.

24. On or about July 15, 2017, and at all times pertaining to this Complaint, Defendant Target Corporation, had a duty to maintain the location in which Mr. Sta Maria fell in a safe manner and to keep it free from defects and hazards.

25. Defendant Target Corporation was negligent in its failure to maintain in a safe manner the location in which Mr. Sta Maria fell.

26. Defendant Target Corporation was negligent in its failure to correct or to warn Mr. Sta Maria of the presence of the dangerous and defective condition that caused Mr. Sta Maria to fall.

27. Defendant Target Corporation knew or should have known of its failure to maintain safely and properly the location in which Mr. Sta Maria fell, thereby creating an unreasonable danger to Mr. Sta Maria.

28. On or about July 15, 2017, Mr. Sta Maria sustained injuries due the negligent failure of Defendant Target Corporation to maintain safely and properly the location in which Mr. Sta Maria fell.

29. As a direct and proximate result of the negligence of Defendant Target Corporation, Mr. Sta Maria, when he fell, was caused to suffer severe injuries of body and mind, was forced to seek medical treatment, incurred medical expenses, lost wages, and was prevented from

carrying out his usual activities for a long period of time.

## COUNT II – VIOLATION OF M.G.L. c. 93A
### *Plaintiff v. Target Corporation*

30. The Plaintiff repeats the allegations set forth in the preceding paragraphs of this Complaint as if set forth herein.

31. Defendant Target Corporation operated the Store in an unsafe manner, leading to Mr. Sta Maria's injuries, as described above.

32. Plaintiff has satisfied all requirements of the presentment of a claim under M.G.L. c. 93A by sending to Target Corporation a demand letter, dated April 15, 2020, pursuant to that statute (a copy of which is attached as Exhibit A). To date, Target Corporation has failed to respond properly in writing to the 93A demand letter or otherwise make a reasonable offer of settlement.

33. The acts of Defendant Target Corporation were unfair and deceptive acts in violation of M.G.L. c. 93A.

34. The acts of Defendant Target Corporation were willful and knowing acts in violation of M.G.L. c. 93A.

35. Plaintiff has been damaged as a direct and proximate result of these actions.

## COUNT III – VIOLATION OF M.G.L. c. 93A and 176D
### *Plaintiff v. Sedgwick Claims Management Services, Inc.*

36. The Plaintiff repeats the allegations set forth in the preceding paragraphs of this Complaint as if set forth herein.

37. Defendant Sedgwick Claims Management Services, Inc., as a third party administrator for Target, is an entity subject to the standards imposed by M.G.L. c. 176D.

38. The liability of Target Corporation for the Plaintiff's injuries was reasonably clear.

39. The actions of Sedgwick and in failing to effectuate a prompt, fair, and equitable settlement when liability was reasonably clear constitutes an unfair claim settlement practice under M.G.L. c. 176D § 3(9)(f) and an unfair and deceptive act or practice under M.G.L. c. 93A.

40. Plaintiff has satisfied all requirements for presentment of a claims under M.G.L. c. 93A and 176D, by sending to Sedgwick a demand letter, dated July 17, 2020, pursuant to those statutes (a copy of which is attached as Exhibit B). To date, Sedgwick has failed to respond properly in writing to this demand letter or otherwise make a fair and equitable offer of settlement.

41. The acts of Sedgwick were willful and knowing acts in violation of M.G.L. c. 93A.

42. As a direct and proximate result of Sedgwick's unfair claim settlement practices and unfair and deceptive acts or practices, Plaintiff suffered actual, consequential, and incidental damages.

43. As a result of this failure to make a reasonable offer of settlement, the Plaintiff is required to file suit and to litigate his claims.

**WHEREFORE**, Plaintiff prays that this Honorable Court grant the following relief:

I.  Judgment against the Defendants jointly and severally;

II.  Restitution for all unpaid wages owed to Plaintiff by Defendants;

III.  Multiple damages and attorney's fees and costs attributable to the Defendants' violations of M.G.L. c. 93A;

IV.  Costs and disbursements of suit;

V.  All reasonable attorney's fees incurred in bringing suit;

VI.  Pre-judgment and post-judgment interest;

VII.  Appropriate injunctive, declaratory and other equitable relief; and

VIII.  Such other relief as this Honorable Court may deem just and appropriate under the circumstances.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: 9/2/2020

The Plaintiff,
BONIFACIO STA MARIA,
By His Attorney,

/s/ Christopher Wurster
Christopher Wurster, Esq. (BBO #679835)
Levine-Piro Law, P.C.
163 Main Street
Maynard, MA 01754
Phone 978-637-2048 / Fax 978-737-2182
chris@levinepirolaw.com

# EXHIBIT A

 **LEVINE-PIRO LAW**

Melissa A. Levine-Piro, Esq.
melissa@levinepirolaw.com

Christopher R. Wurster, Esq.
chris@levinepirolaw.com

Alexandra D. Ressa, Esq.
alexandra@levinepirolaw.com

Amanda Castro, Esq.
amanda@levinepirolaw.com

Kathleen A. Murphy, Esq.
katie@levinepirolaw.com

Christine M. Boutin, Esq.
Of Counsel
christine@levinepirolaw.com

Jared J. Kelly, Esq.
jared@levinepirolaw.com

163 Main Street
Maynard, MA
01754

(978) 637-2048
(978) 637-2182(f)

www.levinepirolaw.com

April 15, 2020

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Target
86 Orchard Hill Park Drive
Leominster, MA 01453

RE:   My Client:        Bonifacio Sta Maria
      Date of Loss:    7/15/2017

To Whom It May Concern:

As you know, Levine-Piro Law, P.C. represents Mr. Bonifacio Sta Maria in his claim for personal injuries stemming from a fall that occurred on July 15, 2017 at the Target store in Leominster, Massachusetts. This letter is a demand for settlement, sent pursuant to the Massachusetts Consumer Act, M.G.L. c. 93A, §9.

Your failure to make a reasonable, written tender of relief within **thirty (30)** days of this demand may result in Target's liability for multiple damages, costs, and reasonable attorney's fees.

Attached, please find a copy of the demand letter I am sending to Sheryl Bruce at Sedgwick CMS, your insurance carrier or third-party administrator. That letter is incorporated herein by reference. Target's violations of Chapter 93A are spelled out in the demand to Ms. Bruce. The medical records and bills referenced in that letter are available to you upon request, and they are being provided to Ms. Bruce.

For the reasons enumerated in my letter to Ms. Bruce, demand is made in the amount of $300,000.00. Please respond with a reasonable offer of settlement within thirty (30) days, in compliance with Chapter 93A.

Sincerely,

*Christopher Wurster*

Christopher R. Wurster, Esq.

CC: Sheryl Bruce (by e-mail_



# LEVINE-PIRO
# LAW

**Melissa A. Levine-Piro, Esq.**
melissa@levinepirolaw.com

**Christopher R. Wurster, Esq.**
chris@levinepirolaw.com

**Alexandra D. Ressa, Esq.**
alexandra@levinepirolaw.com

**Amanda Castro, Esq.**
amanda@levinepirolaw.com

**Kathleen A. Murphy, Esq.**
katie@levinepirolaw.com

**Christine M. Boutin, Esq.**
Of Counsel
christine@levinepirolaw.com

**Jared J. Kelly, Esq.**
jared@levinepirolaw.com

163 Main Street
Maynard, MA
01754

(978) 637-2048
(978) 637-2182(f)

www.levinepirolaw.com

April 15, 2020

**VIA E-MAIL AND PRIORITY MAIL**

Shery Bruce
Sedgwick Claims Management Services
P.O. Box 14453
Lexington, KY 40512-4453
Sheryl.Bruce@sedgwickcms.com

RE:  My Client:        Bonifacio Sta Maria
     Claim No.:        000267465G-001
     Your Insured:     Target Corporation
     Date of Loss:     7/15/2017

Dear Ms. Bruce:

As you know, Levine-Piro Law, P.C. represents Mr. Bonifacio Sta Maria in his claim for personal injuries stemming from a fall that occurred on July 15, 2017 at the Target store in Leominster, Massachusetts. This letter is a demand for settlement, sent pursuant to the Massachusetts Consumer Act, M.G.L. c. 93A, §9.

Your failure to make a reasonable, written tender of relief within **thirty (30)** days of this demand may result in Target's liability for multiple damages, costs, and reasonable attorney's fees.

I am sending you the following documents in hard copy and by secure download.

1. Guest Incident Report regarding 7/15/17 incident (dated 7/17/17);
2. Guest receipt dated 7/15/17 at 2:09PM;
3. Emerson Hospital medical records, 1/1/17-6/28/18;
4. Emerson Hospital medical records 6/28/18-10/19/19;
5. Emerson Hospital medical bills 1/1/17-6/28/18;
6. Emerson Hospital medical bills 6/28/18-10/19/19;
7. Acton Medical Associates medical records, 1/1/17-6/27/18;
8. Acton Medical Associates medical records, 6/27/18-4/1/19;
9. Acton Medical Associates medical records, 7/20/18-11/5/19;
10. Acton Medical Associates medical bills, 1/1/17-6/27/18;
11. Acton Medical Associates medical bills, 6/27/18-4/1/19;
12. Acton Medical Associates medical bills, 7/20/18-11/5/19;
13. Barron Chiropractic medical records 12/22/17-4/8/19;

1

14. Barron Chiropractic medical records, 3/16/19-10/21/19;
15. Barron Chiropractic medical bills 12/22/17-4/8/19;
16. Barron Chiropractic medical bills, 3/16/19-10/21/19;
17. Katherine Imhoff, LMHC, medical records and bills 10/18/17-8/24/18;
18. Katherine Imhoff, LMHC, medical records and bills, 8/24/18-4/1/19
19. Employment and wage information

## I.   Background

On July 15, 2017, Mr. Sta Maria was at the Target store in Leominster, Massachusetts with his young daughter. Near the check-out area, Mr. Sta Maria slipped on water on the floor. At the time, he was holding his medical daughter. He briefly lost consciousness as a result of the fall. His daughter remained conscious, witnessing her father's fall and resulting loss of consciousness. It was terrifying for Mr. Sta Maria to go through this incident and realize that his daughter could have been injured as well.

Mr. Sta Maria describes hearing a sound when he hit the floor and feeling like his head had exploded. After he regained consciousness, his vision was blurry and he heard ringing in his ears. He could not immediately get up; he had to lay on the floor for several moments.

Mr. Sta Maria stated that, when he regained consciousness, he noticed that the area where he fell was wet, and there was a large area of wet floor that looked like it had been improperly mopped. The floor in the store was very smooth tile, meaning that a wet floor was particularly dangerous. Mr. Sta Maria, at the time of the incident, was wearing black work boots, so he had good traction, underscoring how slippery the floor in the store was.

After the fall, Mr. Sta Maria was helped by another customer. Target staff did not immediately attend to Mr. Sta Maria and only assisted him after he had already sat up and then stood up with the assistance of the other customer. Staff did not offer to fill out an incident report. Two days later, on July 17, 2017, at the urging of his sister, Mr. Sta Maria returned to Target to request that an incident report be filled out. The incident report confirms the above-mentioned details.

It is indisputable that this fall occurred as a result of the negligence of your insured, Target Corporation. Simply put, there was water on the floor in a commercial store. This should never have occurred. Moreover, there was no "wet floor" sign or other warning to customers regarding this danger. This water was near the check-out area, a high-traffic area of the store with many Target staff members available who should have seen this hazard. Accordingly, Target knew or should have known about the existence of this hazard.

2

## II.   Damages

**Acton Medical Associates**

Just a few days after the fall at Target, on July 18, 2018, Mr. Sta Maria reported to his primary care physician at Acton Medical Associates. Mr. Sta Maria "reported hearing a loud smack noise from the back of his head. He woke up a few second later surrounded by other people. . . . He noticed later in the day that he felt a slight forgetfulness [and] continued to have a mild sense of mental fog and fatigue." He also developed pain in his right trapezius, right elbow, right wrist and neck. Mr. Sta Maria was diagnosed with a concussion, acute neck pain, and right wrist pain. Records stated that "after mechanical fall and loss of consciousness very briefly, patient has been experiencing symptoms consistent with concussion." Note that Mr. Sta Maria had been to Acton Medical for a general health exam approximately one month earlier, where he received an essentially clean bill of health and was not experiencing any of the issues that he began suffering from after the fall nor did he have a history of any such issues.

Mr. Sta Maria was seen again at Acton Medical on July 21, 2017 for a follow up for his concussion and other injuries. Because his symptoms were not improving as quickly as expected, Mr. Sta Maria was referred to the Cantu Concussion Center.

At a follow up visit on September 7, 2017, Mr. Sta Maria reported ongoing headaches, symptoms of depression, and poor energy, as well as continued scapular, neck, elbow, and wrist pain. He was prescribed Amitryptiline.

Mr. Sta Maria had another follow up appointment on October 12, 2017. Headaches were improved with Amitryptiline, but Mr. Sta Maria was experiencing ongoing scapular pain. He was referred to Occupational Therapy.

On January 5, 2018, Mr. Sta Maria reported increased symptoms of depression, related to his concussion and resulting loss of employment. He had lost his job because he was unable to work due to his concussion symptoms. In addition to anxiety, difficulty sleeping, and decreased appetite, Mr. Sta Maria was also experiencing physical symptoms from his concussion. He was still enduring headaches and difficulty concentrating as well as neck pain.

Mr. Sta Maria had an evaluation on July 20, 2018, which noted headaches, depressed mood associated with post-concussive symptoms, difficulty with concentration and short-term memory. He was also experiencing upper back and neck symptoms and pain and tingling in his left arm. Mr. Sta Maria followed-up regarding his depression on August 17, 2018.

3

On September 28, 2018, Mr. Sta Maria again reported to Acton Medical. His mood was noted to be improving on Duloxetine, but he was still experiencing neck pain, headaches, and dizziness. While he was able to work, at times, his pain would flare up.

On December 12, 2018, Mr. Sta Maria returned to Acton Medical with continued anxiety and depression, problems sleeping, difficulty concentrating, neck pain and left post scalp pain, irritability, and anger. He was noted to be meditating several times per week to help with his symptoms.

Mr. Sta Maria reported to Acton Medical again on February 1, 2019. He had experienced no major improvement in pain in myofascial area/neck but was experiencing less irritability and more calm.

On October 18, 2019, Mr. Sta Maria reported to Acton Medical for a general health evaluation. He was diagnosed with ongoing chronic neck and lower back pain and post-concussive syndrome with mood symptoms.

**Cantu Concussion Center at Emerson Hospital**

Mr. Sta Maria was first seen at the Cantu Concussion Center on August 1, 2017 for symptoms beginning after his fall at Target. Immediately after the fall, Mr. Sta Maria felt wrist and neck pain, as well as confusion. On the date of his initial evaluation, Mr. Sta Maria reported balance issues, confusion, difficulty concentrating and remembering, dizziness, bell rung, drowsy, fatigue, feeling in a fog, feeling more emotional, feeling slowed down, headache, irritability, nausea, neck pain, nervousness, numbness, ringing in ears, sadness, sensitivity to light and noise, and sleeping problems. His head pain was at a 10/10. He reported "constant" neck pain that occasionally radiated into his right shoulder with numbness and tingling down to his right hand. Mr. Sta Maria's family reported that he was often repeating things. He was feeling anxious and sad with flashbacks to the fall. Mr. Sta Maria was diagnosed with a concussion with loss of consciousness, cervicogenic headaches, and neck pain.

At another visit on August 29, 2017, Mr. Sta Maria reported "little improvement." In fact, his headaches had worsened. In addition, Mr. Sta Maria reported severe neck pain with constant numbness and tingling down the right arm into all fingers. Mr. Sta Maria was now remaining out of work because his employer was unable to grant the accommodations his doctor had recommended. Additionally, Mr. Sta Maria reported blurred vision occasionally when reading, difficulty sleeping, depression, and anxiety. He had no previous history of depression or anxiety.

On October 10, 2017, Mr. Sta Maria reported some improvement, including in the frequency of his headaches, which were no longer constant. Neck pain had improved, but there was no

4

change in the numbness and tingling down his right arm into his right hand. Mr. Sta Maria was still out of work and unable to return to work. Mr. Sta Maria had another follow up appointment on October 17, 2017, where return to work was discussed, but he and his providers decided he was not yet ready.

Injections

On November 14, 2017, Mr. Sta Maria returned to the Cantu Center. He had had cervical spine injections since his previous appointment. His symptoms had worsened since his previous visit and included confusion, difficulty concentrating and remembering, dizziness, bell rung, drowsy, fatigue, feeling in a fog, feeling more emotional, feeling slowed down, headaches, irritability, nausea, neck pain, nervousness, numbness, ringing in the ears, sadness, sensitivity to light and noise, sleeping problems, and visual problems. Mr. Sta Maria had been discharged from physical therapy because there was no marked improvement in neck pain.

On December 12, 2017, Mr. Sta Maria reported improvement in his concussion symptoms but continued severe neck pain. While his neck pain had initially improved, it subsequently worsened; Mr. Sta Maria rated it as 8/10 with tingling down his left arm. He noted that he was very anxious and depressed about his continued neck pain and consequently was seeing a therapist regularly. Mr. Sta Maria was discharged on this date from the Concussion Clinic.

**Spine Clinic at Emerson Hospital**

On September 11, 2017, Mr. Sta Maria was seen at the Emerson Hospital Spine Clinic at the request of both the Cantu Concussion Center and his primary care physician, Dr. Girolamo. Dr. Arthur Lee noted that Mr. Sta Maria had been experiencing neck pain and cervicogenic headaches since his fall at Target. He was also suffering from left arm pain and right-hand numbness at times. Dr. Lee diagnosed post-concussive syndrome and possible cervical radiculopathy, as well as axial pain and cervicogenic headaches.

On October 5, 2017, Mr. Sta Maria reported to the Spine Clinic again. He reported continued cervical axial neck pain and headaches. His range of motion was "extremely limited," with pain at a 7 out of 10. Reviewing MRIs that had recently been performed, Dr. Lee noted disc herniations with mild impingement on the nerve roots. Dr. Lee recommended cervical facet injections.

Mr. Sta Maria had his first round of injections on October 20, 2017. He returned to Dr. Lee on November 2, 2017, with pain at a level 7 out of 10. Dr. Lee noted that Mr. Sta Maria had done well from the cervical injections, with about 60% improvement for about a week, but he had slowly started returning to baseline. Dr. Lee recommended another round of injections.

5

Mr. Sta Maria had another round of injections on December 1, 2017. He returned to Dr. Lee on December 14, 2017, with significant pain and multiple ADLs limited. His headaches were improved, but he was still experiencing neck pain and myofascial pain along the midline in the cervical spine. He recommended trigger point injections with Dr. Spinelli.

On January 3, 2018, Mr. Sta Maria reported to Dr. Spinelli in the Emerson Spine Program. Dr. Spinelli noted that Mr. Sta Maria's symptoms began after he fell at a Target store in July 2017. "He has been symptomatic ever since with bilateral neck pain and headaches. Pain is described as 7/10, sharp, aching, worse with increased activity in general." His "symptoms decrease function, quality of life, ability to perform activities of daily living." Dr. Spinelli stated that "his ongoing neck pain with headaches may be from chronic muscle spasm," and trigger point injections were performed.

Mr. Sta Maria returned to Dr. Spinelli on April 12, 2018 for continued bilateral neck pain and headaches. Dr. Spinelli noted that Mr. Sta Maria "has returned to work without restrictions despite the pain."

At this visit, Dr. Spinelli noted the following: "His ongoing neck pain with headaches may be from chronic muscle spasm. It could also be due to the . . . mild to moderate degenerative changes seen on MRI. Symptoms began after his fall at Target . . . and he has been symptomatic ever since. He was asymptomatic before the fall. He has tried numerous treatments to include giving things time, physical therapy, chiropractic, cervical facet injections, trigger point injections, but he remains symptomatic. At this point, I think it is reasonable to say that he has reached maximum medical improvement." At this time, Mr. Sta Maria had returned to work; Dr. Spinelli noted that "while this may cause some . . . increase in symptoms, I do not believe he is damaging his spine."

Mr. Sta Maria returned to the Spine Clinic on May 15, 2019. Dr. Spinelli noted that Mr. Sta Maria continued to be symptomatic despite multiple interventions. Dr. Spinelli recommended trigger point injections, which were performed on May 28, 2019 without significant benefit. Mr. Sta Maria followed up with Dr. Spinelli on June 24, 2019 and had another round of trigger point injections on July 18, 2019.

**Physical and Occupational Therapy at Emerson Hospital**

<u>Physical Therapy</u>

Mr. Sta Maria also did physical therapy at Emerson Hospital, beginning with an initial evaluation on August 8, 2017. Mr. Sta Maria was noted to have experienced confusion, dizziness, fogginess, and right upper extremity numbness following his fall at Target. His neck pain had increased since the fall. At a follow-up visit on August 16, 2017, Mr. Sta Maria

6

displayed balance deficits and visual blurriness. He also reported vertigo, ringing in his ears, nausea, headaches, concentration problems and memory loss.

Mr. Sta Maria was re-evaluated on September 21, 2017, with some improvement. On September 26, 2017, clinicians noted that Mr. Sta Maria's cervical pain was improved, but his radicular symptoms were unchanged. On October 11, 2017, it was noted that Mr. Sta Maria had been considering returning to work for financial reasons, not medical reasons, but ultimately had concluded that his pain levels were too high to work at that time.

On November 3, 2017, Mr. Sta Maria was discharged from PT. While he had made some improvements, his neck and low back pain had increased towards the end of his course of PT, and as a result, he was discharged due to lack of progress/regressions with cervical pain.

Between his initial evaluation on August 8, 2017 and his discharge on November 3, 2017, Mr. Sta Maria had 16 sessions of physical therapy.

<u>Occupational Therapy</u>

At the recommendation of his other providers, Mr. Sta Maria pursued occupational therapy services, also at Emerson Hospital, beginning with an initial evaluation on September 11, 2017. At this time, clinicians noted decreased grip strength, pinch strength of right upper extremity and localized elbow and wrist pain. OT was recommended to address right elbow and wrist pain, with continued PT to address cervical and radiating symptoms as well as the concussion. At this evaluation, Mr. Sta Maria was noted to be unable to lift or carry his daughter, lift or carry groceries or heavier items, push heavy doors, or push himself up. Mr. Sta Maria was given exercised to do at home to help his symptoms.

On October 26, 2017, clinicians noted increased grip strength in right elbow flexion but decreased grip with elbow in extension. His pain was lower, but still at a 5 out of 10. He was able to carry his daughter at this time, but only for periods of 5 minutes at a time.

Mr. Sta Maria had eight sessions of OT between his initial evaluation on September 11, 2017 and his final appointment on October 26, 2017.

**Barron Chiropractic**

Mr. Sta Maria pursued chiropractic treatment at Barron Chiropractic & Wellness Center, beginning with an initial evaluation on December 22, 2017 to address neck pain, shoulder pain, and back pain. Of note, Dr. Barron noted that Mr. Sta Maria presented with "visible anxiety and depression," which had only manifested since the fall and concussion. He reported difficulty with lifting, bending over, reaching overhead.

7

On December 27, 2018, Mr. Sta Maria rated his upper back/neck pain at an 8 out of 10, and chest discomfort at an 8 out of 10. Dr. Barron gave Mr. Sta Maria an impairment rating of 5-8%. His initial neck pain disability index score was 72%.

Mr. Sta Maria continued with significant pain for subsequent visits. For example, on March 16, 2018, Mr. Sta Maria rated his neck pain as 8 out of 10, his chest pain as 8 out of 10, and his upper back pain as 7 out of 10. On May 25, 2018, Mr. Sta Maria rated his neck pain as a 9; chest pain as an 8; upper back pain as an 8; and trapezius pain as an 8. Dr. Barron indicated his progress was "very slow." These pain levels continued for the majority of his chiropractic care, underscoring the severity of his condition.

Between his initial evaluation on December 22, 2017 and a re-evaluation on December 7, 2018, Mr. Sta Maria's neck pain disability index score only improved from 72% to 68%. Mr. Sta Maria remained in treatment with only modest benefits.

Mr. Sta Maria is still in treatment with Dr. Barron. At the time records were obtained on in October 2019, Mr. Sta Maria had seen Dr. Barron for forty (54) sessions since his first appointment on December 22, 2017.

**Mental Health Counseling – Katherine Imhoff, LMHC**

Mr. Sta Maria has seen Katherine Imhoff, LMHC for counseling services since October 18, 2017, for symptoms related to his fall at Target. Initially, Ms. Imhoff diagnosed Mr. Sta Maria with unspecified anxiety disorder and major depressive disorder due to his fall. His initial symptoms included sleeping problems, anxiety, and depressive symptoms, including depressed mood, sadness, and irritability, all revolving around the fall and not being able to work. In January 2018, Ms. Imhoff changed Mr. Sta Maria's diagnosis to Posttraumatic Stress Disorder (PTSD) due to Mr. Sta Maria's symptoms including anger and thinking about the fall over and over.

In the winter of 2018, Mr. Sta Maria became more depressed and anxious. His primary care provider prescribed Duloxetine.

Mr. Sta Maria's therapy sessions centered exclusively around his fall and how that impacted his life, work, and relationships.

**Lost Wages**

At the time of the collision, Mr. Sta Maria was employed full-time as a CNA at Life Care Center of Acton with a wage of $17.04/hour. Mr. Sta Maria averaged 37.5 hours per week prior to the accident.

8

Due to his injuries, Mr. Sta Maria missed 22.14 weeks of work from July 30, 2017 through February 2, 2018.

25.43 weeks x 37.5 hours x $17.04/hour = $16,249.77 in lost wages

Additionally, I must note that Mr. Sta Maria was actually temporarily terminated by Life Care Center of Acton because he had been out of work so long due *solely* to his injuries from this fall. I spoke directly with Life Care to get Mr. Sta Maria's job back, but the stress and anxiety caused by this incident were significant and added to Mr. Sta Maria's pain and suffering. In short, due to the negligence of your insured, Mr. Sta Maria not only could not work, he was then terminated because he had been out on leave for so long.

1. **Economic Damages**

**Medicals**

| | | |
|---|---|---|
| Emerson Hospital | | $30,117.86 |
| Acton Medical | | $3,108.00 |
| Barron Chiro | | $7,013.00 |
| K. Imhoff | | $3,600.00 |
| CVS (Prescriptions) | | $257.91 |
| | **Total** | **$44,096.77** |
| **Lost Wages** | | **$16,249.77** |
| **TOTAL ECONOMIC DAMAGES** | | **$60,346.54** |

2. **Non-Economic Damages**

Pain & suffering/limitation of activities   $239,653.46

**TOTAL DEMAND: $300,000.00**

III. **Conclusion**

Liability is clear in this case. My client slipped and fell on a water in the busiest area of a commercial store, an area with the most staff around but no signs or other warnings telling customers to be careful of the wet floor.

Mr. Sta Maria's resulting injuries were severe. He was diagnosed with a concussion, which brought with it wide-ranging symptoms including headaches, memory and concentration issues, vision problems, and psychiatric symptoms. In addition, my client had severe neck,

9

back, and shoulder pain, which necessitated physical therapy and chiropractic treatment, the latter of which is still ongoing. In the years that Mr. Sta Maria has been in chiropractic treatment, his neck pain has only improved slightly. Additionally, Mr. Sta Maria injured his elbow and wrist, requiring occupational therapy services. My client was dealing with significant symptoms that impacted every aspect of his life.

Mr. Sta Maria's neck and back pain is so severe that he has had to try a variety of interventions, all with little to no long-term improvement.

In short, as a result of the fall, Mr. Sta Maria was simply unable to do the things he was normally accustomed to doing.

This includes work. At the time of the fall, Mr. Sta Maria was working as a CNA in a nursing home. Due to the fall, Mr. Sta Maria was out of work for approximately six months. Additionally, Mr. Sta Maria had to deal with the stress of being terminated (temporarily, until I intervened).

Mr. Sta Maria also experienced a variety of psychiatric symptoms, including depression, anxiety, and PTSD, as a result of the fall and resulting concussion. These issues have necessitated significant ongoing counseling services.

It is difficult to put into words the extent to which this fall upended my client's entire life. This is a case where pain and suffering was, and is, clear. Demand is therefore made in the amount of $300,000.00. Please respond with a reasonable offer of settlement within thirty (30) days, in compliance with Chapter 93A.

Sincerely,

*Christy he Wurster*

Christopher R. Wurster, Esq.

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

UNITED STATES POSTAL SERVICE

• Sender: Please print your name, address, and ZIP+4® in this box•

CHRISTOPHER WORSTER
Levine Piro Law
163 Main St.
Maynard, Mn 01754

6020200917016688

0002267465G0001

9/17/2020 12:00:00 AM

## SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

TARGET
86 Orchard Hill Blvd De
Leominster, MA
01453

## COMPLETE THIS SECTION ON DELIVERY

A. Signature

X B. Townsend C14

☐ Agent
☑ Addressee

B. Received by (Printed Name)
N.B. MG C14

C. Date of Delivery
4/1/20

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:          ☐ No

3. Service Type
☐ Certified Mail®        ☐ Priority Mail Express™
☐ Registered            ☐ Return Receipt for Merchandise
☐ Insured Mail          ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number
(Transfer from service label)

7019 0700 0001 7250 4887

PS Form 3811, July 2013        Domestic Return Receipt

6020200917016688

000267465G0001

9/17/2020 12:00:00 AM

# EXHIBIT B



# LEVINE-PIRO
# LAW

**Melissa A. Levine-Piro, Esq.**
melissa@levinepirolaw.com

**Christopher R. Wurster, Esq.**
chris@levinepirolaw.com

**Alexandra D. Ressa, Esq.**
alexandra@levinepirolaw.com

**Amanda Castro, Esq.**
amanda@levinepirolaw.com

**Kathleen A. Murphy, Esq.**
katie@levinepirolaw.com

**Christine M. Boutin, Esq.**
Of Counsel
christine@levinepirolaw.com

163 Main Street
Maynard, MA
01754

(978) 637-2048
(978) 637-2182(f)

www.levinepirolaw.com

July 17, 2020

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Colleen Hansen
Sedgwick Claims Management Services
P.O. Box 14453
Lexington, KY 40512-4453
Colleen.Hansen@sedgwickcms.com

| | |
|---|---|
| My Client: | Bonifacio Sta Maria |
| Claim No.: | 000267465G-001 |
| Your Insured: | Target Corporation |
| Date of Loss: | 7/15/2017 |

## DEMAND FOR RELIEF PURSUANT TO M.G.L. c. 93A

Dear Ms. Hansen:

This letter is a demand for relief under Massachusetts General Laws Chapter 93A (the Commonwealth's so-called "Consumer Protection Act"), Section 9, and Massachusetts General Laws Chapter 176D, Section 3, Clause 9.

As you know, G.L. c. 93A, §9 allows a claimant to file a civil lawsuit for an insurance company's unfair claim settlement practices under Chapter 176D.[1] The Consumer Protection Act subjects insurers to exposure for double or treble damages, attorney's fees and related costs if there is a finding that the unlawful act complained of was entered into by the defendant knowingly or that the defendant failed to make a reasonable offer of settlement upon demand with knowledge or reason to know that the practice complained of violated the act.

As you also know, G.L. c. 176D, §3(9) defines unfair claim settlement practices to include an insurer:

- Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies (Clause 9(b));

---

[1] To the extent you argue that Sedgwick is functioning as a third party administrator, rather than an insurer, in this action, Sedgwick is still subject to Chapter 176D. See Morrison v. Toys R Us, 441 Mass. 451 (2004) (rejecting claim that a TPA is not subject to the "standards of fair dealing" imposed by Chapter 176D).

- Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies (Clause 9(c));

- Refusing to pay claims without conducting a reasonable investigation based upon all of the available information (Clause 9(d)); and

- Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear (Clause 9(f)).

The facts underlying this case demonstrate violations of Chapter 176D.

The relevant facts of this case are laid out in my April 15, 2020 letter to Sedgwick (directed to the prior claims agent, Sheryl Bruce). See Demand Letter to Sedgwick (attached without exhibits), Exhibit 1.

To summarize: On July 15, 2017, my client was injured in a fall at the Target store in Leominster, Massachusetts as a result of Target's negligence. Mr. Sta Maria fell on what appeared to be a wet floor in a high-traffic area of the store, near the checkout area, where numerous Target employees are regularly staffed and were aware or should have been aware of the dangerous condition. After the fall, Mr. Sta Maria was diagnosed with a concussion, which brought with it wide-ranging symptoms including headaches, memory and concentration issues, vision problems, and psychiatric symptoms. In addition, my client had severe neck, back, and shoulder pain, which necessitated physical therapy and chiropractic treatment. In the years that Mr. Sta Maria has been in chiropractic treatment, his neck pain has only improved slightly. Additionally, Mr. Sta Maria injured his elbow and wrist, requiring occupational therapy services. Mr. Sta Maria was also out of work due to his injuries for months and actually temporarily lost his job due to his extended leave of absence until I intervened with his employer to get him his job back.

At the time of my demand letter, Mr. Sta Maria had incurred medical bills of $44,096.77 and lost wages of $16,249.77.

In connection with this matter, I sent a demand, pursuant to M.G.L. c. 93A, for $300,000.00 by letter dated April 15, 2020 to Sedgwick, as explained above. I also sent a 93A demand letter, enclosing a copy of my demand to Sedgwick, directly to Target. See Demand Letter to Target, Exhibit 2.

To date, neither Sedgwick nor Target has formally acknowledged or responded to my 93A demand letters, and Sedgwick had failed to make an offer on this claim at all.

My demand letter to Sedgwick included medical records from Mr. Sta Maria's primary care provider, dated from just prior to the fall at Target, showing that, prior to the fall, Mr. Sta Maria had a clean bill of health and was not experiencing any of the issues that he began suffering from after the fall, nor did he have a history of any such issues.

Accordingly, the demand package that I sent Sedgwick on April 15, 2020 presented a claim for which liability was reasonably clear.

Despite this, you informed me by e-mail dated June 9, 2020, that you "will require some additional information in order to complete our evaluation in this matter." See E-mail exchange between C. Hansen and C. Wurster, Exhibit 3. You requested records for Mr. Sta Maria for the three years preceding the incident at Target, stating that "given the nature of your client's profession and the significant disc desiccation in his cervical spine, we will need prior records in order to rule out any prior complaints pertaining to his neck." This, despite the records you already had in your possession from just prior to the accident showing no current neck problems or history of neck problems.

In response, I directed you to the records you already had, but you maintained that "the chance of securing authority to make an offer without the prior medical records is slim."

As a result of Sedgwick's failure to make an offer when liability was reasonably clear, my client was forced to file suit against Target Corporation and will have to incur the substantial time and expense of litigation to pursue a claim that should have been resolved based on the demand package that was sent to you on April 15, 2020. Therefore, on June 29, 2020, Mr. Sta Maria filed suit against Target Corporation in Middlesex Superior Court.

Nevertheless, to make every effort to work with Sedgwick with a view towards resolution, I obtained my client's records for the three years prior to the fall at Target and provided them to you initially on July 7, 2020. See Exhibit 3; see also e-mail from C. Wurster to C. Hansen, re-sending records, dated July 8, 2020, Exhibit 4. These records totaled only 142 pages. Therefore, I requested that you provide me with a response, to include an offer of settlement, by July 15, 2020. You failed to do so.

Sedgwick has also taken an indefensible position with regard to the sharing of video footage of my client's fall. At some point after Target and Sedgwick had been placed on notice of this claim and Mr. Sta Maria's injuries by my office, Sedgwick represented to me that it was in possession of video footage from Target that showed my client's fall. Per the prior claims agent, Sheryl Bruce, this video did not support my client's contentions regarding his injuries. Sedgwick also stated by letter dated January 14, 2020 that my client was involved in a "relatively minor slip and fall to the ground" and that my client's "contentions that he struck his head and lost consciousness are not accurate . . .

[and] we do not expect a jury will consider any head injury in their evaluation of this claim." See Letter from Sedgwick dated 1/14/2020, Exhibit 5. This letter, containing conclusions about the nature of Mr. Sta Maria's claim, his injuries, and projections about what a jury would decide in this case, was written *prior to Sedgwick having a single medical record about my client's injuries*. This is outrageous. Regardless of what Target's video shows, my client's injuries, as evidenced by his voluminous medical records, speak for themselves, and it is not appropriate for Sedgwick to be drawing conclusions about the extent of his injuries without having received and reviewed a *single medical record* pertaining to his treatment.

Additionally, in order to continue to facilitate discussion about settlement, I asked that you share with me the video in your possession by e-mail dated June 29, 2020. See Exhibit 3. As grounds, I explained that, since I had just filed the Complaint in Superior Court (which I shared with you as a courtesy), I would be entitled to that video in discovery. You declined, with a rationale that can only be described as unintelligible.

As explained in detail above, Sedgwick has violated Chapter 176D through its handling of this claim because, among other things, Sedgwick has failed to effectuate a prompt, fair and equitable settlement of a claim in which liability has become reasonably clear. Liability is reasonably clear when "a reasonable person, with knowledge of the relevant facts and law would probably have concluded, for good reason, that the insured was liable to the plaintiff." O'Leary-Alison v. Metropolitan Property & Cas. Ins. Co., 52 Mass. App. Ct. 214, 217 (2001) (quoting Demeo v. State Farm Mut. Auto Ins. Co., 38 Mass. App. Ct. at 956-57).

As explained above, liability was reasonably clear based on the demand package dated April 15, 2020, which showed: that prior to the fall at Target, Mr. Sta Maria was in good health; the nature and extent of Mr. Sta Maria's injuries from the fall and treatment therefore; details surrounding Mr. Sta Maria's medical bills, lost wages, and pain and suffering.

The failure of Sedgwick to offer a fair and equitable settlement when liability was reasonably clear constitutes an unfair claim settlement practice under M.G.L. c. 176D § 3(9)(f) and an unfair and deceptive act or practice under M.G.L. c. 93A.

Demand is made in the amount of $300,000. As you know, Chapter 93A provides thirty (30) days for you to respond to this demand. If you consider Mr. Sta Maria's demand to be unacceptable, then it is respectfully requested that you set forth fully and substantially all reasons for that position.

Thank you for your courtesy and attention.

Sincerely,

Christopher R. Wurster, Esq.

# EXHIBIT 1



**LEVINE-PIRO LAW**

Melissa A. Levine-Piro, Esq.
melissa@levinepirolaw.com

Christopher R. Wurster, Esq.
chris@levinepirolaw.com

Alexandra D. Ressa, Esq.
alexandra@levinepirolaw.com

Amanda Castro, Esq.
amanda@levinepirolaw.com

Kathleen A. Murphy, Esq.
katie@levinepirolaw.com

Christine M. Boutin, Esq.
Of Counsel
christine@levinepirolaw.com

Jared J. Kelly, Esq.
jared@levinepirolaw.com

163 Main Street
Maynard, MA
01754

(978) 637-2048
(978) 637-2182(f)

www.levinepirolaw.com

April 15, 2020

**VIA E-MAIL AND PRIORITY MAIL**

Shery Bruce
Sedgwick Claims Management Services
P.O. Box 14453
Lexington, KY 40512-4453
Sheryl.Bruce@sedgwickcms.com

RE:   My Client:      Bonifacio Sta Maria
       Claim No.:     000267465G-001
       Your Insured:  Target Corporation
       Date of Loss:  7/15/2017

Dear Ms. Bruce:

As you know, Levine-Piro Law, P.C. represents Mr. Bonifacio Sta Maria in his claim for personal injuries stemming from a fall that occurred on July 15, 2017 at the Target store in Leominster, Massachusetts. This letter is a demand for settlement, sent pursuant to the Massachusetts Consumer Act, M.G.L. c. 93A, §9.

Your failure to make a reasonable, written tender of relief within thirty (30) days of this demand may result in Target's liability for multiple damages, costs, and reasonable attorney's fees.

I am sending you the following documents in hard copy and by secure download.

1.  Guest Incident Report regarding 7/15/17 incident (dated 7/17/17);
2.  Guest receipt dated 7/15/17 at 2:09PM;
3.  Emerson Hospital medical records, 1/1/17-6/28/18;
4.  Emerson Hospital medical records 6/28/18-10/19/19;
5.  Emerson Hospital medical bills 1/1/17-6/28/18;
6.  Emerson Hospital medical bills 6/28/18-10/19/19;
7.  Acton Medical Associates medical records, 1/1/17-6/27/18;
8.  Acton Medical Associates medical records, 6/27/18-4/1/19;
9.  Acton Medical Associates medical records, 7/20/18-11/5/19;
10. Acton Medical Associates medical bills, 1/1/17-6/27/18;
11. Acton Medical Associates medical bills, 6/27/18-4/1/19;
12. Acton Medical Associates medical bills, 7/20/18-11/5/19;
13. Barron Chiropractic medical records 12/22/17-4/8/19;

1

14. Barron Chiropractic medical records, 3/16/19-10/21/19;
15. Barron Chiropractic medical bills 12/22/17-4/8/19;
16. Barron Chiropractic medical bills, 3/16/19-10/21/19;
17. Katherine Imhoff, LMHC, medical records and bills 10/18/17-8/24/18;
18. Katherine Imhoff, LMHC, medical records and bills, 8/24/18-4/1/19
19. Employment and wage information

## I.    Background

On July 15, 2017, Mr. Sta Maria was at the Target store in Leominster, Massachusetts with his young daughter. Near the check-out area, Mr. Sta Maria slipped on water on the floor. At the time, he was holding his daughter. He briefly lost consciousness as a result of the fall. His daughter remained conscious, witnessing her father's fall and resulting loss of consciousness. It was terrifying for Mr. Sta Maria to go through this incident and realize that his daughter could have been injured as well.

Mr. Sta Maria describes hearing a sound when he hit the floor and feeling like his head had exploded. After he regained consciousness, his vision was blurry and he heard ringing in his ears. He could not immediately get up; he had to lay on the floor for several moments.

Mr. Sta Maria stated that, when he regained consciousness, he noticed that the area where he fell was wet, and there was a large area of wet floor that looked like it had been improperly mopped. The floor in the store was very smooth tile, meaning that a wet floor was particularly dangerous. Mr. Sta Maria, at the time of the incident, was wearing black work boots, so he had good traction, underscoring how slippery the floor in the store was.

After the fall, Mr. Sta Maria was helped by another customer. Target staff did not immediately attend to Mr. Sta Maria and only assisted him after he had already sat up and then stood up with the assistance of the other customer. Staff did not offer to fill out an incident report. Two days later, on July 17, 2017, at the urging of his sister, Mr. Sta Maria returned to Target to request that an incident report be filled out. The incident report confirms the above-mentioned details.

It is indisputable that this fall occurred as a result of the negligence of your insured, Target Corporation. Simply put, there was water on the floor in a commercial store. This should never have occurred. Moreover, there was no "wet floor" sign or other warning to customers regarding this danger. This water was near the check-out area, a high-traffic area of the store with many Target staff members available who should have seen this hazard. Accordingly, Target knew or should have known about the existence of this hazard.

2

## II.    Damages

**Acton Medical Associates**

Just a few days after the fall at Target, on July 18, 2018, Mr. Sta Maria reported to his primary care physician at Acton Medical Associates. Mr. Sta Maria "reported hearing a loud smack noise from the back of his head. He woke up a few second later surrounded by other people. . . . He noticed later in the day that he felt a slight forgetfulness [and] continued to have a mild sense of mental fog and fatigue." He also developed pain in his right trapezius, right elbow, right wrist and neck. Mr. Sta Maria was diagnosed with a concussion, acute neck pain, and right wrist pain. Records stated that "after mechanical fall and loss of consciousness very briefly, patient has been experiencing symptoms consistent with concussion." Note that Mr. Sta Maria had been to Acton Medical for a general health exam approximately one month earlier, where he received an essentially clean bill of health and was not experiencing any of the issues that he began suffering from after the fall nor did he have a history of any such issues.

Mr. Sta Maria was seen again at Acton Medical on July 21, 2017 for a follow up for his concussion and other injuries. Because his symptoms were not improving as quickly as expected, Mr. Sta Maria was referred to the Cantu Concussion Center.

At a follow up visit on September 7, 2017, Mr. Sta Maria reported ongoing headaches, symptoms of depression, and poor energy, as well as continued scapular, neck, elbow, and wrist pain. He was prescribed Amitryptiline.

Mr. Sta Maria had another follow up appointment on October 12, 2017. Headaches were improved with Amitryptiline, but Mr. Sta Maria was experiencing ongoing scapular pain. He was referred to Occupational Therapy.

On January 5, 2018, Mr. Sta Maria reported increased symptoms of depression, related to his concussion and resulting loss of employment. He had lost his job because he was unable to work due to his concussion symptoms. In addition to anxiety, difficulty sleeping, and decreased appetite, Mr. Sta Maria was also experiencing physical symptoms from his concussion. He was still enduring headaches and difficulty concentrating as well as neck pain.

Mr. Sta Maria had an evaluation on July 20, 2018, which noted headaches, depressed mood associated with post-concussive symptoms, difficulty with concentration and short-term memory. He was also experiencing upper back and neck symptoms and pain and tingling in his left arm. Mr. Sta Maria followed-up regarding his depression on August 17, 2018.

3

On September 28, 2018, Mr. Sta Maria again reported to Acton Medical. His mood was noted to be improving on Duloxetine, but he was still experiencing neck pain, headaches, and dizziness. While he was able to work, at times, his pain would flare up.

On December 12, 2018, Mr. Sta Maria returned to Acton Medical with continued anxiety and depression, problems sleeping, difficulty concentrating, neck pain and left post scalp pain, irritability, and anger. He was noted to be meditating several times per week to help with his symptoms.

Mr. Sta Maria reported to Acton Medical again on February 1, 2019. He had experienced no major improvement in pain in myofascial area/neck but was experiencing less irritability and more calm.

On October 18, 2019, Mr. Sta Maria reported to Acton Medical for a general health evaluation. He was diagnosed with ongoing chronic neck and lower back pain and post-concussive syndrome with mood symptoms.

**Cantu Concussion Center at Emerson Hospital**

Mr. Sta Maria was first seen at the Cantu Concussion Center on August 1, 2017 for symptoms beginning after his fall at Target. Immediately after the fall, Mr. Sta Maria felt wrist and neck pain, as well as confusion. On the date of his initial evaluation, Mr. Sta Maria reported balance issues, confusion, difficulty concentrating and remembering, dizziness, bell rung, drowsy, fatigue, feeling in a fog, feeling more emotional, feeling slowed down, headache, irritability, nausea, neck pain, nervousness, numbness, ringing in ears, sadness, sensitivity to light and noise, and sleeping problems. His head pain was at a 10/10. He reported "constant" neck pain that occasionally radiated into his right shoulder with numbness and tingling down to his right hand. Mr. Sta Maria's family reported that he was often repeating things. He was feeling anxious and sad with flashbacks to the fall. Mr. Sta Maria was diagnosed with a concussion with loss of consciousness, cervicogenic headaches, and neck pain.

At another visit on August 29, 2017, Mr. Sta Maria reported "little improvement." In fact, his headaches had worsened. In addition, Mr. Sta Maria reported severe neck pain with constant numbness and tingling down the right arm into all fingers. Mr. Sta Maria was now remaining out of work because his employer was unable to grant the accommodations his doctor had recommended. Additionally, Mr. Sta Maria reported blurred vision occasionally when reading, difficulty sleeping, depression, and anxiety. He had no previous history of depression or anxiety.

On October 10, 2017, Mr. Sta Maria reported some improvement, including in the frequency of his headaches, which were no longer constant. Neck pain had improved, but there was no

4

change in the numbness and tingling down his right arm into his right hand. Mr. Sta Maria was still out of work and unable to return to work. Mr. Sta Maria had another follow up appointment on October 17, 2017, where return to work was discussed, but he and his providers decided he was not yet ready.

Injections

On November 14, 2017, Mr. Sta Maria returned to the Cantu Center. He had had cervical spine injections since his previous appointment. His symptoms had worsened since his previous visit and included confusion, difficulty concentrating and remembering, dizziness, bell rung, drowsy, fatigue, feeling in a fog, feeling more emotional, feeling slowed down, headaches, irritability, nausea, neck pain, nervousness, numbness, ringing in the ears, sadness, sensitivity to light and noise, sleeping problems, and visual problems. Mr. Sta Maria had been discharged from physical therapy because there was no marked improvement in neck pain.

On December 12, 2017, Mr. Sta Maria reported improvement in his concussion symptoms but continued severe neck pain. While his neck pain had initially improved, it subsequently worsened; Mr. Sta Maria rated it as 8/10 with tingling down his left arm. He noted that he was very anxious and depressed about his continued neck pain and consequently was seeing a therapist regularly. Mr. Sta Maria was discharged on this date from the Concussion Clinic.

**Spine Clinic at Emerson Hospital**

On September 11, 2017, Mr. Sta Maria was seen at the Emerson Hospital Spine Clinic at the request of both the Cantu Concussion Center and his primary care physician, Dr. Girolamo. Dr. Arthur Lee noted that Mr. Sta Maria had been experiencing neck pain and cervicogenic headaches since his fall at Target. He was also suffering from left arm pain and right-hand numbness at times. Dr. Lee diagnosed post-concussive syndrome and possible cervical radiculopathy, as well as axial pain and cervicogenic headaches.

On October 5, 2017, Mr. Sta Maria reported to the Spine Clinic again. He reported continued cervical axial neck pain and headaches. His range of motion was "extremely limited," with pain at a 7 out of 10. Reviewing MRIs that had recently been performed, Dr. Lee noted disc herniations with mild impingement on the nerve roots. Dr. Lee recommended cervical facet injections.

Mr. Sta Maria had his first round of injections on October 20, 2017. He returned to Dr. Lee on November 2, 2017, with pain at a level 7 out of 10. Dr. Lee noted that Mr. Sta Maria had done well from the cervical injections, with about 60% improvement for about a week, but he had slowly started returning to baseline. Dr. Lee recommended another round of injections.

5

Mr. Sta Maria had another round of injections on December 1, 2017. He returned to Dr. Lee on December 14, 2017, with significant pain and multiple ADLs limited. His headaches were improved, but he was still experiencing neck pain and myofascial pain along the midline in the cervical spine. He recommended trigger point injections with Dr. Spinelli.

On January 3, 2018, Mr. Sta Maria reported to Dr. Spinelli in the Emerson Spine Program. Dr. Spinelli noted that Mr. Sta Maria's symptoms began after he fell at a Target store in July 2017. "He has been symptomatic ever since with bilateral neck pain and headaches. Pain is described as 7/10, sharp, aching, worse with increased activity in general." His "symptoms decrease function, quality of life, ability to perform activities of daily living." Dr. Spinelli stated that "his ongoing neck pain with headaches may be from chronic muscle spasm," and trigger point injections were performed.

Mr. Sta Maria returned to Dr. Spinelli on April 12, 2018 for continued bilateral neck pain and headaches. Dr. Spinelli noted that Mr. Sta Maria "has returned to work without restrictions despite the pain."

At this visit, Dr. Spinelli noted the following: "His ongoing neck pain with headaches may be from chronic muscle spasm. It could also be due to the . . . mild to moderate degenerative changes seen on MRI. Symptoms began after his fall at Target . . . and he has been symptomatic ever since. He was asymptomatic before the fall. He has tried numerous treatments to include giving things time, physical therapy, chiropractic, cervical facet injections, trigger point injections, but he remains symptomatic. At this point, I think it is reasonable to say that he has reached maximum medical improvement." At this time, Mr. Sta Maria had returned to work; Dr. Spinelli noted that "while this may cause some . . . increase in symptoms, I do not believe he is damaging his spine."

Mr. Sta Maria returned to the Spine Clinic on May 15, 2019. Dr. Spinelli noted that Mr. Sta Maria continued to be symptomatic despite multiple interventions. Dr. Spinelli recommended trigger point injections, which were performed on May 28, 2019 without significant benefit. Mr. Sta Maria followed up with Dr. Spinelli on June 24, 2019 and had another round of trigger point injections on July 18, 2019.

**Physical and Occupational Therapy at Emerson Hospital**

Physical Therapy

Mr. Sta Maria also did physical therapy at Emerson Hospital, beginning with an initial evaluation on August 8, 2017. Mr. Sta Maria was noted to have experienced confusion, dizziness, fogginess, and right upper extremity numbness following his fall at Target. His neck pain had increased since the fall. At a follow-up visit on August 16, 2017, Mr. Sta Maria

6

displayed balance deficits and visual blurriness. He also reported vertigo, ringing in his ears, nausea, headaches, concentration problems and memory loss.

Mr. Sta Maria was re-evaluated on September 21, 2017, with some improvement. On September 26, 2017, clinicians noted that Mr. Sta Maria's cervical pain was improved, but his radicular symptoms were unchanged. On October 11, 2017, it was noted that Mr. Sta Maria had been considering returning to work for financial reasons, not medical reasons, but ultimately had concluded that his pain levels were too high to work at that time.

On November 3, 2017, Mr. Sta Maria was discharged from PT. While he had made some improvements, his neck and low back pain had increased towards the end of his course of PT, and as a result, he was discharged due to lack of progress/regressions with cervical pain.

Between his initial evaluation on August 8, 2017 and his discharge on November 3, 2017, Mr. Sta Maria had 16 sessions of physical therapy.

<u>Occupational Therapy</u>

At the recommendation of his other providers, Mr. Sta Maria pursued occupational therapy services, also at Emerson Hospital, beginning with an initial evaluation on September 11, 2017. At this time, clinicians noted decreased grip strength, pinch strength of right upper extremity and localized elbow and wrist pain. OT was recommended to address right elbow and wrist pain, with continued PT to address cervical and radiating symptoms as well as the concussion. At this evaluation, Mr. Sta Maria was noted to be unable to lift or carry his daughter, lift or carry groceries or heavier items, push heavy doors, or push himself up. Mr. Sta Maria was given exercised to do at home to help his symptoms.

On October 26, 2017, clinicians noted increased grip strength in right elbow flexion but decreased grip with elbow in extension. His pain was lower, but still at a 5 out of 10. He was able to carry his daughter at this time, but only for periods of 5 minutes at a time.

Mr. Sta Maria had eight sessions of OT between his initial evaluation on September 11, 2017 and his final appointment on October 26, 2017.

**Barron Chiropractic**

Mr. Sta Maria pursued chiropractic treatment at Barron Chiropractic & Wellness Center, beginning with an initial evaluation on December 22, 2017 to address neck pain, shoulder pain, and back pain. Of note, Dr. Barron noted that Mr. Sta Maria presented with "visible anxiety and depression," which had only manifested since the fall and concussion. He reported difficulty with lifting, bending over, reaching overhead.

7

On December 27, 2018, Mr. Sta Maria rated his upper back/neck pain at an 8 out of 10, and chest discomfort at an 8 out of 10. Dr. Barron gave Mr. Sta Maria an impairment rating of 5-8%. His initial neck pain disability index score was 72%.

Mr. Sta Maria continued with significant pain for subsequent visits. For example, on March 16, 2018, Mr. Sta Maria rated his neck pain as 8 out of 10, his chest pain as 8 out of 10, and his upper back pain as 7 out of 10. On May 25, 2018, Mr. Sta Maria rated his neck pain as a 9; chest pain as an 8; upper back pain as an 8; and trapezius pain as an 8. Dr. Barron indicated his progress was "very slow." These pain levels continued for the majority of his chiropractic care, underscoring the severity of his condition.

Between his initial evaluation on December 22, 2017 and a re-evaluation on December 7, 2018, Mr. Sta Maria's neck pain disability index score only improved from 72% to 68%. Mr. Sta Maria remained in treatment with only modest benefits.

Mr. Sta Maria is still in treatment with Dr. Barron. At the time records were obtained on in October 2019, Mr. Sta Maria had seen Dr. Barron for forty (54) sessions since his first appointment on December 22, 2017.

### Mental Health Counseling – Katherine Imhoff, LMHC

Mr. Sta Maria has seen Katherine Imhoff, LMHC for counseling services since October 18, 2017, for symptoms related to his fall at Target. Initially, Ms. Imhoff diagnosed Mr. Sta Maria with unspecified anxiety disorder and major depressive disorder due to his fall. His initial symptoms included sleeping problems, anxiety, and depressive symptoms, including depressed mood, sadness, and irritability, all revolving around the fall and not being able to work. In January 2018, Ms. Imhoff changed Mr. Sta Maria's diagnosis to Posttraumatic Stress Disorder (PTSD) due to Mr. Sta Maria's symptoms including anger and thinking about the fall over and over.

In the winter of 2018, Mr. Sta Maria became more depressed and anxious. His primary care provider prescribed Duloxetine.

Mr. Sta Maria's therapy sessions centered exclusively around his fall and how that impacted his life, work, and relationships.

### Lost Wages

At the time of the collision, Mr. Sta Maria was employed full-time as a CNA at Life Care Center of Acton with a wage of $17.04/hour. Mr. Sta Maria averaged 37.5 hours per week prior to the accident.

8

Due to his injuries, Mr. Sta Maria missed 22.14 weeks of work from July 30, 2017 through February 2, 2018.

25.43 weeks x 37.5 hours x $17.04/hour = $16,249.77 in lost wages

Additionally, I must note that Mr. Sta Maria was actually temporarily terminated by Life Care Center of Acton because he had been out of work so long due *solely* to his injuries from this fall. I spoke directly with Life Care to get Mr. Sta Maria's job back, but the stress and anxiety caused by this incident were significant and added to Mr. Sta Maria's pain and suffering. In short, due to the negligence of your insured, Mr. Sta Maria not only could not work, he was then terminated because he had been out on leave for so long.

1. <u>Economic Damages</u>

| Medicals | | |
|---|---|---|
| Emerson Hospital | | $30,117.86 |
| Acton Medical | | $3,108.00 |
| Barron Chiro | | $7,013.00 |
| K. Imhoff | | $3,600.00 |
| CVS (Prescriptions) | | $257.91 |
| | Total | $44,096.77 |
| | | |
| Lost Wages | | $16,249.77 |
| | | |
| **TOTAL ECONOMIC DAMAGES** | | **$60,346.54** |

2. <u>Non-Economic Damages</u>

Pain & suffering/limitation of activities    $239,653.46

<u>**TOTAL DEMAND: $300,000.00**</u>

III.   <u>Conclusion</u>

Liability is clear in this case. My client slipped and fell on a water in the busiest area of a commercial store, an area with the most staff around but no signs or other warnings telling customers to be careful of the wet floor.

Mr. Sta Maria's resulting injuries were severe. He was diagnosed with a concussion, which brought with it wide-ranging symptoms including headaches, memory and concentration issues, vision problems, and psychiatric symptoms. In addition, my client had severe neck,

9

back, and shoulder pain, which necessitated physical therapy and chiropractic treatment, the latter of which is still ongoing. In the years that Mr. Sta Maria has been in chiropractic treatment, his neck pain has only improved slightly. Additionally, Mr. Sta Maria injured his elbow and wrist, requiring occupational therapy services. My client was dealing with significant symptoms that impacted every aspect of his life.

Mr. Sta Maria's neck and back pain is so severe that he has had to try a variety of interventions, all with little to no long-term improvement.

In short, as a result of the fall, Mr. Sta Maria was simply unable to do the things he was normally accustomed to doing.

This includes work. At the time of the fall, Mr. Sta Maria was working as a CNA in a nursing home. Due to the fall, Mr. Sta Maria was out of work for approximately six months. Additionally, Mr. Sta Maria had to deal with the stress of being terminated (temporarily, until I intervened).

Mr. Sta Maria also experienced a variety of psychiatric symptoms, including depression, anxiety, and PTSD, as a result of the fall and resulting concussion. These issues have necessitated significant ongoing counseling services.

It is difficult to put into words the extent to which this fall upended my client's entire life. This is a case where pain and suffering was, and is, clear. Demand is therefore made in the amount of $300,000.00. Please respond with a reasonable offer of settlement within thirty (30) days, in compliance with Chapter 93A.

Sincerely,

*Christopher R. Wurster*

Christopher R. Wurster, Esq.

10

# EXHIBIT 2



## LEVINE-PIRO LAW

**Melissa A. Levine-Piro, Esq.**
melissa@levinepirolaw.com

**Christopher R. Wurster, Esq.**
chris@levinepirolaw.com

**Alexandra D. Ressa, Esq.**
alexandra@levinepirolaw.com

**Amanda Castro, Esq.**
amanda@levinepirolaw.com

**Kathleen A. Murphy, Esq.**
katie@levinepirolaw.com

**Christine M. Boutin, Esq.**
Of Counsel
christine@levinepirolaw.com

**Jared J. Kelly, Esq.**
jared@levinepirolaw.com

163 Main Street
Maynard, MA
01754

(978) 637-2048
(978) 637-2182(f)

www.levinepirolaw.com

April 15, 2020

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Target
86 Orchard Hill Park Drive
Leominster, MA 01453

RE:   My Client:    Bonifacio Sta Maria
       Date of Loss:    7/15/2017

To Whom It May Concern:

As you know, Levine-Piro Law, P.C. represents Mr. Bonifacio Sta Maria in his claim for personal injuries stemming from a fall that occurred on July 15, 2017 at the Target store in Leominster, Massachusetts. This letter is a demand for settlement, sent pursuant to the Massachusetts Consumer Act, M.G.L. c. 93A, §9.

Your failure to make a reasonable, written tender of relief within **thirty (30)** days of this demand may result in Target's liability for multiple damages, costs, and reasonable attorney's fees.

Attached, please find a copy of the demand letter I am sending to Sheryl Bruce at Sedgwick CMS, your insurance carrier or third-party administrator. That letter is incorporated herein by reference. Target's violations of Chapter 93A are spelled out in the demand to Ms. Bruce. The medical records and bills referenced in that letter are available to you upon request, and they are being provided to Ms. Bruce.

For the reasons enumerated in my letter to Ms. Bruce, demand is made in the amount of $300,000.00. Please respond with a reasonable offer of settlement within thirty (30) days, in compliance with Chapter 93A.

Sincerely,

*Christophe Wurster*

Christopher R. Wurster, Esq.

CC: Sheryl Bruce (by e-mail_

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

CHRISTOPHER WORSTER
Revive Bird Law
163 MAIN ST.
MAYNARD, Mn 01754

6020200917016688

000267465G0001

9/17/2020 12:00:00 AM

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

TARGET
80 ORCHARD HILL PARK DR
LEOMINSTER, MA
01453

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X OJOMASTAO C14    ☐ Agent
                   ☒ Addressee

B. Received by (Printed Name)    C. Date of Delivery
DS F/O C14                       4/5/20

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
   ☒ Certified Mail®      ☐ Priority Mail Express™
   ☐ Registered           ☐ Return Receipt for Merchandise
   ☐ Insured Mail         ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)

7019 0700 0001 7250 4887

PS Form 3811, July 2013          Domestic Return Receipt

6020200917016688

000267465G0001

# EXHIBIT 3

# Chris Wurster

| | |
|---|---|
| **From:** | Chris Wurster |
| **Sent:** | Tuesday, July 7, 2020 5:34 PM |
| **To:** | Hansen, Colleen A. |
| **Subject:** | RE: 000267465G-0001 - STA MARIA, BONIFACIO  - 07/15/2017 |

Colleen,

With respect, your email does not make sense to me. You stated that if litigation begins in earnest you might take a stronger position on defense, but I simply have no idea what your position is at this time because no offer has been made. The only information I have been provided with is from the prior adjuster, who represented that the video does not support some aspect of my client's claim. I can't imagine a stronger position than that. I also cannot imagine why, if that were true, you would not produce the video now in negotiations when you know you're months away from having to produce it anyway, so I can only conclude that the video does not show what it has been represented to show.

Due to this unfortunate position, I am not inclined to delay service, however, in good faith, I will see what your offer is after you review the records I have obtained. I have obtained records for my client from July 2014-July 2017 and will shortly send you an email sharing those with you through Citrix ShareFile. They show no prior neck/back issues and nothing that would explain his severe symptoms following the fall at Target.

Please provide me with your offer by July 15, 2020. The records are not voluminous, so they should not take long to go through.

Thanks.

--
Christopher R. Wurster, Esq.
Levine-Piro Law, P.C.
163 Main Street
Maynard, MA 01754
(978) 637-2048 / (978) 637-2182 (fax)
www.levinepirolaw.com

*Additional Offices in Quincy and Boston

**From:** Hansen, Colleen A. <Colleen.Hansen@sedgwick.com>
**Sent:** Thursday, July 2, 2020 12:09 PM
**To:** Chris Wurster <chris@levinepirolaw.com>
**Subject:** RE: 000267465G-0001 - STA MARIA, BONIFACIO - 07/15/2017

Hi Chris,
Thanks for the courtesy copy of the complaint.  I had suggested that you hold off on service just to allow time for you to gather and submit the additional information that we had requested in order to properly evaluate your client's claim. Unfortunately, we are unable to provide a copy of the video outside of discovery.  If you feel that you need to serve the complaint at this time, I understand.

Once we receive the additional information requested, we will be happy to review and complete an evaluation of your client's claim in an effort to resolve the matter.  However once the case is moved into litigation, it is possible that a stronger position concerning the defense of this matter will be taken.

1

Thanks,

**COLLEEN HANSEN** | Claims Team Lead - Assistant
**Sedgwick** | ⊙**TARGET** Guest Reporting Center
P.O. Box 14453 | Lexington, KY 40512-4453
Toll-Free 1-800-553-8723 | ext. 32334
Direct 612-313-2334 | Fax 1-800-922-9165
Email Colleen.Hansen@sedgwick.com
www.sedgwick.com | Caring counts℠
*For real-time information, please access your claim on mySedgwick.com*

 **sedgwick.**

Sedgwick is operational and managing claims.
Visit our COVID-19 update center
for the latest pandemic-related resources.

---

**From:** Chris Wurster [mailto:chris@levinepirolaw.com]
**Sent:** Monday, June 29, 2020 12:23 PM
**To:** Hansen, Colleen A.
**Subject:** RE: 000267465G-0001 - STA MARIA, BONIFACIO - 07/15/2017

Hi Colleen,

Just a brief update. I e-filed our complaint in Superior Court today. A courtesy copy is attached. When I get the tracking order and a stamped, filed version of the complaint back from the Court, I'll provide a courtesy copy to you. You asked me to hold off on service of this, and I'm happy to do so, provided you will share with me now the video that Target has of the incident involving my client. I know from the prior adjuster that there is a video, but she was unwilling to share it with me. I will undoubtedly be entitled to it now that we are in litigation, and I feel that it is necessary for me to see it in order to properly engage in negotiations. Please provide it to me at your earliest convenience. If you are unwilling to do so, unfortunately, it would not benefit my client to hold off on service of the complaint.

We have requested the records you are seeking (3 years prior) and once those are received, I will send them over to you. I am certainly hopeful that we will be able to resolve this, but must take certain actions in order to protect my client's rights, and to that end, I need the video of the incident.

Thank you.

--
Christopher R. Wurster, Esq.
**Levine-Piro Law, P.C.**
163 Main Street
Maynard, MA 01754
(978) 637-2048 / (978) 637-2182 (fax)
www.levinepirolaw.com

*Additional Offices in Quincy and Boston

**From:** Chris Wurster
**Sent:** Tuesday, June 9, 2020 2:55 PM
**To:** Hansen, Colleen A. <Colleen.Hansen@sedgwick.com>
**Subject:** RE: 000267465G-0001 - STA MARIA, BONIFACIO - 07/15/2017

2

Understood. I've contacted my client about obtaining new releases to gather the info you are requesting. I certainly have no problem providing it, both as a general rule and because you would no doubt entitled to it in discovery in any event. We will also provide the Medicare form to you as well. I'll be back in touch with the form soon. As I'm sure you know, sometimes getting records can take a while depending on how "together" the medical records department at the provider's office is (!), but we'll get them as quickly as we can and provide them to you.

Thanks.

--
Christopher R. Wurster, Esq.
Levine-Piro Law, P.C.
163 Main Street
Maynard, MA 01754
(978) 637-2048 / (978) 637-2182 (fax)
www.levinepirolaw.com

*Additional Offices in Quincy and Boston

---

**From:** Hansen, Colleen A. <Colleen.Hansen@sedgwick.com>
**Sent:** Tuesday, June 9, 2020 2:52 PM
**To:** Chris Wurster <chris@levinepirolaw.com>
**Subject:** RE: 000267465G-0001 - STA MARIA, BONIFACIO - 07/15/2017

Hi Christopher,
I did get the email you sent to Sheryl Bruce and I understand that the statute is approaching. If you need to file to protect the statute of limitation while the additional information is being sought, I completely understand.  I would suggest that you simply hold off on serving the complaint until absolutely necessary after filing to allow time to secure and submit the requested information to us.

Unfortunately, I am unable to make an offer until we have ruled out Medicare's involvement and the chance of securing authority to make an offer without the prior medical records is slim.

Thanks,

**COLLEEN  HANSEN  |  Claims Team Lead - Assistant**
**Sedgwick | ⊙TARGET** Guest Reporting Center
P.O. Box 14453 | Lexington, KY 40512-4453
Toll-Free 1-800-553-8723 | ext. 32334
Direct 612-313-2334 | Fax 1-800-922-9165
Email Colleen.Hansen@sedgwick.com
www.sedgwick.com |  Caring counts℠
*For real-time information, please access your claim on mySedgwick.com*



---

Sedgwick is operational and managing claims.
Visit our COVID-19 update center
for the latest pandemic-related resources.

---

**From:** Chris Wurster [mailto:chris@levinepirolaw.com]
**Sent:** Tuesday, June 9, 2020 1:40 PM
**To:** Hansen, Colleen A.
**Subject:** RE: 000267465G-0001 - STA MARIA, BONIFACIO - 07/15/2017

3

Hi Colleen,

Thank you for reaching out. Did you receive the email that I sent to Sheryl Bruce last week? As you may know, the SOL on this case runs in mid-July, and therefore, I will need to file suit on this case in the next couple of weeks.

I do not have my clients prior records. What I can tell you for now is that he has reported to me that he did not have any prior neck issues. There is also one visit from just prior to the accident at Target, which is in the records I provided to Sedgwick, that gives him an essentially clean bill of health.

Are you able to make any kind of offer at this time? I understand if you need to wait to look at the prior records, but given the SOL, I did want to ask to at least see if a resolution is going to be possible. We can also simply file suit and hopefully continue to negotiate after suit is filed with a view towards an early resolution of this case, as it is my view that protracted litigation does not serve anyone's interests.

Thank you.

--
Christopher R. Wurster, Esq.
Levine-Piro Law, P.C.
163 Main Street
Maynard, MA 01754
(978) 637-2048 / (978) 637-2182 (fax)
www.levinepirolaw.com

*Additional Offices in Quincy and Boston

---

**From:** Hansen, Colleen A. <Colleen.Hansen@sedgwick.com>
**Sent:** Tuesday, June 9, 2020 1:27 PM
**To:** Chris Wurster <chris@levinepirolaw.com>
**Subject:** 000267465G-0001 - STA MARIA, BONIFACIO - 07/15/2017

Good Afternoon Mr. Wurster,
I have taken over the handling of your client's claim and I have completed my review of the voluminous documents you had submitted. However, it appears that we will require some additional information in order to complete our evaluation in this matter.

Please provide prior records on your client for 3 years preceding the incident at Target. Given the nature of your client's profession and the significant disc desiccation in his cervical spine, we will need prior records in order to rule out any prior complaints pertaining to his neck.

Also, we are required to determine whether or not your client is a Medicare Beneficiary prior to entering into any negotiations on a claim. Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (MMSEA) added mandatory reporting requirements with respect to Medicare beneficiaries who receive settlements, judgments, awards or other payment from liability insurance, no-fault insurance, or workers' compensation. Accordingly, we must collect the information on the attached form to determine if we are required to report this claim pursuant to the MMSEA requirements.

Please complete Sections I and II of the enclosed form and return it to me. If you are unwilling to provide your complete Social Security Number, it is acceptable for you to provide the last 5 digits. If you are unwilling to provide any Social Security information, please also complete Section III and provide your reasoning in the space provided. Make sure you have signed the form before returning it to me.

If you have questions about this form or the MMSEA please go to: http://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/Mandatory-Insurer-Reporting For-Non-Group-Health-Plans/Overview.html or contact the Benefits Coordination

4

& Recovery Center (BCRC). BCRC Customer Service Representatives are available to assist you Monday through Friday, from 8:00 a.m. to 8:00 p.m., Eastern Time, except holidays, at toll-free lines: 1-855-798-2627 (TTY/TDD: 1-855-797-2627 for the hearing and speech impaired). Thank you for your anticipated cooperation.

Thanks,

COLLEEN HANSEN | Claims Team Lead - Assistant
**Sedgwick | ⊙TARGET** Guest Reporting Center
P.O. Box 14453 | Lexington, KY 40512-4453
Toll-Free 1-800-553-8723 | ext. 32334
Direct 612-313-2334 | Fax 1-800-922-9165
Email Colleen.Hansen@sedgwick.com
www.sedgwick.com | Caring counts℠
*For real-time information, please access your claim on mySedgwick.com*



Sedgwick is operational and managing claims.
Visit our COVID-19 update center
for the latest pandemic-related resources.

Any personal data acquired, processed or shared by us will be lawfully processed in line with applicable data protection legislation. If you have any questions regarding how we process personal data refer to our Privacy Notice https://www.sedgwick.com/global-privacy-policy. Any communication including this email and files/attachments transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. If this message has been sent to you in error, you must not copy, distribute or disclose of the information it contains and you must notify us immediately (contact is within the privacy policy) and delete the message from your system.

Any personal data acquired, processed or shared by us will be lawfully processed in line with applicable data protection legislation. If you have any questions regarding how we process personal data refer to our Privacy Notice https://www.sedgwick.com/global-privacy-policy. Any communication including this email and files/attachments transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. If this message has been sent to you in error, you must not copy, distribute or disclose of the information it contains and you must notify us immediately (contact is within the privacy policy) and delete the message from your system.

Any personal data acquired, processed or shared by us will be lawfully processed in line with applicable data protection legislation. If you have any questions regarding how we process personal data refer to our Privacy Notice https://www.sedgwick.com/global-privacy-policy. Any communication including this email and files/attachments transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. If this message has been sent to you in error, you must not copy, distribute or disclose of the information it contains and you must notify us immediately (contact is within the privacy policy) and delete the message from your system.

9/17/2020 12:00:00 AM                    000267465G0001                    6020200917016688

# EXHIBIT 4

**Chris Wurster**

| | |
|---|---|
| **From:** | Chris Wurster |
| **Sent:** | Wednesday, July 8, 2020 11:54 AM |
| **To:** | Hansen, Colleen A. |
| **Subject:** | RE: Sta Maria records |
| **Attachments:** | 6.24.2020 Sta Maria, Bonifacio - Mass General Hospital Medical Records - Sec.pdf; 7.6.2020 Sta Maria, Bonifaciio - Acton Medical Associates Medical Records - Sec.pdf |

Sending (attached) as password-protected. I will have my assistant call you with the password.

--
Christopher R. Wurster, Esq.
Levine-Piro Law, P.C.
163 Main Street
Maynard, MA 01754
(978) 637-2048 / (978) 637-2182 (fax)
www.levinepirolaw.com

*Additional Offices in Quincy and Boston

**From:** Hansen, Colleen A. <Colleen.Hansen@sedgwick.com>
**Sent:** Wednesday, July 8, 2020 11:13 AM
**To:** Chris Wurster <chris@levinepirolaw.com>
**Subject:** RE: Sta Maria records

I am unable to access this. Could you please resend in some other format?

**From:** mail@sf-notifications.com [mailto:mail@sf-notifications.com]
**Sent:** Tuesday, July 7, 2020 4:35 PM
**To:** Hansen, Colleen A.
**Subject:** Sta Maria records

**CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.**

# Citrix ShareFile

Attorney Levine-Piro Law has sent you files.                    Expires 8/6/20

To download this file, you must first activate your account and set your personal password.

A note from Attorney :

1

Christopher R. Wurster, Esq.
Levine-Piro Law, P.C.
163 Main Street
Maynard, MA 01754
(978) 637-2048 / (978) 637-2182 (fax)
www.levinepirolaw.com

*Additional Offices in Quincy and Boston



Trouble with the above link? You can copy and paste the following URL into your web browser:
https://levinepirolaw.sharefile.com/d-36a2986f63444ec8?a=c361de88359b3792

ShareFile is a tool for sending, receiving, and organizing your business files online. It can be used as a password-protected area for sharing information with clients and partners, and it's an easy way to send files that are too large to e-mail.

Powered By Citrix ShareFile 2020

Any personal data acquired, processed or shared by us will be lawfully processed in line with applicable data protection legislation. If you have any questions regarding how we process personal data refer to our Privacy Notice https://www.sedgwick.com/global-privacy-policy. Any communication including this email and files/attachments transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. If this message has been sent to you in error, you must not copy, distribute or disclose of the information it contains and you must notify us immediately (contact is within the privacy policy) and delete the message from your system.

# EXHIBIT 5

Sedgwick Claims Management Services, Inc.
P O Box 14453
Lexington, KY 40512-4453


sedgwick.

January 14, 2020

Christopher R. Wurster, Attorney at Law
Levine-Piro Law, P.C.
63 Great Road, Suite 101
Maynard, MA 01754

Re:   Our Client:       Target Corporation
           Our Claim File:    000267465G-0001
           Date of Loss:      07/15/2017
           Your Client:       Bonifacio Sta Maria

Dear Mr. Wurster:

Please be advised that I have been reassigned the handling of the above captioned claim. Please direct all future correspondence to my attention.

In reviewing the file notes, it appears that your client has undergone extensive medical care following this incident. I note that we have previously advised you that this incident shows a relatively minor slip and fall to the ground and that your client's contentions that he struck his head and lost consciousness are not accurate. While Mr. Sta Maria may have sustained an injury in this accident, we do not expect that a jury will consider any head injury in their evaluation of this claim.

At this time we would again ask that you submit any material that you would like considered as part of this claim. Given the prolonged care, it will be necessary for us to have access to your client's medical records since January 1, 2015 to determine whether or not the care he has been receiving was due to injuries sustained in the accident at Target or due to prior medical conditions. Please provide those records to us. If you would like us to secure those records independently, please have your client complete and return the medical authorization form and provider list that was sent to your office back on August 10, 2017.

Thank you in advance for your attention to this matter. I look forward to your response.

Sincerely,

Scott Robbins

Scott Robbins
Claims Team Lead – Assistant
Target Corporation Guest Reporting Center
(612)344-0542
Scott.Robbins@sedgwick.com
Sedgwick manages claims on behalf of TARGET CORPORATION.

File Number: 000267465G-0001



 

Target Guest Reporting Center | P.O. Box 14453 | Lexington, KY 40512-4453



   1/14/2020      000267465G0001        552020011417759        

## Client Information Form
File # 000267465G-0001

*Please complete this form and return*          Firm Tax ID Number: _____

Client Name: _____

Client Address: _____

Date of Birth: _____          Social Security Number: _____

Marital Status: _____          Name of Spouse: _____

Employed at the time of incident: _____          Name of Employer: _____

Claiming Wage Loss: _____          Salary/Hourly Wage Rate: _____

Claimed Injuries: _____

Prior Injuries: _____

Theory of Liability: _____
_____

Treating Providers:

1          Doctor/Facility:
           Address:
           Phone:
           Dates Treated:

2.         Doctor/Facility:
           Address:
           Phone:
           Dates Treated:

3.         Doctor/Facility:
           Address:
           Phone:
           Dates Treated:

4.         Doctor/Facility:
           Address:
           Phone:
           Dates Treated:

5.         Doctor/Facility:
           Address:
           Phone:
           Dates Treated:

File Number: 000267465G-0001



          1/14/2020          000267465G0001          562020011417759          

9/17/2020 12:00:00 AM          000267465G0001          6020200917016688

Target Guest Reporting Center | P.O. Box 14453 | Lexington, KY 40512-4453



 

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

COLLEEN HANSON
SEDGWICK CLAIMS MANAG
PO BOX 14453
LEXINGTON KY 40512

9590 9402 5189 9122 6949 74

2. Article Number (Transfer from service label)

7019 0700 0001 7250 4894

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X   PATRICK AJAYI   ☐ Agent
                    ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

(postmark) LEXINGTON KENTUCKY 1676 · USPS · AUG 10 2020

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt

6020200917016688

000267465G0001

9/17/2020 12:00:00 AM

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

USPS TRACKING #



9590 9402 5189 9122 6949 74

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box •

Christopher Wurster, Esq.
Levine - Piro Law
163 Main Street
Maynard, MA 01754

6020200917016688

0002674465G0001

9/17/2020 12:00:00 AM

3

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

MIDDLESEX SUPERIOR COURT
C.A. No: 20-1494

)
BONIFACIO STA MARIA,        )
     Plaintiff,            )
                )
v.                          )
                )
TARGET CORPORATION,         )
     Defendant            )
)

6/29/2020

NH

**RECEIVED**

### MOTION FOR SPECIAL PROCESS SERVER

NOW COMES the Plaintiff, Bonifacio Sta Maria ("Plaintiff"), in the above-captioned matter and, pursuant to Mass. R. Civ. P. 4(c) hereby respectfully moves this Honorable Court to appoint Robert Sweeney of Constable Services, Cambridge, MA, or some other constable licensed to serve civil process who is over the age of 18 and not a party to this action, as a special process server in this action.

Respectfully submitted,

Dated: 6/29/2020

The Plaintiff,
BONIFACIO STA MARIA,
By His Attorney,

/s/ Christopher Wurster
Christopher Wurster, Esq. (BBO #679835)
Levine-Piro Law, P.C.
163 Main Street
Maynard, MA 01754
978-637-2048
Fax 978-737-2182
chris@levinepirolaw.com

6/30/2020 Motion Allowed
Attest:
Deputy Assistant Clerk
( Doolin J.)

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| PLAINTIFF(S): | BONIFACIO STA MARIA | COUNTY | Middlesex |
|---|---|---|---|

ADDRESS: 163 MAIN STREET

MAYNARD, MA 01754

DEFENDANT(S): TARGET CORPORATION

ATTORNEY: CHRISTOPHER R. WURSTER, ESQ.

ADDRESS: LEVINE-PIRO LAW, P.C.

163 MAIN STREET

MAYNARD, MA 01754

BBO: 679835

ADDRESS: 1000 NICOLLET MALL

MINNEAPOLIS, MN 55403

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B20 | Personal Injury - Slip and Fall | F | ☒ YES  ☐ NO |

*If "Other" please describe:

| Is there a claim under G.L. c. 93A? | Is this a class action under Mass. R. Civ. P. 23? |
|---|---|
| ☒ YES  ☐ NO | ☐ YES  ☒ NO |

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

#### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ............................................................................................ $
2. Total doctor expenses ............................................................................................. $
3. Total chiropractic expenses ..................................................................................... $
4. Total physical therapy expenses .............................................................................. $
5. Total other expenses (describe below) ...................................................................... $
                                                                                    Subtotal (A): $ > 45,000

6/29/2020          NH

B. Documented lost wages and compensation to date ....................................................... $ > 16,000
C. Documented property damages to date ......................................................................... $
D. Reasonably anticipated future medical and hospital expenses ....................................... $
E. Reasonably anticipated lost wages .............................................................................. $
F. Other documented items of damages (describe below) .................................................. $
Pain and suffering

RECEIVED

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
Neck, back, shoulder injury; concussion and post-concussion syndrome with psych symptoms

TOTAL (A-F):$ > 61,000

#### CONTRACT CLAIMS
(attach additional sheets as necessary)

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

TOTAL: $

Signature of Attorney/ Unrepresented Plaintiff: X                     Date: Jun 29, 2020

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X                     Date: Jun 29, 2020

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

### AC Actions Involving the State/Municipality *

| | |
|---|---|
| AA1 Contract Action Involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 Tortious Action Involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 Administrative Action involving Commonwealth, Municipality, MBTA, etc. | (A) |

### CN Contract/Business Cases

| | |
|---|---|
| A01 Services, Labor, and Materials | (F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A04 Employment Contract | (F) |
| A05 Consumer Revolving Credit - M.R.C.P. 8.1 | (F) |
| A06 Insurance Contract | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (A) |
| A14 Interpleader | (F) |
| BA1 Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 Shareholder Derivative | (A) |
| BB2 Securities Transactions | (A) |
| BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 Intellectual Property | (A) |
| BD2 Proprietary Information or Trade Secrets | (A) |
| BG1 Financial Institutions/Funds | (A) |
| BH1 Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 Other Contract/Business Action - Specify | (F) |

\* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

† Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

| | |
|---|---|
| D01 Specific Performance of a Contract | (A) |
| D02 Reach and Apply | (F) |
| D03 Injunction | (F) |
| D04 Reform/ Cancel Instrument | (F) |
| D05 Equitable Replevin | (F) |
| D06 Contribution or Indemnification | (F) |
| D07 Imposition of a Trust | (A) |
| D08 Minority Shareholder's Suit | (A) |
| D09 Interference in Contractual Relationship | (F) |
| D10 Accounting | (A) |
| D11 Enforcement of Restrictive Covenant | (F) |
| D12 Dissolution of a Partnership | (F) |
| D13 Declaratory Judgment, G.L. c. 231A | (A) |
| D14 Dissolution of a Corporation | (F) |
| D99 Other Equity Action | (F) |

### PA Civil Actions Involving Incarcerated Party †

| | |
|---|---|
| PA1 Contract Action Involving an Incarcerated Party | (A) |
| PB1 Tortious Action involving an Incarcerated Party | (A) |
| PC1 Real Property Action involving an Incarcerated Party | (F) |
| PD1 Equity Action involving an Incarcerated Party | (F) |
| PE1 Administrative Action involving an Incarcerated Party | (F) |

### TR Torts

| | |
|---|---|
| B03 Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 Other Negligence - Personal Injury/Property Damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice - Medical | (A) |
| B07 Malpractice - Other | (A) |
| B08 Wrongful Death - Non-medical | (A) |
| B15 Defamation | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury - Slip & Fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| BE1 Fraud, Business Torts, etc. | (A) |
| B99 Other Tortious Action | (F) |

### RP Summary Process (Real Property)

| | |
|---|---|
| S01 Summary Process - Residential | (X) |
| S02 Summary Process - Commercial/ Non-residential | (F) |

### RP Real Property

| | |
|---|---|
| C01 Land Taking | (F) |
| C02 Zoning Appeal, G.L. c. 40A | (F) |
| C03 Dispute Concerning Title | (F) |
| C04 Foreclosure of a Mortgage | (X) |
| C05 Condominium Lien & Charges | (X) |
| C99 Other Real Property Action | (F) |

### MC Miscellaneous Civil Actions

| | |
|---|---|
| E18 Foreign Discovery Proceeding | (X) |
| E97 Prisoner Habeas Corpus | (X) |
| E22 Lottery Assignment, G.L. c. 10, § 28 | (X) |

### AB Abuse/Harassment Prevention

| | |
|---|---|
| E15 Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 Protection from Harassment, G.L. c. 258E | (X) |

### AA Administrative Civil Actions

| | |
|---|---|
| E02 Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 Certiorari Action, G.L. c. 249, § 4 | (X) |
| E05 Confirmation of Arbitration Awards | (X) |
| E06 Mass Antitrust Act, G.L. c. 93, § 9 | (A) |
| E07 Mass Antitrust Act, G.L. c. 93, § 8 | (X) |
| E08 Appointment of a Receiver | (X) |
| E09 Construction Surety Bond, G.L. c. 149, §§ 29, 29A | (A) |
| E10 Summary Process Appeal | (X) |
| E11 Worker's Compensation | (X) |
| E16 Auto Surcharge Appeal | (X) |
| E17 Civil Rights Act, G.L. c. 12, § 11H | (X) |
| E24 Appeal from District Court Commitment, G.L. c.123, § 9(b) | (X) |
| E25 Pleural Registry (Asbestos cases) | |
| E94 Forfeiture, G.L. c. 265, § 56 | (X) |
| E95 Forfeiture, G.L. c. 94C, § 47 | (F) |
| E99 Other Administrative Action | (X) |
| Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B | (F) |
| Z02 Appeal Bond Denial | (X) |

### SO Sex Offender Review

| | |
|---|---|
| E12 SDP Commitment, G.L. c. 123A, § 12 | (X) |
| E14 SDP Petition, G.L. c. 123A, § 9(b) | (X) |

### RC Restricted Civil Actions

| | |
|---|---|
| E19 Sex Offender Registry, G.L. c. 6, § 178M | (X) |
| E27 Minor Seeking Consent, G.L. c.112, § 12S | (X) |

### TRANSFER YOUR SELECTION TO THE FACE SHEET

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES  ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** - The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.

**DUTY OF THE DEFENDANT** - If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
## MAY RESULT IN DISMISSAL OF THIS ACTION.

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2081CV01494 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| **CASE NAME:** Sta Maria, Bonifacio vs. Target Corporation | | Michael A. Sullivan, Clerk of Court Middlesex County |
| TO: Christopher Wurster, Esq. Levine-Piro Law, PC 163 Main St Maynard, MA 01754 | | COURT NAME & ADDRESS Middlesex Superior - Lowell 370 Jackson Street Lowell, MA 01852 |

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 09/28/2020 | |
| Response to the complaint filed (also see MRCP 12) | | 10/27/2020 | |
| All motions under MRCP 12, 19, and 20 | 10/27/2020 | 11/27/2020 | 12/28/2020 |
| All motions under MRCP 15 | 10/27/2020 | 11/27/2020 | 12/28/2020 |
| All discovery requests **and depositions** served and non-expert depositions completed | 04/26/2021 | | |
| All motions under MRCP 56 | 05/25/2021 | 06/24/2021 | |
| Final pre-trial conference held and/or firm trial date set | | | 10/22/2021 |
| Case shall be resolved and judgment shall issue by | | | 06/29/2022 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 06/30/2020 | ASSISTANT CLERK Brian F Burke | PHONE (978)453-0201 |
|---|---|---|

Date/Time Printed: 06-30-2020 11:22:42                                SCV026h 08/2018

Sedgwick Claims Mgmt Services Inc
84 State St.
Boston, MA

BOB SWEENEY
CONSTABLE SERVICES
PO BOX 80018
STONEHAM MA 02180



**null / ALL**
**Transmittal Number: 22026730**
**Date Processed: 09/16/2020**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Leah Frederick<br>Sedgwick Claims Management Services, Inc.<br>8125 Sedgwick Way<br>Memphis, TN 38125-1128 |
| **Electronic copy provided to:** | Jonathan Garrett<br>Lindsay Campbell<br>Valerie Cadigan<br>Heather Jackson<br>Joshua Jimenez |

| | |
|---|---|
| **Entity:** | Sedgwick Claims Management Services, Inc.<br>Entity ID Number  0527865 |
| **Entity Served:** | Sedgwick Claims Management Services, Inc. |
| **Title of Action:** | Bonifacio Sta Maria vs. Target Corporation |
| **Matter Name/ID:** | Bonifacio Sta Maria vs. Target Corporation  (10510131) |
| **Document(s) Type:** | Summons and Amended Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Middlesex County Superior Court, MA |
| **Case/Reference No:** | 2081CV01494 |
| **Jurisdiction Served:** | Massachusetts |
| **Date Served on CSC:** | 09/16/2020 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Christopher Wurster<br>978-637-2048 |
| **Client Requested Information:** | Claim Number(s): 000267465G-001 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

## Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2081 CV 01494

Bonifacio Sta Maria _____, PLAINTIFF(S),

v. Target Corporation and
Sedgwick Claims Management , DEFENDANT(S)
Services, Inc.

**SUMMONS**

THIS SUMMONS IS DIRECTED TO Sedgwick Claims Management . (Defendant's name)
Services, Inc.

**You are being sued.**  The Plaintiff(s) named above has started a lawsuit against you. A copy of the
Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been
filed in the Middlesex Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide
the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the
opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect
to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an
extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a
copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

    a. Filing your **signed original** response with the Clerk's Office for Civil Business, Middlesex Sup Court,
    370 Jackson Q., Lowell, MA (address), by mail or in person, **AND**

    b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following
    address: Christopher Wurster, 163 Main St., Maynard, MA 01754

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer
must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.
Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to
use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are
based on the same facts or transaction described in the Complaint, then you must include those claims
in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this
lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your
Answer or in a written demand for a jury trial that you must send to the other side and file with the
court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a
**"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion
to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If
you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions"
described in the rules of the Court in which the complaint was filed, available at
www.mass.gov.courts/case-legal-res/rules of court.

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _June 30_____, 20 _20_.

_____

Michael A. Sullivan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on_____, 20____, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated:_____, 20____      Signature: _____

**N.B.      TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

9/16 , 20 20

# 1

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

MIDDLESEX SUPERIOR COURT
C.A. No:

|  |  |
|---|---|
| BONIFACIO STA MARIA, ) | |
| ) | |
| Plaintiff, ) | 6/29/2020 |
| ) | |
| v. ) | |
| ) | NH |
| TARGET CORPORATION, ) | |
| ) | **RECEIVED** |
| Defendant ) | |
| ) | |

## COMPLAINT AND JURY CLAIM

### Parties

1. Plaintiff Bonifacio Sta Maria is a resident of Acton, Middlesex County, Massachusetts.

2. Defendant Target Corporation ("Target") is a corporation duly organized under the laws of the State of Minnesota, with a principal place of business located at 1000 Nicollet Mall, Minneapolis, Minnesota.

3. On or about July 15, 2017, Defendant Target Corporation operated a place of business located at 86 Orchard Hill Park Drive, Leominster, Worcester County, Massachusetts.

### Jurisdiction and Venue

4. Jurisdiction is properly conferred by M.G.L. c. 212 § 4 and c. 223A § 3.

5. Venue is properly laid in Middlesex County pursuant to M.G.L. c. 223 § 1 because Plaintiff lives in Middlesex County.

### Facts

6. On or about July 15, 2017, Bonifacio Sta Maria was lawfully on the premises of the Target Corporation place of business located at 86 Orchard Hill Park Drive, Leominster, Worcester County, Massachusetts (the "Store").

7. Mr. Sta Maria was lawfully on the premises of the Store in his capacity as a customer and/or business invitee of the Store.

8.  While on the premises of the Store, Mr. Sta Maria slipped/tripped on, and/or was caused to fall by the presence of a dangerous defect and/or defective condition on the ground near the checkout area of the Store.

9.  The dangerous defect and/or defective condition near the checkout area of the Store was directly in a pathway used by customers of the Store and in an area frequently monitored by numerous Target Corporation employees.

10. As a result of the fall, Mr. Sta Maria was caused to suffer severe injuries of body and mind, was forced to seek medical treatment, incurred medical expenses, lost substantial wages, and was prevented from carrying out his usual activities for a long period of time.

11. By operating the Store in an unsafe manner as described above, Target Corporation engaged in unfair and deceptive trade practices.

## COUNT I - NEGLIGENCE

12. The Plaintiff repeats the allegations set forth in the preceding paragraphs of this Complaint as if set forth herein.

13. On or about July 15, 2017, and at all times pertaining to this Complaint, Defendant Target Corporation, was the owner, the entity in control, and/or the entity responsible for the maintenance of the location in which Mr. Sta Maria fell.

14. On or about July 15, 2017, and at all times pertaining to this Complaint, Defendant Target Corporation, had a duty to maintain the location in which Mr. Sta Maria fell in a safe manner and to keep it free from defects and hazards.

15. Defendant Target Corporation was negligent in its failure to maintain in a safe manner the location in which Mr. Sta Maria fell.

16. Defendant Target Corporation was negligent in its failure to correct or to warn Mr. Sta Maria of the presence of the dangerous and defective condition that caused Mr. Sta Maria to fall.

17. Defendant Target Corporation knew or should have known of its failure to maintain safely and properly the location in which Mr. Sta Maria fell, thereby creating an unreasonable danger to Mr. Sta Maria.

18. On or about July 15, 2017, Mr. Sta Maria sustained injuries due the negligent failure of Defendant Target Corporation to maintain safely and properly the location in which Mr. Sta Maria fell.

19. As a direct and proximate result of the negligence of Defendant Target Corporation, Mr. Sta Maria, when he fell, was caused to suffer severe injuries of body and mind, was forced

to seek medical treatment, incurred medical expenses, lost wages, and was prevented from carrying out his usual activities for a long period of time.

## COUNT II – VIOLATION OF M.G.L. c. 93A

20. The Plaintiff repeats the allegations set forth in the preceding paragraphs of this Complaint as if set forth herein.

21. Defendant Target Corporation operated the Store in an unsafe manner, leading to Mr. Sta Maria's injuries, as described above.

22. Plaintiff has satisfied all requirements of the presentment of a claim under M.G.L. c. 93A by sending to Target Corporation a demand letter, dated April 15, 2020, pursuant to that statute (a copy of which is attached as Exhibit 1). To date, Target Corporation has failed to respond properly in writing to the 93A demand letter or otherwise make a reasonable offer of settlement.

23. The acts of Defendant Target Corporation were unfair and deceptive acts in violation of M.G.L. c. 93A.

24. The acts of Defendant Target Corporation were willful and knowing acts in violation of M.G.L. c. 93A.

25. Plaintiff has been damaged as a direct and proximate result of these actions.


**WHEREFORE,** Plaintiff prays that this Honorable Court grant the following relief:

I.  Judgment against the Defendants jointly and severally;

II.  Restitution for all unpaid wages owed to Plaintiff by Defendants;

III.  Multiple damages and attorney's fees and costs attributable to the Defendant's violations of M.G.L. c. 93A;

IV.  Costs and disbursements of suit;

V.  All reasonable attorney's fees incurred in bringing suit;

VI.  Pre-judgment and post-judgment interest;

VII.  Appropriate injunctive, declaratory and other equitable relief; and

VIII.  Such other relief as this Honorable Court may deem just and appropriate under the circumstances.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: 6/29/2020

The Plaintiff,
BONIFACIO STA MARIA,
By His Attorney,


/s/ Christopher Wurster
Christopher Wurster, Esq. (BBO #679835)
Levine-Piro Law, P.C.
163 Main Street
Maynard, MA 01754
978-637-2048
Fax 978-737-2182
chris@levinepirolaw.com

# EXHIBIT 1



## LEVINE-PIRO LAW

**Melissa A. Levine-Piro, Esq.**
melissa@levinepirolaw.com

**Christopher R. Wurster, Esq.**
chris@levinepirolaw.com

**Alexandra D. Ressa, Esq.**
alexandra@levinepirolaw.com

**Amanda Castro, Esq.**
amanda@levinepirolaw.com

**Kathleen A. Murphy, Esq.**
katie@levinepirolaw.com

**Christine M. Boutin, Esq.**
Of Counsel
christine@levinepirolaw.com

**Jared J. Kelly, Esq.**
jared@levinepirolaw.com

163 Main Street
Maynard, MA
01754

(978) 637-2048
(978) 637-2182(f)

www.levinepirolaw.com

April 15, 2020

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Target
86 Orchard Hill Park Drive
Leominster, MA 01453

RE:     My Client:          Bonifacio Sta Maria
        Date of Loss:       7/15/2017

To Whom It May Concern:

As you know, Levine-Piro Law, P.C. represents Mr. Bonifacio Sta Maria in his claim for personal injuries stemming from a fall that occurred on July 15, 2017 at the Target store in Leominster, Massachusetts. This letter is a demand for settlement, sent pursuant to the Massachusetts Consumer Act, M.G.L. c. 93A, §9.

Your failure to make a reasonable, written tender of relief within **thirty (30)** days of this demand may result in Target's liability for multiple damages, costs, and reasonable attorney's fees.

Attached, please find a copy of the demand letter I am sending to Sheryl Bruce at Sedgwick CMS, your insurance carrier or third-party administrator. That letter is incorporated herein by reference. Target's violations of Chapter 93A are spelled out in the demand to Ms. Bruce. The medical records and bills referenced in that letter are available to you upon request, and they are being provided to Ms. Bruce.

For the reasons enumerated in my letter to Ms. Bruce, demand is made in the amount of $300,000.00. Please respond with a reasonable offer of settlement within thirty (30) days, in compliance with Chapter 93A.

Sincerely,

Christopher Wurster

Christopher R. Wurster, Esq.

CC: Sheryl Bruce (by e-mail_



# LEVINE-PIRO LAW

**Melissa A. Levine-Piro, Esq.**
melissa@levinepirolaw.com

**Christopher R. Wurster, Esq.**
chris@levinepirolaw.com

**Alexandra D. Ressa, Esq.**
alexandra@levinepirolaw.com

**Amanda Castro, Esq.**
amanda@levinepirolaw.com

**Kathleen A. Murphy, Esq.**
katie@levinepirolaw.com

**Christine M. Boutin, Esq.**
Of Counsel
christine@levinepirolaw.com

**Jared J. Kelly, Esq.**
jared@levinepirolaw.com

163 Main Street
Maynard, MA
01754

(978) 637-2048
(978) 637-2182(f)

www.levinepirolaw.com

April 15, 2020

VIA E-MAIL AND PRIORITY MAIL

Shery Bruce
Sedgwick Claims Management Services
P.O. Box 14453
Lexington, KY 40512-4453
Sheryl.Bruce@sedgwickcms.com

RE:   My Client:    Bonifacio Sta Maria
       Claim No.:    000267465G-001
       Your Insured:   Target Corporation
       Date of Loss:    7/15/2017

Dear Ms. Bruce:

As you know, Levine-Piro Law, P.C. represents Mr. Bonifacio Sta Maria in his claim for personal injuries stemming from a fall that occurred on July 15, 2017 at the Target store in Leominster, Massachusetts. This letter is a demand for settlement, sent pursuant to the Massachusetts Consumer Act, M.G.L. c. 93A, §9.

Your failure to make a reasonable, written tender of relief within **thirty (30)** days of this demand may result in Target's liability for multiple damages, costs, and reasonable attorney's fees.

I am sending you the following documents in hard copy and by secure download.

1. Guest Incident Report regarding 7/15/17 incident (dated 7/17/17);
2. Guest receipt dated 7/15/17 at 2:09PM;
3. Emerson Hospital medical records, 1/1/17-6/28/18;
4. Emerson Hospital medical records 6/28/18-10/19/19;
5. Emerson Hospital medical bills 1/1/17-6/28/18;
6. Emerson Hospital medical bills 6/28/18-10/19/19;
7. Acton Medical Associates medical records, 1/1/17-6/27/18;
8. Acton Medical Associates medical records, 6/27/18-4/1/19;
9. Acton Medical Associates medical records, 7/20/18-11/5/19;
10. Acton Medical Associates medical bills, 1/1/17-6/27/18;
11. Acton Medical Associates medical bills, 6/27/18-4/1/19;
12. Acton Medical Associates medical bills, 7/20/18-11/5/19;
13. Barron Chiropractic medical records 12/22/17-4/8/19;

1

14. Barron Chiropractic medical records, 3/16/19-10/21/19;
15. Barron Chiropractic medical bills 12/22/17-4/8/19;
16. Barron Chiropractic medical bills, 3/16/19-10/21/19;
17. Katherine Imhoff, LMHC, medical records and bills 10/18/17-8/24/18;
18. Katherine Imhoff, LMHC, medical records and bills, 8/24/18-4/1/19
19. Employment and wage information

## I.   <u>Background</u>

On July 15, 2017, Mr. Sta Maria was at the Target store in Leominster, Massachusetts with his young daughter. Near the check-out area, Mr. Sta Maria slipped on water on the floor. At the time, he was holding his daughter. He briefly lost consciousness as a result of the fall. His daughter remained conscious, witnessing her father's fall and resulting loss of consciousness. It was terrifying for Mr. Sta Maria to go through this incident and realize that his daughter could have been injured as well.

Mr. Sta Maria describes hearing a sound when he hit the floor and feeling like his head had exploded. After he regained consciousness, his vision was blurry and he heard ringing in his ears. He could not immediately get up; he had to lay on the floor for several moments.

Mr. Sta Maria stated that, when he regained consciousness, he noticed that the area where he fell was wet, and there was a large area of wet floor that looked like it had been improperly mopped. The floor in the store was very smooth tile, meaning that a wet floor was particularly dangerous. Mr. Sta Maria, at the time of the incident, was wearing black work boots, so he had good traction, underscoring how slippery the floor in the store was.

After the fall, Mr. Sta Maria was helped by another customer. Target staff did not immediately attend to Mr. Sta Maria and only assisted him after he had already sat up and then stood up with the assistance of the other customer. Staff did not offer to fill out an incident report. Two days later, on July 17, 2017, at the urging of his sister, Mr. Sta Maria returned to Target to request that an incident report be filled out. The incident report confirms the above-mentioned details.

It is indisputable that this fall occurred as a result of the negligence of your insured, Target Corporation. Simply put, there was water on the floor in a commercial store. This should never have occurred. Moreover, there was no "wet floor" sign or other warning to customers regarding this danger. This water was near the check-out area, a high-traffic area of the store with many Target staff members available who should have seen this hazard. Accordingly, Target knew or should have known about the existence of this hazard.

2

## II.    <u>Damages</u>

**Acton Medical Associates**

Just a few days after the fall at Target, on July 18, 2018, Mr. Sta Maria reported to his primary care physician at Acton Medical Associates. Mr. Sta Maria "reported hearing a loud smack noise from the back of his head. He woke up a few second later surrounded by other people. . . . He noticed later in the day that he felt a slight forgetfulness [and] continued to have a mild sense of mental fog and fatigue." He also developed pain in his right trapezius, right elbow, right wrist and neck. Mr. Sta Maria was diagnosed with a concussion, acute neck pain, and right wrist pain. Records stated that "after mechanical fall and loss of consciousness very briefly, patient has been experiencing symptoms consistent with concussion." Note that Mr. Sta Maria had been to Acton Medical for a general health exam approximately one month earlier, where he received an essentially clean bill of health and was not experiencing any of the issues that he began suffering from after the fall nor did he have a history of any such issues.

Mr. Sta Maria was seen again at Acton Medical on July 21, 2017 for a follow up for his concussion and other injuries. Because his symptoms were not improving as quickly as expected, Mr. Sta Maria was referred to the Cantu Concussion Center.

At a follow up visit on September 7, 2017, Mr. Sta Maria reported ongoing headaches, symptoms of depression, and poor energy, as well as continued scapular, neck, elbow, and wrist pain. He was prescribed Amitryptiline.

Mr. Sta Maria had another follow up appointment on October 12, 2017. Headaches were improved with Amitryptiline, but Mr. Sta Maria was experiencing ongoing scapular pain. He was referred to Occupational Therapy.

On January 5, 2018, Mr. Sta Maria reported increased symptoms of depression, related to his concussion and resulting loss of employment. He had lost his job because he was unable to work due to his concussion symptoms. In addition to anxiety, difficulty sleeping, and decreased appetite, Mr. Sta Maria was also experiencing physical symptoms from his concussion. He was still enduring headaches and difficulty concentrating as well as neck pain.

Mr. Sta Maria had an evaluation on July 20, 2018, which noted headaches, depressed mood associated with post-concussive symptoms, difficulty with concentration and short-term memory. He was also experiencing upper back and neck symptoms and pain and tingling in his left arm. Mr. Sta Maria followed-up regarding his depression on August 17, 2018.

3

On September 28, 2018, Mr. Sta Maria again reported to Acton Medical. His mood was noted to be improving on Duloxetine, but he was still experiencing neck pain, headaches, and dizziness. While he was able to work, at times, his pain would flare up.

On December 12, 2018, Mr. Sta Maria returned to Acton Medical with continued anxiety and depression, problems sleeping, difficulty concentrating, neck pain and left post scalp pain, irritability, and anger. He was noted to be meditating several times per week to help with his symptoms.

Mr. Sta Maria reported to Acton Medical again on February 1, 2019. He had experienced no major improvement in pain in myofascial area/neck but was experiencing less irritability and more calm.

On October 18, 2019, Mr. Sta Maria reported to Acton Medical for a general health evaluation. He was diagnosed with ongoing chronic neck and lower back pain and post-concussive syndrome with mood symptoms.

**Cantu Concussion Center at Emerson Hospital**

Mr. Sta Maria was first seen at the Cantu Concussion Center on August 1, 2017 for symptoms beginning after his fall at Target. Immediately after the fall, Mr. Sta Maria felt wrist and neck pain, as well as confusion. On the date of his initial evaluation, Mr. Sta Maria reported balance issues, confusion, difficulty concentrating and remembering, dizziness, bell rung, drowsy, fatigue, feeling in a fog, feeling more emotional, feeling slowed down, headache, irritability, nausea, neck pain, nervousness, numbness, ringing in ears, sadness, sensitivity to light and noise, and sleeping problems. His head pain was at a 10/10. He reported "constant" neck pain that occasionally radiated into his right shoulder with numbness and tingling down to his right hand. Mr. Sta Maria's family reported that he was often repeating things. He was feeling anxious and sad with flashbacks to the fall. Mr. Sta Maria was diagnosed with a concussion with loss of consciousness, cervicogenic headaches, and neck pain.

At another visit on August 29, 2017, Mr. Sta Maria reported "little improvement." In fact, his headaches had worsened. In addition, Mr. Sta Maria reported severe neck pain with constant numbness and tingling down the right arm into all fingers. Mr. Sta Maria was now remaining out of work because his employer was unable to grant the accommodations his doctor had recommended. Additionally, Mr. Sta Maria reported blurred vision occasionally when reading, difficulty sleeping, depression, and anxiety. He had no previous history of depression or anxiety.

On October 10, 2017, Mr. Sta Maria reported some improvement, including in the frequency of his headaches, which were no longer constant. Neck pain had improved, but there was no

4

change in the numbness and tingling down his right arm into his right hand. Mr. Sta Maria was still out of work and unable to return to work. Mr. Sta Maria had another follow up appointment on October 17, 2017, where return to work was discussed, but he and his providers decided he was not yet ready.

Injections

On November 14, 2017, Mr. Sta Maria returned to the Cantu Center. He had had cervical spine injections since his previous appointment. His symptoms had worsened since his previous visit and included confusion, difficulty concentrating and remembering, dizziness, bell rung, drowsy, fatigue, feeling in a fog, feeling more emotional, feeling slowed down, headaches, irritability, nausea, neck pain, nervousness, numbness, ringing in the ears, sadness, sensitivity to light and noise, sleeping problems, and visual problems. Mr. Sta Maria had been discharged from physical therapy because there was no marked improvement in neck pain.

On December 12, 2017, Mr. Sta Maria reported improvement in his concussion symptoms but continued severe neck pain. While his neck pain had initially improved, it subsequently worsened; Mr. Sta Maria rated it as 8/10 with tingling down his left arm. He noted that he was very anxious and depressed about his continued neck pain and consequently was seeing a therapist regularly. Mr. Sta Maria was discharged on this date from the Concussion Clinic.

**Spine Clinic at Emerson Hospital**

On September 11, 2017, Mr. Sta Maria was seen at the Emerson Hospital Spine Clinic at the request of both the Cantu Concussion Center and his primary care physician, Dr. Girolamo. Dr. Arthur Lee noted that Mr. Sta Maria had been experiencing neck pain and cervicogenic headaches since his fall at Target. He was also suffering from left arm pain and right-hand numbness at times. Dr. Lee diagnosed post-concussive syndrome and possible cervical radiculopathy, as well as axial pain and cervicogenic headaches.

On October 5, 2017, Mr. Sta Maria reported to the Spine Clinic again. He reported continued cervical axial neck pain and headaches. His range of motion was "extremely limited," with pain at a 7 out of 10. Reviewing MRIs that had recently been performed, Dr. Lee noted disc herniations with mild impingement on the nerve roots. Dr. Lee recommended cervical facet injections.

Mr. Sta Maria had his first round of injections on October 20, 2017. He returned to Dr. Lee on November 2, 2017, with pain at a level 7 out of 10. Dr. Lee noted that Mr. Sta Maria had done well from the cervical injections, with about 60% improvement for about a week, but he had slowly started returning to baseline. Dr. Lee recommended another round of injections.

Mr. Sta Maria had another round of injections on December 1, 2017. He returned to Dr. Lee on December 14, 2017, with significant pain and multiple ADLs limited. His headaches were improved, but he was still experiencing neck pain and myofascial pain along the midline in the cervical spine. He recommended trigger point injections with Dr. Spinelli.

On January 3, 2018, Mr. Sta Maria reported to Dr. Spinelli in the Emerson Spine Program. Dr. Spinelli noted that Mr. Sta Maria's symptoms began after he fell at a Target store in July 2017. "He has been symptomatic ever since with bilateral neck pain and headaches. Pain is described as 7/10, sharp, aching, worse with increased activity in general." His "symptoms decrease function, quality of life, ability to perform activities of daily living." Dr. Spinelli stated that "his ongoing neck pain with headaches may be from chronic muscle spasm," and trigger point injections were performed.

Mr. Sta Maria returned to Dr. Spinelli on April 12, 2018 for continued bilateral neck pain and headaches. Dr. Spinelli noted that Mr. Sta Maria "has returned to work without restrictions despite the pain."

At this visit, Dr. Spinelli noted the following: "His ongoing neck pain with headaches may be from chronic muscle spasm. It could also be due to the . . . mild to moderate degenerative changes seen on MRI. Symptoms began after his fall at Target . . . and he has been symptomatic ever since. He was asymptomatic before the fall. He has tried numerous treatments to include giving things time, physical therapy, chiropractic, cervical facet injections, trigger point injections, but he remains symptomatic. At this point, I think it is reasonable to say that he has reached maximum medical improvement." At this time, Mr. Sta Maria had returned to work; Dr. Spinelli noted that "while this may cause some . . . increase in symptoms, I do not believe he is damaging his spine."

Mr. Sta Maria returned to the Spine Clinic on May 15, 2019. Dr. Spinelli noted that Mr. Sta Maria continued to be symptomatic despite multiple interventions. Dr. Spinelli recommended trigger point injections, which were performed on May 28, 2019 without significant benefit. Mr. Sta Maria followed up with Dr. Spinelli on June 24, 2019 and had another round of trigger point injections on July 18, 2019.

**Physical and Occupational Therapy at Emerson Hospital**

Physical Therapy

Mr. Sta Maria also did physical therapy at Emerson Hospital, beginning with an initial evaluation on August 8, 2017. Mr. Sta Maria was noted to have experienced confusion, dizziness, fogginess, and right upper extremity numbness following his fall at Target. His neck pain had increased since the fall. At a follow-up visit on August 16, 2017, Mr. Sta Maria

6

displayed balance deficits and visual blurriness. He also reported vertigo, ringing in his ears, nausea, headaches, concentration problems and memory loss.

Mr. Sta Maria was re-evaluated on September 21, 2017, with some improvement. On September 26, 2017, clinicians noted that Mr. Sta Maria's cervical pain was improved, but his radicular symptoms were unchanged. On October 11, 2017, it was noted that Mr. Sta Maria had been considering returning to work for financial reasons, not medical reasons, but ultimately had concluded that his pain levels were too high to work at that time.

On November 3, 2017, Mr. Sta Maria was discharged from PT. While he had made some improvements, his neck and low back pain had increased towards the end of his course of PT, and as a result, he was discharged due to lack of progress/regressions with cervical pain.

Between his initial evaluation on August 8, 2017 and his discharge on November 3, 2017, Mr. Sta Maria had 16 sessions of physical therapy.

<u>Occupational Therapy</u>

At the recommendation of his other providers, Mr. Sta Maria pursued occupational therapy services, also at Emerson Hospital, beginning with an initial evaluation on September 11, 2017. At this time, clinicians noted decreased grip strength, pinch strength of right upper extremity and localized elbow and wrist pain. OT was recommended to address right elbow and wrist pain, with continued PT to address cervical and radiating symptoms as well as the concussion. At this evaluation, Mr. Sta Maria was noted to be unable to lift or carry his daughter, lift or carry groceries or heavier items, push heavy doors, or push himself up. Mr. Sta Maria was given exercised to do at home to help his symptoms.

On October 26, 2017, clinicians noted increased grip strength in right elbow flexion but decreased grip with elbow in extension. His pain was lower, but still at a 5 out of 10. He was able to carry his daughter at this time, but only for periods of 5 minutes at a time.

Mr. Sta Maria had eight sessions of OT between his initial evaluation on September 11, 2017 and his final appointment on October 26, 2017.

**Barron Chiropractic**

Mr. Sta Maria pursued chiropractic treatment at Barron Chiropractic & Wellness Center, beginning with an initial evaluation on December 22, 2017 to address neck pain, shoulder pain, and back pain. Of note, Dr. Barron noted that Mr. Sta Maria presented with "visible anxiety and depression," which had only manifested since the fall and concussion. He reported difficulty with lifting, bending over, reaching overhead.

7

On December 27, 2018, Mr. Sta Maria rated his upper back/neck pain at an 8 out of 10, and chest discomfort at an 8 out of 10. Dr. Barron gave Mr. Sta Maria an impairment rating of 5-8%. His initial neck pain disability index score was 72%.

Mr. Sta Maria continued with significant pain for subsequent visits. For example, on March 16, 2018, Mr. Sta Maria rated his neck pain as 8 out of 10, his chest pain as 8 out of 10, and his upper back pain as 7 out of 10. On May 25, 2018, Mr. Sta Maria rated his neck pain as a 9; chest pain as an 8; upper back pain as an 8; and trapezius pain as an 8. Dr. Barron indicated his progress was "very slow." These pain levels continued for the majority of his chiropractic care, underscoring the severity of his condition.

Between his initial evaluation on December 22, 2017 and a re-evaluation on December 7, 2018, Mr. Sta Maria's neck pain disability index score only improved from 72% to 68%. Mr. Sta Maria remained in treatment with only modest benefits.

Mr. Sta Maria is still in treatment with Dr. Barron. At the time records were obtained on in October 2019, Mr. Sta Maria had seen Dr. Barron for forty (54) sessions since his first appointment on December 22, 2017.

**Mental Health Counseling – Katherine Imhoff, LMHC**

Mr. Sta Maria has seen Katherine Imhoff, LMHC for counseling services since October 18, 2017, for symptoms related to his fall at Target. Initially, Ms. Imhoff diagnosed Mr. Sta Maria with unspecified anxiety disorder and major depressive disorder due to his fall. His initial symptoms included sleeping problems, anxiety, and depressive symptoms, including depressed mood, sadness, and irritability, all revolving around the fall and not being able to work. In January 2018, Ms. Imhoff changed Mr. Sta Maria's diagnosis to Posttraumatic Stress Disorder (PTSD) due to Mr. Sta Maria's symptoms including anger and thinking about the fall over and over.

In the winter of 2018, Mr. Sta Maria became more depressed and anxious. His primary care provider prescribed Duloxetine.

Mr. Sta Maria's therapy sessions centered exclusively around his fall and how that impacted his life, work, and relationships.

**Lost Wages**

At the time of the collision, Mr. Sta Maria was employed full-time as a CNA at Life Care Center of Acton with a wage of $17.04/hour. Mr. Sta Maria averaged 37.5 hours per week prior to the accident.

Due to his injuries, Mr. Sta Maria missed 22.14 weeks of work from July 30, 2017 through February 2, 2018.

25.43 weeks x 37.5 hours x $17.04/hour = $16,249.77 in lost wages

Additionally, I must note that Mr. Sta Maria was actually temporarily terminated by Life Care Center of Acton because he had been out of work so long due *solely* to his injuries from this fall. I spoke directly with Life Care to get Mr. Sta Maria's job back, but the stress and anxiety caused by this incident were significant and added to Mr. Sta Maria's pain and suffering. In short, due to the negligence of your insured, Mr. Sta Maria not only could not work, he was then terminated because he had been out on leave for so long.

1. **Economic Damages**

   **Medicals**

   | | | |
   |---|---|---|
   | Emerson Hospital | | $30,117.86 |
   | Acton Medical | | $3,108.00 |
   | Barron Chiro | | $7,013.00 |
   | K. Imhoff | | $3,600.00 |
   | CVS (Prescriptions) | | $257.91 |
   | | Total | $44,096.77 |
   | **Lost Wages** | | **$16,249.77** |
   | **TOTAL ECONOMIC DAMAGES** | | **$60,346.54** |

2. **Non-Economic Damages**

   Pain & suffering/limitation of activities     $239,653.46

   **TOTAL DEMAND: $300,000.00**

III.   **Conclusion**

Liability is clear in this case. My client slipped and fell on a water in the busiest area of a commercial store, an area with the most staff around but no signs or other warnings telling customers to be careful of the wet floor.

Mr. Sta Maria's resulting injuries were severe. He was diagnosed with a concussion, which brought with it wide-ranging symptoms including headaches, memory and concentration issues, vision problems, and psychiatric symptoms. In addition, my client had severe neck,

back, and shoulder pain, which necessitated physical therapy and chiropractic treatment, the latter of which is still ongoing. In the years that Mr. Sta Maria has been in chiropractic treatment, his neck pain has only improved slightly. Additionally, Mr. Sta Maria injured his elbow and wrist, requiring occupational therapy services. My client was dealing with significant symptoms that impacted every aspect of his life.

Mr. Sta Maria's neck and back pain is so severe that he has had to try a variety of interventions, all with little to no long-term improvement.

In short, as a result of the fall, Mr. Sta Maria was simply unable to do the things he was normally accustomed to doing.

This includes work. At the time of the fall, Mr. Sta Maria was working as a CNA in a nursing home. Due to the fall, Mr. Sta Maria was out of work for approximately six months. Additionally, Mr. Sta Maria had to deal with the stress of being terminated (temporarily, until I intervened).

Mr. Sta Maria also experienced a variety of psychiatric symptoms, including depression, anxiety, and PTSD, as a result of the fall and resulting concussion. These issues have necessitated significant ongoing counseling services.

It is difficult to put into words the extent to which this fall upended my client's entire life. This is a case where pain and suffering was, and is, clear. Demand is therefore made in the amount of $300,000.00. Please respond with a reasonable offer of settlement within thirty (30) days, in compliance with Chapter 93A.

Sincerely,

Christopher R. Wurster, Esq.

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

CHRISTOPHER WORSTER
Nevins, Pizo Law
143 MAIN ST.
MAYNARD, MA 01754

# COMPLETE THIS SECTION ON DELIVERY

**A. Signature**

X J. TOWNSEND C19

☐ Agent
☒ Addressee

**B. Received by (Printed Name)**
OB FIB C19

**C. Date of Delivery**
4/1/20

**D. Is delivery address different from item 1?** ☐ Yes
If YES, enter delivery address below: ☐ No

**3. Service Type**
☐ Certified Mail®
☐ Registered
☐ Insured Mail
☐ Priority Mail Express™
☐ Return Receipt for Merchandise
☐ Collect on Delivery

**4. Restricted Delivery? (Extra Fee)** ☐ Yes

# SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete
item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

**1. Article Addressed to:**

TARGET
64 ORCHARD HILL PARK DR
LEOMINSTER, MA
01453

**2. Article Number**
*(Transfer from service label)*

7019 0700 0001 7250 4887

PS Form 3811, July 2013          Domestic Return Receipt

4

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

MIDDLESEX SUPERIOR COURT
C.A. No: 2081CV01494

|  |  |
|---|---|
| BONIFACIO STA MARIA, )<br><br>      Plaintiff, )<br><br>v. )<br><br>TARGET CORPORATION AND )<br>SEDGWICK CLAIMS MANAGEMENT )<br>SERVICES, INC., )<br><br>      Defendant ) | **9/2/2020** |

**RECEIVED**

## FIRST AMENDED COMPLAINT AND JURY CLAIM

### Parties

1. Plaintiff Bonifacio Sta Maria is a resident of Acton, Middlesex County, Massachusetts.

2. Defendant Target Corporation ("Target") is a corporation duly organized under the laws of the State of Minnesota, with a principal place of business located at 1000 Nicollet Mall, Minneapolis, Minnesota.

3. Defendant Sedgwick Claims Management Services, Inc. ("Sedgwick") is a corporation duly organized under the laws of the State of Tennessee, with a principal place of business located at 8125 Sedgwick Way, Memphis, Tennessee.

4. On or about July 15, 2017, Defendant Target Corporation operated a place of business located at 86 Orchard Hill Park Drive, Leominster, Worcester County, Massachusetts.

### Jurisdiction and Venue

5. Jurisdiction is properly conferred by M.G.L. c. 212 § 4 and c. 223A § 3.

6. Venue is properly laid in Middlesex County pursuant to M.G.L. c. 223 § 1 because Plaintiff lives in Middlesex County.

### Facts

7. On or about July 15, 2017, Bonifacio Sta Maria was lawfully on the premises of the Target

Corporation place of business located at 86 Orchard Hill Park Drive, Leominster, Worcester County, Massachusetts (the "Store").

8. Mr. Sta Maria was lawfully on the premises of the Store in his capacity as a customer and/or business invitee of the Store.

9. While on the premises of the Store, Mr. Sta Maria slipped/tripped on, and/or was caused to fall by the presence of a dangerous defect and/or defective condition on the ground near the checkout area of the Store.

10. The dangerous defect and/or defective condition near the checkout area of the Store was directly in a pathway used by customers of the Store and in an area frequently monitored by numerous Target Corporation employees.

11. As a result of the fall, Mr. Sta Maria was caused to suffer severe injuries of body and mind, was forced to seek medical treatment, incurred medical expenses, lost substantial wages, and was prevented from carrying out his usual activities for a long period of time.

12. By operating the Store in an unsafe manner as described above, Target Corporation engaged in unfair and deceptive trade practices.

13. At all times material to this Complaint, Sedgwick has served as a "third party administrator" handling claims against Target Corporation, a self-insured entity.

14. To effectuate settlement of his claim, Mr. Sta Maria, through counsel, sent a demand letter, dated April 15, 2020, to Target (a copy of which is attached as Exhibit A).

15. Mr. Sta Maria also sent a demand letter to Sedgwick at this time, clearly outlining a basis for Target's liability and the extent of Mr. Sta Maria's injuries caused by his fall at Target. This demand letter included medical records from Mr. Sta Maria's primary care provider, dated from just prior to the fall at Target, showing that, prior to the fall, Mr. Sta Maria had a clean bill of health and was not experiencing any of the issues that he began suffering from after the fall, nor did he have a history of any such issues.

16. Despite this, on June 9, 2020, Sedgwick informed Mr. Sta Maria, through counsel, that it required medical records from three years prior to the fall at Target to complete its evaluation of the claim.

17. As a result of Sedgwick's failure to make an offer when liability was reasonably clear, Mr. Sta Maria was forced to file suit against Target Corporation and to incur the substantial time and expense of litigation to pursue a claim that should have been resolved based on the demand package that was sent to Target and Sedgwick on April 15, 2020.

18. Liability was reasonably clear based on the demand package dated April 15, 2020, which showed: that prior to the fall at Target, Mr. Sta Maria was in good health; the nature and extent of Mr. Sta Maria's injuries from the fall and treatment therefore; details surrounding

Mr. Sta Maria's medical bills, lost wages, and pain and suffering.

19. Despite this, Sedgwick has failed to effectuate a prompt, fair, and equitable settlement of Mr. Sta Maria's claim.

20. Sedgwick also took the position in a letter dated January 14, 2020 – prior to receiving a single medical record pertaining to Mr. Sta Maria – that Mr. Sta Maria that was involved in a "relatively minor slip and fall to the ground" and that his "contentions that he struck his head and lost consciousness are not accurate . . . [and] we do not expect a jury will consider any head injury in their evaluation of this claim."

21. Sedgwick has also refused to allow Mr. Sta Maria to see a video in its possession of his fall, which would have facilitated settlement of this claim.

## COUNT I - NEGLIGENCE
### *Plaintiff v. Target Corporation*

22. The Plaintiff repeats the allegations set forth in the preceding paragraphs of this Complaint as if set forth herein.

23. On or about July 15, 2017, and at all times pertaining to this Complaint, Defendant Target Corporation, was the owner, the entity in control, and/or the entity responsible for the maintenance of the location in which Mr. Sta Maria fell.

24. On or about July 15, 2017, and at all times pertaining to this Complaint, Defendant Target Corporation, had a duty to maintain the location in which Mr. Sta Maria fell in a safe manner and to keep it free from defects and hazards.

25. Defendant Target Corporation was negligent in its failure to maintain in a safe manner the location in which Mr. Sta Maria fell.

26. Defendant Target Corporation was negligent in its failure to correct or to warn Mr. Sta Maria of the presence of the dangerous and defective condition that caused Mr. Sta Maria to fall.

27. Defendant Target Corporation knew or should have known of its failure to maintain safely and properly the location in which Mr. Sta Maria fell, thereby creating an unreasonable danger to Mr. Sta Maria.

28. On or about July 15, 2017, Mr. Sta Maria sustained injuries due the negligent failure of Defendant Target Corporation to maintain safely and properly the location in which Mr. Sta Maria fell.

29. As a direct and proximate result of the negligence of Defendant Target Corporation, Mr. Sta Maria, when he fell, was caused to suffer severe injuries of body and mind, was forced to seek medical treatment, incurred medical expenses, lost wages, and was prevented from

carrying out his usual activities for a long period of time.

## COUNT II – VIOLATION OF M.G.L. c. 93A
### *Plaintiff v. Target Corporation*

30. The Plaintiff repeats the allegations set forth in the preceding paragraphs of this Complaint as if set forth herein.

31. Defendant Target Corporation operated the Store in an unsafe manner, leading to Mr. Sta Maria's injuries, as described above.

32. Plaintiff has satisfied all requirements of the presentment of a claim under M.G.L. c. 93A by sending to Target Corporation a demand letter, dated April 15, 2020, pursuant to that statute (a copy of which is attached as Exhibit A). To date, Target Corporation has failed to respond properly in writing to the 93A demand letter or otherwise make a reasonable offer of settlement.

33. The acts of Defendant Target Corporation were unfair and deceptive acts in violation of M.G.L. c. 93A.

34. The acts of Defendant Target Corporation were willful and knowing acts in violation of M.G.L. c. 93A.

35. Plaintiff has been damaged as a direct and proximate result of these actions.

## COUNT III – VIOLATION OF M.G.L. c. 93A and 176D
### *Plaintiff v. Sedgwick Claims Management Services, Inc.*

36. The Plaintiff repeats the allegations set forth in the preceding paragraphs of this Complaint as if set forth herein.

37. Defendant Sedgwick Claims Management Services, Inc., as a third party administrator for Target, is an entity subject to the standards imposed by M.G.L. c. 176D.

38. The liability of Target Corporation for the Plaintiff's injuries was reasonably clear.

39. The actions of Sedgwick and in failing to effectuate a prompt, fair, and equitable settlement when liability was reasonably clear constitutes an unfair claim settlement practice under M.G.L. c. 176D § 3(9)(f) and an unfair and deceptive act or practice under M.G.L. c. 93A.

40. Plaintiff has satisfied all requirements for presentment of a claims under M.G.L. c. 93A and 176D, by sending to Sedgwick a demand letter, dated July 17, 2020, pursuant to those statutes (a copy of which is attached as Exhibit B). To date, Sedgwick has failed to respond properly in writing to this demand letter or otherwise make a fair and equitable offer of settlement.

41. The acts of Sedgwick were willful and knowing acts in violation of M.G.L. c. 93A.

42. As a direct and proximate result of Sedgwick's unfair claim settlement practices and unfair and deceptive acts or practices, Plaintiff suffered actual, consequential, and incidental damages.

43. As a result of this failure to make a reasonable offer of settlement, the Plaintiff is required to file suit and to litigate his claims.

**WHEREFORE**, Plaintiff prays that this Honorable Court grant the following relief:

    I.    Judgment against the Defendants jointly and severally;

    II.    Restitution for all unpaid wages owed to Plaintiff by Defendants;

    III.    Multiple damages and attorney's fees and costs attributable to the Defendants' violations of M.G.L. c. 93A;

    IV.    Costs and disbursements of suit;

    V.    All reasonable attorney's fees incurred in bringing suit;

    VI.    Pre-judgment and post-judgment interest;

    VII.    Appropriate injunctive, declaratory and other equitable relief; and

    VIII.    Such other relief as this Honorable Court may deem just and appropriate under the circumstances.

### JURY DEMAND

The Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: 9/2/2020    

The Plaintiff,
BONIFACIO STA MARIA,
By His Attorney,

/s/ Christopher Wurster
Christopher Wurster, Esq. (BBO #679835)
Levine-Piro Law, P.C.
163 Main Street
Maynard, MA 01754
Phone 978-637-2048 / Fax 978-737-2182
chris@levinepirolaw.com

# EXHIBIT A



# LEVINE-PIRO
# LAW

**Melissa A. Levine-Piro, Esq.**
melissa@levinepirolaw.com

**Christopher R. Wurster, Esq.**
chris@levinepirolaw.com

**Alexandra D. Ressa, Esq.**
alexandra@levinepirolaw.com

**Amanda Castro, Esq.**
amanda@levinepirolaw.com

**Kathleen A. Murphy, Esq.**
katie@levinepirolaw.com

**Christine M. Boutin, Esq.**
Of Counsel
christine@levinepirolaw.com

**Jared J. Kelly, Esq.**
jared@levinepirolaw.com

163 Main Street
Maynard, MA
01754

(978) 637-2048
(978) 637-2182(f)

www.levinepirolaw.com

April 15, 2020

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Target
86 Orchard Hill Park Drive
Leominster, MA 01453

RE:   My Client:        Bonifacio Sta Maria
      Date of Loss:     7/15/2017

To Whom It May Concern:

As you know, Levine-Piro Law, P.C. represents Mr. Bonifacio Sta Maria in his claim for personal injuries stemming from a fall that occurred on July 15, 2017 at the Target store in Leominster, Massachusetts. This letter is a demand for settlement, sent pursuant to the Massachusetts Consumer Act, M.G.L. c. 93A, §9.

Your failure to make a reasonable, written tender of relief within **thirty (30)** days of this demand may result in Target's liability for multiple damages, costs, and reasonable attorney's fees.

Attached, please find a copy of the demand letter I am sending to Sheryl Bruce at Sedgwick CMS, your insurance carrier or third-party administrator. That letter is incorporated herein by reference. Target's violations of Chapter 93A are spelled out in the demand to Ms. Bruce. The medical records and bills referenced in that letter are available to you upon request, and they are being provided to Ms. Bruce.

For the reasons enumerated in my letter to Ms. Bruce, demand is made in the amount of $300,000.00. Please respond with a reasonable offer of settlement within thirty (30) days, in compliance with Chapter 93A.

Sincerely,

Christopher Wurster

Christopher R. Wurster, Esq.

CC: Sheryl Bruce (by e-mail_



# LEVINE-PIRO
# LAW

**Melissa A. Levine-Piro, Esq.**
melissa@levinepirolaw.com

**Christopher R. Wurster, Esq.**
chris@levinepirolaw.com

**Alexandra D. Ressa, Esq.**
alexandra@levinepirolaw.com

**Amanda Castro, Esq.**
amanda@levinepirolaw.com

**Kathleen A. Murphy, Esq.**
katie@levinepirolaw.com

**Christine M. Boutin, Esq.**
Of Counsel
christine@levinepirolaw.com

**Jared J. Kelly, Esq.**
jared@levinepirolaw.com

163 Main Street
Maynard, MA
01754

(978) 637-2048
(978) 637-2182(f)

www.levinepirolaw.com

April 15, 2020

**VIA E-MAIL AND PRIORITY MAIL**

Shery Bruce
Sedgwick Claims Management Services
P.O. Box 14453
Lexington, KY 40512-4453
Sheryl.Bruce@sedgwickcms.com

RE:    My Client:    Bonifacio Sta Maria
        Claim No.:    000267465G-001
        Your Insured:    Target Corporation
        Date of Loss:    7/15/2017

Dear Ms. Bruce:

As you know, Levine-Piro Law, P.C. represents Mr. Bonifacio Sta Maria in his claim for personal injuries stemming from a fall that occurred on July 15, 2017 at the Target store in Leominster, Massachusetts. This letter is a demand for settlement, sent pursuant to the Massachusetts Consumer Act, M.G.L. c. 93A, §9.

Your failure to make a reasonable, written tender of relief within **thirty (30)** days of this demand may result in Target's liability for multiple damages, costs, and reasonable attorney's fees.

I am sending you the following documents in hard copy and by secure download.

1. Guest Incident Report regarding 7/15/17 incident (dated 7/17/17);
2. Guest receipt dated 7/15/17 at 2:09PM;
3. Emerson Hospital medical records, 1/1/17-6/28/18;
4. Emerson Hospital medical records 6/28/18-10/19/19;
5. Emerson Hospital medical bills 1/1/17-6/28/18;
6. Emerson Hospital medical bills 6/28/18-10/19/19;
7. Acton Medical Associates medical records, 1/1/17-6/27/18;
8. Acton Medical Associates medical records, 6/27/18-4/1/19;
9. Acton Medical Associates medical records, 7/20/18-11/5/19;
10. Acton Medical Associates medical bills, 1/1/17-6/27/18;
11. Acton Medical Associates medical bills, 6/27/18-4/1/19;
12. Acton Medical Associates medical bills, 7/20/18-11/5/19;
13. Barron Chiropractic medical records 12/22/17-4/8/19;

1

14. Barron Chiropractic medical records, 3/16/19-10/21/19;
15. Barron Chiropractic medical bills 12/22/17-4/8/19;
16. Barron Chiropractic medical bills, 3/16/19-10/21/19;
17. Katherine Imhoff, LMHC, medical records and bills 10/18/17-8/24/18;
18. Katherine Imhoff, LMHC, medical records and bills, 8/24/18-4/1/19
19. Employment and wage information

## I.   <u>Background</u>

On July 15, 2017, Mr. Sta Maria was at the Target store in Leominster, Massachusetts with his young daughter. Near the check-out area, Mr. Sta Maria slipped on water on the floor. At the time, he was holding his medical daughter. He briefly lost consciousness as a result of the fall. His daughter remained conscious, witnessing her father's fall and resulting loss of consciousness. It was terrifying for Mr. Sta Maria to go through this incident and realize that his daughter could have been injured as well.

Mr. Sta Maria describes hearing a sound when he hit the floor and feeling like his head had exploded. After he regained consciousness, his vision was blurry and he heard ringing in his ears. He could not immediately get up; he had to lay on the floor for several moments.

Mr. Sta Maria stated that, when he regained consciousness, he noticed that the area where he fell was wet, and there was a large area of wet floor that looked like it had been improperly mopped. The floor in the store was very smooth tile, meaning that a wet floor was particularly dangerous. Mr. Sta Maria, at the time of the incident, was wearing black work boots, so he had good traction, underscoring how slippery the floor in the store was.

After the fall, Mr. Sta Maria was helped by another customer. Target staff did not immediately attend to Mr. Sta Maria and only assisted him after he had already sat up and then stood up with the assistance of the other customer. Staff did not offer to fill out an incident report. Two days later, on July 17, 2017, at the urging of his sister, Mr. Sta Maria returned to Target to request that an incident report be filled out. The incident report confirms the above-mentioned details.

It is indisputable that this fall occurred as a result of the negligence of your insured, Target Corporation. Simply put, there was water on the floor in a commercial store. This should never have occurred. Moreover, there was no "wet floor" sign or other warning to customers regarding this danger. This water was near the check-out area, a high-traffic area of the store with many Target staff members available who should have seen this hazard. Accordingly, Target knew or should have known about the existence of this hazard.

2

## II.   **Damages**

**Acton Medical Associates**

Just a few days after the fall at Target, on July 18, 2018, Mr. Sta Maria reported to his primary care physician at Acton Medical Associates. Mr. Sta Maria "reported hearing a loud smack noise from the back of his head. He woke up a few second later surrounded by other people. . . . He noticed later in the day that he felt a slight forgetfulness [and] continued to have a mild sense of mental fog and fatigue." He also developed pain in his right trapezius, right elbow, right wrist and neck. Mr. Sta Maria was diagnosed with a concussion, acute neck pain, and right wrist pain. Records stated that "after mechanical fall and loss of consciousness very briefly, patient has been experiencing symptoms consistent with concussion." Note that Mr. Sta Maria had been to Acton Medical for a general health exam approximately one month earlier, where he received an essentially clean bill of health and was not experiencing any of the issues that he began suffering from after the fall nor did he have a history of any such issues.

Mr. Sta Maria was seen again at Acton Medical on July 21, 2017 for a follow up for his concussion and other injuries. Because his symptoms were not improving as quickly as expected, Mr. Sta Maria was referred to the Cantu Concussion Center.

At a follow up visit on September 7, 2017, Mr. Sta Maria reported ongoing headaches, symptoms of depression, and poor energy, as well as continued scapular, neck, elbow, and wrist pain. He was prescribed Amitryptiline.

Mr. Sta Maria had another follow up appointment on October 12, 2017. Headaches were improved with Amitryptiline, but Mr. Sta Maria was experiencing ongoing scapular pain. He was referred to Occupational Therapy.

On January 5, 2018, Mr. Sta Maria reported increased symptoms of depression, related to his concussion and resulting loss of employment. He had lost his job because he was unable to work due to his concussion symptoms. In addition to anxiety, difficulty sleeping, and decreased appetite, Mr. Sta Maria was also experiencing physical symptoms from his concussion. He was still enduring headaches and difficulty concentrating as well as neck pain.

Mr. Sta Maria had an evaluation on July 20, 2018, which noted headaches, depressed mood associated with post-concussive symptoms, difficulty with concentration and short-term memory. He was also experiencing upper back and neck symptoms and pain and tingling in his left arm. Mr. Sta Maria followed-up regarding his depression on August 17, 2018.

On September 28, 2018, Mr. Sta Maria again reported to Acton Medical. His mood was noted to be improving on Duloxetine, but he was still experiencing neck pain, headaches, and dizziness. While he was able to work, at times, his pain would flare up.

On December 12, 2018, Mr. Sta Maria returned to Acton Medical with continued anxiety and depression, problems sleeping, difficulty concentrating, neck pain and left post scalp pain, irritability, and anger. He was noted to be meditating several times per week to help with his symptoms.

Mr. Sta Maria reported to Acton Medical again on February 1, 2019. He had experienced no major improvement in pain in myofascial area/neck but was experiencing less irritability and more calm.

On October 18, 2019, Mr. Sta Maria reported to Acton Medical for a general health evaluation. He was diagnosed with ongoing chronic neck and lower back pain and post-concussive syndrome with mood symptoms.

**Cantu Concussion Center at Emerson Hospital**

Mr. Sta Maria was first seen at the Cantu Concussion Center on August 1, 2017 for symptoms beginning after his fall at Target. Immediately after the fall, Mr. Sta Maria felt wrist and neck pain, as well as confusion. On the date of his initial evaluation, Mr. Sta Maria reported balance issues, confusion, difficulty concentrating and remembering, dizziness, bell rung, drowsy, fatigue, feeling in a fog, feeling more emotional, feeling slowed down, headache, irritability, nausea, neck pain, nervousness, numbness, ringing in ears, sadness, sensitivity to light and noise, and sleeping problems. His head pain was at a 10/10. He reported "constant" neck pain that occasionally radiated into his right shoulder with numbness and tingling down to his right hand. Mr. Sta Maria's family reported that he was often repeating things. He was feeling anxious and sad with flashbacks to the fall. Mr. Sta Maria was diagnosed with a concussion with loss of consciousness, cervicogenic headaches, and neck pain.

At another visit on August 29, 2017, Mr. Sta Maria reported "little improvement." In fact, his headaches had worsened. In addition, Mr. Sta Maria reported severe neck pain with constant numbness and tingling down the right arm into all fingers. Mr. Sta Maria was now remaining out of work because his employer was unable to grant the accommodations his doctor had recommended. Additionally, Mr. Sta Maria reported blurred vision occasionally when reading, difficulty sleeping, depression, and anxiety. He had no previous history of depression or anxiety.

On October 10, 2017, Mr. Sta Maria reported some improvement, including in the frequency of his headaches, which were no longer constant. Neck pain had improved, but there was no

4

change in the numbness and tingling down his right arm into his right hand. Mr. Sta Maria was still out of work and unable to return to work. Mr. Sta Maria had another follow up appointment on October 17, 2017, where return to work was discussed, but he and his providers decided he was not yet ready.

Injections

On November 14, 2017, Mr. Sta Maria returned to the Cantu Center. He had had cervical spine injections since his previous appointment. His symptoms had worsened since his previous visit and included confusion, difficulty concentrating and remembering, dizziness, bell rung, drowsy, fatigue, feeling in a fog, feeling more emotional, feeling slowed down, headaches, irritability, nausea, neck pain, nervousness, numbness, ringing in the ears, sadness, sensitivity to light and noise, sleeping problems, and visual problems. Mr. Sta Maria had been discharged from physical therapy because there was no marked improvement in neck pain.

On December 12, 2017, Mr. Sta Maria reported improvement in his concussion symptoms but continued severe neck pain. While his neck pain had initially improved, it subsequently worsened; Mr. Sta Maria rated it as 8/10 with tingling down his left arm. He noted that he was very anxious and depressed about his continued neck pain and consequently was seeing a therapist regularly. Mr. Sta Maria was discharged on this date from the Concussion Clinic.

**Spine Clinic at Emerson Hospital**

On September 11, 2017, Mr. Sta Maria was seen at the Emerson Hospital Spine Clinic at the request of both the Cantu Concussion Center and his primary care physician, Dr. Girolamo. Dr. Arthur Lee noted that Mr. Sta Maria had been experiencing neck pain and cervicogenic headaches since his fall at Target. He was also suffering from left arm pain and right-hand numbness at times. Dr. Lee diagnosed post-concussive syndrome and possible cervical radiculopathy, as well as axial pain and cervicogenic headaches.

On October 5, 2017, Mr. Sta Maria reported to the Spine Clinic again. He reported continued cervical axial neck pain and headaches. His range of motion was "extremely limited," with pain at a 7 out of 10. Reviewing MRIs that had recently been performed, Dr. Lee noted disc herniations with mild impingement on the nerve roots. Dr. Lee recommended cervical facet injections.

Mr. Sta Maria had his first round of injections on October 20, 2017. He returned to Dr. Lee on November 2, 2017, with pain at a level 7 out of 10. Dr. Lee noted that Mr. Sta Maria had done well from the cervical injections, with about 60% improvement for about a week, but he had slowly started returning to baseline. Dr. Lee recommended another round of injections.

5

Mr. Sta Maria had another round of injections on December 1, 2017. He returned to Dr. Lee on December 14, 2017, with significant pain and multiple ADLs limited. His headaches were improved, but he was still experiencing neck pain and myofascial pain along the midline in the cervical spine. He recommended trigger point injections with Dr. Spinelli.

On January 3, 2018, Mr. Sta Maria reported to Dr. Spinelli in the Emerson Spine Program. Dr. Spinelli noted that Mr. Sta Maria's symptoms began after he fell at a Target store in July 2017. "He has been symptomatic ever since with bilateral neck pain and headaches. Pain is described as 7/10, sharp, aching, worse with increased activity in general." His "symptoms decrease function, quality of life, ability to perform activities of daily living." Dr. Spinelli stated that "his ongoing neck pain with headaches may be from chronic muscle spasm," and trigger point injections were performed.

Mr. Sta Maria returned to Dr. Spinelli on April 12, 2018 for continued bilateral neck pain and headaches. Dr. Spinelli noted that Mr. Sta Maria "has returned to work without restrictions despite the pain."

At this visit, Dr. Spinelli noted the following: "His ongoing neck pain with headaches may be from chronic muscle spasm. It could also be due to the . . . mild to moderate degenerative changes seen on MRI. Symptoms began after his fall at Target . . . and he has been symptomatic ever since. He was asymptomatic before the fall. He has tried numerous treatments to include giving things time, physical therapy, chiropractic, cervical facet injections, trigger point injections, but he remains symptomatic. At this point, I think it is reasonable to say that he has reached maximum medical improvement." At this time, Mr. Sta Maria had returned to work; Dr. Spinelli noted that "while this may cause some . . . increase in symptoms, I do not believe he is damaging his spine."

Mr. Sta Maria returned to the Spine Clinic on May 15, 2019. Dr. Spinelli noted that Mr. Sta Maria continued to be symptomatic despite multiple interventions. Dr. Spinelli recommended trigger point injections, which were performed on May 28, 2019 without significant benefit. Mr. Sta Maria followed up with Dr. Spinelli on June 24, 2019 and had another round of trigger point injections on July 18, 2019.

**Physical and Occupational Therapy at Emerson Hospital**

Physical Therapy

Mr. Sta Maria also did physical therapy at Emerson Hospital, beginning with an initial evaluation on August 8, 2017. Mr. Sta Maria was noted to have experienced confusion, dizziness, fogginess, and right upper extremity numbness following his fall at Target. His neck pain had increased since the fall. At a follow-up visit on August 16, 2017, Mr. Sta Maria

6

displayed balance deficits and visual blurriness. He also reported vertigo, ringing in his ears, nausea, headaches, concentration problems and memory loss.

Mr. Sta Maria was re-evaluated on September 21, 2017, with some improvement. On September 26, 2017, clinicians noted that Mr. Sta Maria's cervical pain was improved, but his radicular symptoms were unchanged. On October 11, 2017, it was noted that Mr. Sta Maria had been considering returning to work for financial reasons, not medical reasons, but ultimately had concluded that his pain levels were too high to work at that time.

On November 3, 2017, Mr. Sta Maria was discharged from PT. While he had made some improvements, his neck and low back pain had increased towards the end of his course of PT, and as a result, he was discharged due to lack of progress/regressions with cervical pain.

Between his initial evaluation on August 8, 2017 and his discharge on November 3, 2017, Mr. Sta Maria had 16 sessions of physical therapy.

Occupational Therapy

At the recommendation of his other providers, Mr. Sta Maria pursued occupational therapy services, also at Emerson Hospital, beginning with an initial evaluation on September 11, 2017. At this time, clinicians noted decreased grip strength, pinch strength of right upper extremity and localized elbow and wrist pain. OT was recommended to address right elbow and wrist pain, with continued PT to address cervical and radiating symptoms as well as the concussion. At this evaluation, Mr. Sta Maria was noted to be unable to lift or carry his daughter, lift or carry groceries or heavier items, push heavy doors, or push himself up. Mr. Sta Maria was given exercised to do at home to help his symptoms.

On October 26, 2017, clinicians noted increased grip strength in right elbow flexion but decreased grip with elbow in extension. His pain was lower, but still at a 5 out of 10. He was able to carry his daughter at this time, but only for periods of 5 minutes at a time.

Mr. Sta Maria had eight sessions of OT between his initial evaluation on September 11, 2017 and his final appointment on October 26, 2017.

**Barron Chiropractic**

Mr. Sta Maria pursued chiropractic treatment at Barron Chiropractic & Wellness Center, beginning with an initial evaluation on December 22, 2017 to address neck pain, shoulder pain, and back pain. Of note, Dr. Barron noted that Mr. Sta Maria presented with "visible anxiety and depression," which had only manifested since the fall and concussion. He reported difficulty with lifting, bending over, reaching overhead.

On December 27, 2018, Mr. Sta Maria rated his upper back/neck pain at an 8 out of 10, and chest discomfort at an 8 out of 10. Dr. Barron gave Mr. Sta Maria an impairment rating of 5-8%. His initial neck pain disability index score was 72%.

Mr. Sta Maria continued with significant pain for subsequent visits. For example, on March 16, 2018, Mr. Sta Maria rated his neck pain as 8 out of 10, his chest pain as 8 out of 10, and his upper back pain as 7 out of 10. On May 25, 2018, Mr. Sta Maria rated his neck pain as a 9; chest pain as an 8; upper back pain as an 8; and trapezius pain as an 8. Dr. Barron indicated his progress was "very slow." These pain levels continued for the majority of his chiropractic care, underscoring the severity of his condition.

Between his initial evaluation on December 22, 2017 and a re-evaluation on December 7, 2018, Mr. Sta Maria's neck pain disability index score only improved from 72% to 68%. Mr. Sta Maria remained in treatment with only modest benefits.

Mr. Sta Maria is still in treatment with Dr. Barron. At the time records were obtained on in October 2019, Mr. Sta Maria had seen Dr. Barron for forty (54) sessions since his first appointment on December 22, 2017.

**Mental Health Counseling – Katherine Imhoff, LMHC**

Mr. Sta Maria has seen Katherine Imhoff, LMHC for counseling services since October 18, 2017, for symptoms related to his fall at Target. Initially, Ms. Imhoff diagnosed Mr. Sta Maria with unspecified anxiety disorder and major depressive disorder due to his fall. His initial symptoms included sleeping problems, anxiety, and depressive symptoms, including depressed mood, sadness, and irritability, all revolving around the fall and not being able to work. In January 2018, Ms. Imhoff changed Mr. Sta Maria's diagnosis to Posttraumatic Stress Disorder (PTSD) due to Mr. Sta Maria's symptoms including anger and thinking about the fall over and over.

In the winter of 2018, Mr. Sta Maria became more depressed and anxious. His primary care provider prescribed Duloxetine.

Mr. Sta Maria's therapy sessions centered exclusively around his fall and how that impacted his life, work, and relationships.

**Lost Wages**

At the time of the collision, Mr. Sta Maria was employed full-time as a CNA at Life Care Center of Acton with a wage of $17.04/hour. Mr. Sta Maria averaged 37.5 hours per week prior to the accident.

Due to his injuries, Mr. Sta Maria missed 22.14 weeks of work from July 30, 2017 through February 2, 2018.

25.43 weeks x 37.5 hours x $17.04/hour = $16,249.77 in lost wages

Additionally, I must note that Mr. Sta Maria was actually temporarily terminated by Life Care Center of Acton because he had been out of work so long due *solely* to his injuries from this fall. I spoke directly with Life Care to get Mr. Sta Maria's job back, but the stress and anxiety caused by this incident were significant and added to Mr. Sta Maria's pain and suffering. In short, due to the negligence of your insured, Mr. Sta Maria not only could not work, he was then terminated because he had been out on leave for so long.

### 1. Economic Damages

**Medicals**

| | | |
|---|---|---|
| Emerson Hospital | | $30,117.86 |
| Acton Medical | | $3,108.00 |
| Barron Chiro | | $7,013.00 |
| K. Imhoff | | $3,600.00 |
| CVS (Prescriptions) | | $257.91 |
| | Total | $44,096.77 |
| **Lost Wages** | | **$16,249.77** |
| **TOTAL ECONOMIC DAMAGES** | | **$60,346.54** |

### 2. Non-Economic Damages

**Pain & suffering/limitation of activities**     $239,653.46

**TOTAL DEMAND: $300,000.00**

### III. Conclusion

Liability is clear in this case. My client slipped and fell on a water in the busiest area of a commercial store, an area with the most staff around but no signs or other warnings telling customers to be careful of the wet floor.

Mr. Sta Maria's resulting injuries were severe. He was diagnosed with a concussion, which brought with it wide-ranging symptoms including headaches, memory and concentration issues, vision problems, and psychiatric symptoms. In addition, my client had severe neck,

back, and shoulder pain, which necessitated physical therapy and chiropractic treatment, the latter of which is still ongoing. In the years that Mr. Sta Maria has been in chiropractic treatment, his neck pain has only improved slightly. Additionally, Mr. Sta Maria injured his elbow and wrist, requiring occupational therapy services. My client was dealing with significant symptoms that impacted every aspect of his life.

Mr. Sta Maria's neck and back pain is so severe that he has had to try a variety of interventions, all with little to no long-term improvement.

In short, as a result of the fall, Mr. Sta Maria was simply unable to do the things he was normally accustomed to doing.

This includes work. At the time of the fall, Mr. Sta Maria was working as a CNA in a nursing home. Due to the fall, Mr. Sta Maria was out of work for approximately six months. Additionally, Mr. Sta Maria had to deal with the stress of being terminated (temporarily, until I intervened).

Mr. Sta Maria also experienced a variety of psychiatric symptoms, including depression, anxiety, and PTSD, as a result of the fall and resulting concussion. These issues have necessitated significant ongoing counseling services.

It is difficult to put into words the extent to which this fall upended my client's entire life. This is a case where pain and suffering was, and is, clear. Demand is therefore made in the amount of $300,000.00. Please respond with a reasonable offer of settlement within thirty (30) days, in compliance with Chapter 93A.

Sincerely,

Christopher R. Wurster, Esq.

10

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

UNITED STATES POSTAL SERVICE

● Sender: Please print your name, address, and ZIP+4® in this box●

CHRISTOPHER WORSTER
Nevins Bird Law
163 Main St.
Maynard, Ma 01754

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X *J. Townsend C-19*  ☐ Agent  ☒ Addressee

B. Received by (Printed Name)

*J.6 #16  C-19*

C. Date of Delivery  *4/1/2020*

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

*Pond Do*

3. Service Type

☐ Certified Mail®  ☐ Priority Mail Express™
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)  ☐ Yes

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

*Target*
*86 Orchard Hill Park Dr*
*Leominster, MA*
*01453*

2. Article Number
(Transfer from service label)

7019 0700 0001 7250 4887

PS Form 3811, July 2013     Domestic Return Receipt

# **EXHIBIT B**



**LEVINE-PIRO LAW**

**Melissa A. Levine-Piro, Esq.**
melissa@levinepirolaw.com

**Christopher R. Wurster, Esq.**
chris@levinepirolaw.com

**Alexandra D. Ressa, Esq.**
alexandra@levinepirolaw.com

**Amanda Castro, Esq.**
amanda@levinepirolaw.com

**Kathleen A. Murphy, Esq.**
katie@levinepirolaw.com

**Christine M. Boutin, Esq.**
Of Counsel
christine@levinepirolaw.com

163 Main Street
Maynard, MA
01754

(978) 637-2048
(978) 637-2182(f)

www.levinepirolaw.com

July 17, 2020

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

Colleen Hansen
Sedgwick Claims Management Services
P.O. Box 14453
Lexington, KY 40512-4453
Colleen.Hansen@sedgwickcms.com

| | |
|---|---|
| My Client: | Bonifacio Sta Maria |
| Claim No.: | 000267465G-001 |
| Your Insured: | Target Corporation |
| Date of Loss: | 7/15/2017 |

<u>**DEMAND FOR RELIEF PURSUANT TO M.G.L. c. 93A**</u>

Dear Ms. Hansen:

This letter is a demand for relief under Massachusetts General Laws Chapter 93A (the Commonwealth's so-called "Consumer Protection Act"), Section 9, and Massachusetts General Laws Chapter 176D, Section 3, Clause 9.

As you know, G.L. c. 93A, §9 allows a claimant to file a civil lawsuit for an insurance company's unfair claim settlement practices under Chapter 176D.[1] The Consumer Protection Act subjects insurers to exposure for double or treble damages, attorney's fees and related costs if there is a finding that the unlawful act complained of was entered into by the defendant knowingly or that the defendant failed to make a reasonable offer of settlement upon demand with knowledge or reason to know that the practice complained of violated the act.

As you also know, G.L. c. 176D, §3(9) defines unfair claim settlement practices to include an insurer:

- Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies (Clause 9(b));

---

[1] To the extent you argue that Sedgwick is functioning as a third party administrator, rather than an insurer, in this action, Sedgwick is still subject to Chapter 176D. <u>See Morrison v. Toys R Us</u>, 441 Mass. 451 (2004) (rejecting claim that a TPA is not subject to the "standards of fair dealing" imposed by Chapter 176D).

- Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies (Clause 9(c));

- Refusing to pay claims without conducting a reasonable investigation based upon all of the available information (Clause 9(d)); and

- Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear (Clause 9(f)).

The facts underlying this case demonstrate violations of Chapter 176D.

The relevant facts of this case are laid out in my April 15, 2020 letter to Sedgwick (directed to the prior claims agent, Sheryl Bruce). See Demand Letter to Sedgwick (attached without exhibits), Exhibit 1.

To summarize: On July 15, 2017, my client was injured in a fall at the Target store in Leominster, Massachusetts as a result of Target's negligence. Mr. Sta Maria fell on what appeared to be a wet floor in a high-traffic area of the store, near the checkout area, where numerous Target employees are regularly staffed and were aware or should have been aware of the dangerous condition. After the fall, Mr. Sta Maria was diagnosed with a concussion, which brought with it wide-ranging symptoms including headaches, memory and concentration issues, vision problems, and psychiatric symptoms. In addition, my client had severe neck, back, and shoulder pain, which necessitated physical therapy and chiropractic treatment. In the years that Mr. Sta Maria has been in chiropractic treatment, his neck pain has only improved slightly. Additionally, Mr. Sta Maria injured his elbow and wrist, requiring occupational therapy services. Mr. Sta Maria was also out of work due to his injuries for months and actually temporarily lost his job due to his extended leave of absence until I intervened with his employer to get him his job back.

At the time of my demand letter, Mr. Sta Maria had incurred medical bills of $44,096.77 and lost wages of $16,249.77.

In connection with this matter, I sent a demand, pursuant to M.G.L. c. 93A, for $300,000.00 by letter dated April 15, 2020 to Sedgwick, as explained above. I also sent a 93A demand letter, enclosing a copy of my demand to Sedgwick, directly to Target. See Demand Letter to Target, Exhibit 2.

To date, neither Sedgwick nor Target has formally acknowledged or responded to my 93A demand letters, and Sedgwick had failed to make an offer on this claim at all.

My demand letter to Sedgwick included medical records from Mr. Sta Maria's primary care provider, dated from just prior to the fall at Target, showing that, prior to the fall, Mr. Sta Maria had a clean bill of health and was not experiencing any of the issues that he began suffering from after the fall, nor did he have a history of any such issues.

Accordingly, the demand package that I sent Sedgwick on April 15, 2020 presented a claim for which liability was reasonably clear.

Despite this, you informed me by e-mail dated June 9, 2020, that you "will require some additional information in order to complete our evaluation in this matter." See E-mail exchange between C. Hansen and C. Wurster, Exhibit 3. You requested records for Mr. Sta Maria for the three years preceding the incident at Target, stating that "given the nature of your client's profession and the significant disc desiccation in his cervical spine, we will need prior records in order to rule out any prior complaints pertaining to his neck." This, despite the records you already had in your possession from just prior to the accident showing no current neck problems or history of neck problems.

In response, I directed you to the records you already had, but you maintained that "the chance of securing authority to make an offer without the prior medical records is slim."

As a result of Sedgwick's failure to make an offer when liability was reasonably clear, my client was forced to file suit against Target Corporation and will have to incur the substantial time and expense of litigation to pursue a claim that should have been resolved based on the demand package that was sent to you on April 15, 2020. Therefore, on June 29, 2020, Mr. Sta Maria filed suit against Target Corporation in Middlesex Superior Court.

Nevertheless, to make every effort to work with Sedgwick with a view towards resolution, I obtained my client's records for the three years prior to the fall at Target and provided them to you initially on July 7, 2020. See Exhibit 3; see also e-mail from C. Wurster to C. Hansen, re-sending records, dated July 8, 2020, Exhibit 4. These records totaled only 142 pages. Therefore, I requested that you provide me with a response, to include an offer of settlement, by July 15, 2020. You failed to do so.

Sedgwick has also taken an indefensible position with regard to the sharing of video footage of my client's fall. At some point after Target and Sedgwick had been placed on notice of this claim and Mr. Sta Maria's injuries by my office, Sedgwick represented to me that it was in possession of video footage from Target that showed my client's fall. Per the prior claims agent, Sheryl Bruce, this video did not support my client's contentions regarding his injuries. Sedgwick also stated by letter dated January 14, 2020 that my client was involved in a "relatively minor slip and fall to the ground" and that my client's "contentions that he struck his head and lost consciousness are not accurate . . .

[and] we do not expect a jury will consider any head injury in their evaluation of this claim." See Letter from Sedgwick dated 1/14/2020, Exhibit 5. This letter, containing conclusions about the nature of Mr. Sta Maria's claim, his injuries, and projections about what a jury would decide in this case, was written *prior to Sedgwick having a single medical record about my client's injuries.* This is outrageous. Regardless of what Target's video shows, my client's injuries, as evidenced by his voluminous medical records, speak for themselves, and it is not appropriate for Sedgwick to be drawing conclusions about the extent of his injuries without having received and reviewed a *single medical record* pertaining to his treatment.

Additionally, in order to continue to facilitate discussion about settlement, I asked that you share with me the video in your possession by e-mail dated June 29, 2020. See Exhibit 3. As grounds, I explained that, since I had just filed the Complaint in Superior Court (which I shared with you as a courtesy), I would be entitled to that video in discovery. You declined, with a rationale that can only be described as unintelligible.

As explained in detail above, Sedgwick has violated Chapter 176D through its handling of this claim because, among other things, Sedgwick has failed to effectuate a prompt, fair and equitable settlement of a claim in which liability has become reasonably clear. Liability is reasonably clear when "a reasonable person, with knowledge of the relevant facts and law would probably have concluded, for good reason, that the insured was liable to the plaintiff." O'Leary-Alison v. Metropolitan Property & Cas. Ins. Co., 52 Mass. App. Ct. 214, 217 (2001) (quoting Demeo v. State Farm Mut. Auto Ins. Co., 38 Mass. App. Ct. at 956-57).

As explained above, liability was reasonably clear based on the demand package dated April 15, 2020, which showed: that prior to the fall at Target, Mr. Sta Maria was in good health; the nature and extent of Mr. Sta Maria's injuries from the fall and treatment therefore; details surrounding Mr. Sta Maria's medical bills, lost wages, and pain and suffering.

The failure of Sedgwick to offer a fair and equitable settlement when liability was reasonably clear constitutes an unfair claim settlement practice under M.G.L. c. 176D § 3(9)(f) and an unfair and deceptive act or practice under M.G.L. c. 93A.

Demand is made in the amount of $300,000. As you know, Chapter 93A provides thirty (30) days for you to respond to this demand. If you consider Mr. Sta Maria's demand to be unacceptable, then it is respectfully requested that you set forth fully and substantially all reasons for that position.

Thank you for your courtesy and attention.

Sincerely,

Christopher R. Wurster, Esq.

# EXHIBIT 1



**LEVINE-PIRO LAW**

Melissa A. Levine-Piro, Esq.
melissa@levinepirolaw.com

Christopher R. Wurster, Esq.
chris@levinepirolaw.com

Alexandra D. Ressa, Esq.
alexandra@levinepirolaw.com

Amanda Castro, Esq.
amanda@levinepirolaw.com

Kathleen A. Murphy, Esq.
katie@levinepirolaw.com

Christine M. Boutin, Esq.
Of Counsel
christine@levinepirolaw.com

Jared J. Kelly, Esq.
jared@levinepirolaw.com

163 Main Street
Maynard, MA
01754

(978) 637-2048
(978) 637-2182(f)

www.levinepirolaw.com

April 15, 2020

VIA E-MAIL AND PRIORITY MAIL

Shery Bruce
Sedgwick Claims Management Services
P.O. Box 14453
Lexington, KY 40512-4453
Sheryl.Bruce@sedgwickcms.com

RE:   My Client:      Bonifacio Sta Maria
      Claim No.:      000267465G-001
      Your Insured:   Target Corporation
      Date of Loss:   7/15/2017

Dear Ms. Bruce:

As you know, Levine-Piro Law, P.C. represents Mr. Bonifacio Sta Maria in his claim for personal injuries stemming from a fall that occurred on July 15, 2017 at the Target store in Leominster, Massachusetts. This letter is a demand for settlement, sent pursuant to the Massachusetts Consumer Act, M.G.L. c. 93A, §9.

Your failure to make a reasonable, written tender of relief within **thirty (30) days** of this demand may result in Target's liability for multiple damages, costs, and reasonable attorney's fees.

I am sending you the following documents in hard copy and by secure download.

1.  Guest Incident Report regarding 7/15/17 incident (dated 7/17/17);
2.  Guest receipt dated 7/15/17 at 2:09PM;
3.  Emerson Hospital medical records, 1/1/17-6/28/18;
4.  Emerson Hospital medical records 6/28/18-10/19/19;
5.  Emerson Hospital medical bills 1/1/17-6/28/18;
6.  Emerson Hospital medical bills 6/28/18-10/19/19;
7.  Acton Medical Associates medical records, 1/1/17-6/27/18;
8.  Acton Medical Associates medical records, 6/27/18-4/1/19;
9.  Acton Medical Associates medical records, 7/20/18-11/5/19;
10. Acton Medical Associates medical bills, 1/1/17-6/27/18;
11. Acton Medical Associates medical bills, 6/27/18-4/1/19;
12. Acton Medical Associates medical bills, 7/20/18-11/5/19;
13. Barron Chiropractic medical records 12/22/17-4/8/19;

1

14. Barron Chiropractic medical records, 3/16/19-10/21/19;
15. Barron Chiropractic medical bills 12/22/17-4/8/19;
16. Barron Chiropractic medical bills, 3/16/19-10/21/19;
17. Katherine Imhoff, LMHC, medical records and bills 10/18/17-8/24/18;
18. Katherine Imhoff, LMHC, medical records and bills, 8/24/18-4/1/19
19. Employment and wage information

## I.    Background

On July 15, 2017, Mr. Sta Maria was at the Target store in Leominster, Massachusetts with his young daughter. Near the check-out area, Mr. Sta Maria slipped on water on the floor. At the time, he was holding his daughter. He briefly lost consciousness as a result of the fall. His daughter remained conscious, witnessing her father's fall and resulting loss of consciousness. It was terrifying for Mr. Sta Maria to go through this incident and realize that his daughter could have been injured as well.

Mr. Sta Maria describes hearing a sound when he hit the floor and feeling like his head had exploded. After he regained consciousness, his vision was blurry and he heard ringing in his ears. He could not immediately get up; he had to lay on the floor for several moments.

Mr. Sta Maria stated that, when he regained consciousness, he noticed that the area where he fell was wet, and there was a large area of wet floor that looked like it had been improperly mopped. The floor in the store was very smooth tile, meaning that a wet floor was particularly dangerous. Mr. Sta Maria, at the time of the incident, was wearing black work boots, so he had good traction, underscoring how slippery the floor in the store was.

After the fall, Mr. Sta Maria was helped by another customer. Target staff did not immediately attend to Mr. Sta Maria and only assisted him after he had already sat up and then stood up with the assistance of the other customer. Staff did not offer to fill out an incident report. Two days later, on July 17, 2017, at the urging of his sister, Mr. Sta Maria returned to Target to request that an incident report be filled out. The incident report confirms the above-mentioned details.

It is indisputable that this fall occurred as a result of the negligence of your insured, Target Corporation. Simply put, there was water on the floor in a commercial store. This should never have occurred. Moreover, there was no "wet floor" sign or other warning to customers regarding this danger. This water was near the check-out area, a high-traffic area of the store with many Target staff members available who should have seen this hazard. Accordingly, Target knew or should have known about the existence of this hazard.

2

## II.    <u>Damages</u>

**Acton Medical Associates**

Just a few days after the fall at Target, on July 18, 2018, Mr. Sta Maria reported to his primary care physician at Acton Medical Associates. Mr. Sta Maria "reported hearing a loud smack noise from the back of his head. He woke up a few second later surrounded by other people. . . . He noticed later in the day that he felt a slight forgetfulness [and] continued to have a mild sense of mental fog and fatigue." He also developed pain in his right trapezius, right elbow, right wrist and neck. Mr. Sta Maria was diagnosed with a concussion, acute neck pain, and right wrist pain. Records stated that "after mechanical fall and loss of consciousness very briefly, patient has been experiencing symptoms consistent with concussion." Note that Mr. Sta Maria had been to Acton Medical for a general health exam approximately one month earlier, where he received an essentially clean bill of health and was not experiencing any of the issues that he began suffering from after the fall nor did he have a history of any such issues.

Mr. Sta Maria was seen again at Acton Medical on July 21, 2017 for a follow up for his concussion and other injuries. Because his symptoms were not improving as quickly as expected, Mr. Sta Maria was referred to the Cantu Concussion Center.

At a follow up visit on September 7, 2017, Mr. Sta Maria reported ongoing headaches, symptoms of depression, and poor energy, as well as continued scapular, neck, elbow, and wrist pain. He was prescribed Amitryptiline.

Mr. Sta Maria had another follow up appointment on October 12, 2017. Headaches were improved with Amitryptiline, but Mr. Sta Maria was experiencing ongoing scapular pain. He was referred to Occupational Therapy.

On January 5, 2018, Mr. Sta Maria reported increased symptoms of depression, related to his concussion and resulting loss of employment. He had lost his job because he was unable to work due to his concussion symptoms. In addition to anxiety, difficulty sleeping, and decreased appetite, Mr. Sta Maria was also experiencing physical symptoms from his concussion. He was still enduring headaches and difficulty concentrating as well as neck pain.

Mr. Sta Maria had an evaluation on July 20, 2018, which noted headaches, depressed mood associated with post-concussive symptoms, difficulty with concentration and short-term memory. He was also experiencing upper back and neck symptoms and pain and tingling in his left arm. Mr. Sta Maria followed-up regarding his depression on August 17, 2018.

3

On September 28, 2018, Mr. Sta Maria again reported to Acton Medical. His mood was noted to be improving on Duloxetine, but he was still experiencing neck pain, headaches, and dizziness. While he was able to work, at times, his pain would flare up.

On December 12, 2018, Mr. Sta Maria returned to Acton Medical with continued anxiety and depression, problems sleeping, difficulty concentrating, neck pain and left post scalp pain, irritability, and anger. He was noted to be meditating several times per week to help with his symptoms.

Mr. Sta Maria reported to Acton Medical again on February 1, 2019. He had experienced no major improvement in pain in myofascial area/neck but was experiencing less irritability and more calm.

On October 18, 2019, Mr. Sta Maria reported to Acton Medical for a general health evaluation. He was diagnosed with ongoing chronic neck and lower back pain and post-concussive syndrome with mood symptoms.

**Cantu Concussion Center at Emerson Hospital**

Mr. Sta Maria was first seen at the Cantu Concussion Center on August 1, 2017 for symptoms beginning after his fall at Target. Immediately after the fall, Mr. Sta Maria felt wrist and neck pain, as well as confusion. On the date of his initial evaluation, Mr. Sta Maria reported balance issues, confusion, difficulty concentrating and remembering, dizziness, bell rung, drowsy, fatigue, feeling in a fog, feeling more emotional, feeling slowed down, headache, irritability, nausea, neck pain, nervousness, numbness, ringing in ears, sadness, sensitivity to light and noise, and sleeping problems. His head pain was at a 10/10. He reported "constant" neck pain that occasionally radiated into his right shoulder with numbness and tingling down to his right hand. Mr. Sta Maria's family reported that he was often repeating things. He was feeling anxious and sad with flashbacks to the fall. Mr. Sta Maria was diagnosed with a concussion with loss of consciousness, cervicogenic headaches, and neck pain.

At another visit on August 29, 2017, Mr. Sta Maria reported "little improvement." In fact, his headaches had worsened. In addition, Mr. Sta Maria reported severe neck pain with constant numbness and tingling down the right arm into all fingers. Mr. Sta Maria was now remaining out of work because his employer was unable to grant the accommodations his doctor had recommended. Additionally, Mr. Sta Maria reported blurred vision occasionally when reading, difficulty sleeping, depression, and anxiety. He had no previous history of depression or anxiety.

On October 10, 2017, Mr. Sta Maria reported some improvement, including in the frequency of his headaches, which were no longer constant. Neck pain had improved, but there was no

change in the numbness and tingling down his right arm into his right hand. Mr. Sta Maria was still out of work and unable to return to work. Mr. Sta Maria had another follow up appointment on October 17, 2017, where return to work was discussed, but he and his providers decided he was not yet ready.

## Injections

On November 14, 2017, Mr. Sta Maria returned to the Cantu Center. He had had cervical spine injections since his previous appointment. His symptoms had worsened since his previous visit and included confusion, difficulty concentrating and remembering, dizziness, bell rung, drowsy, fatigue, feeling in a fog, feeling more emotional, feeling slowed down, headaches, irritability, nausea, neck pain, nervousness, numbness, ringing in the ears, sadness, sensitivity to light and noise, sleeping problems, and visual problems. Mr. Sta Maria had been discharged from physical therapy because there was no marked improvement in neck pain.

On December 12, 2017, Mr. Sta Maria reported improvement in his concussion symptoms but continued severe neck pain. While his neck pain had initially improved, it subsequently worsened; Mr. Sta Maria rated it as 8/10 with tingling down his left arm. He noted that he was very anxious and depressed about his continued neck pain and consequently was seeing a therapist regularly. Mr. Sta Maria was discharged on this date from the Concussion Clinic.

## Spine Clinic at Emerson Hospital

On September 11, 2017, Mr. Sta Maria was seen at the Emerson Hospital Spine Clinic at the request of both the Cantu Concussion Center and his primary care physician, Dr. Girolamo. Dr. Arthur Lee noted that Mr. Sta Maria had been experiencing neck pain and cervicogenic headaches since his fall at Target. He was also suffering from left arm pain and right-hand numbness at times. Dr. Lee diagnosed post-concussive syndrome and possible cervical radiculopathy, as well as axial pain and cervicogenic headaches.

On October 5, 2017, Mr. Sta Maria reported to the Spine Clinic again. He reported continued cervical axial neck pain and headaches. His range of motion was "extremely limited," with pain at a 7 out of 10. Reviewing MRIs that had recently been performed, Dr. Lee noted disc herniations with mild impingement on the nerve roots. Dr. Lee recommended cervical facet injections.

Mr. Sta Maria had his first round of injections on October 20, 2017. He returned to Dr. Lee on November 2, 2017, with pain at a level 7 out of 10. Dr. Lee noted that Mr. Sta Maria had done well from the cervical injections, with about 60% improvement for about a week, but he had slowly started returning to baseline. Dr. Lee recommended another round of injections.

5

Mr. Sta Maria had another round of injections on December 1, 2017. He returned to Dr. Lee on December 14, 2017, with significant pain and multiple ADLs limited. His headaches were improved, but he was still experiencing neck pain and myofascial pain along the midline in the cervical spine. He recommended trigger point injections with Dr. Spinelli.

On January 3, 2018, Mr. Sta Maria reported to Dr. Spinelli in the Emerson Spine Program. Dr. Spinelli noted that Mr. Sta Maria's symptoms began after he fell at a Target store in July 2017. "He has been symptomatic ever since with bilateral neck pain and headaches. Pain is described as 7/10, sharp, aching, worse with increased activity in general." His "symptoms decrease function, quality of life, ability to perform activities of daily living." Dr. Spinelli stated that "his ongoing neck pain with headaches may be from chronic muscle spasm," and trigger point injections were performed.

Mr. Sta Maria returned to Dr. Spinelli on April 12, 2018 for continued bilateral neck pain and headaches. Dr. Spinelli noted that Mr. Sta Maria "has returned to work without restrictions despite the pain."

At this visit, Dr. Spinelli noted the following: "His ongoing neck pain with headaches may be from chronic muscle spasm. It could also be due to the . . . mild to moderate degenerative changes seen on MRI. Symptoms began after his fall at Target . . . and he has been symptomatic ever since. He was asymptomatic before the fall. He has tried numerous treatments to include giving things time, physical therapy, chiropractic, cervical facet injections, trigger point injections, but he remains symptomatic. At this point, I think it is reasonable to say that he has reached maximum medical improvement." At this time, Mr. Sta Maria had returned to work; Dr. Spinelli noted that "while this may cause some . . . increase in symptoms, I do not believe he is damaging his spine."

Mr. Sta Maria returned to the Spine Clinic on May 15, 2019. Dr. Spinelli noted that Mr. Sta Maria continued to be symptomatic despite multiple interventions. Dr. Spinelli recommended trigger point injections, which were performed on May 28, 2019 without significant benefit. Mr. Sta Maria followed up with Dr. Spinelli on June 24, 2019 and had another round of trigger point injections on July 18, 2019.

**Physical and Occupational Therapy at Emerson Hospital**

Physical Therapy

Mr. Sta Maria also did physical therapy at Emerson Hospital, beginning with an initial evaluation on August 8, 2017. Mr. Sta Maria was noted to have experienced confusion, dizziness, fogginess, and right upper extremity numbness following his fall at Target. His neck pain had increased since the fall. At a follow-up visit on August 16, 2017, Mr. Sta Maria

6

displayed balance deficits and visual blurriness. He also reported vertigo, ringing in his ears, nausea, headaches, concentration problems and memory loss.

Mr. Sta Maria was re-evaluated on September 21, 2017, with some improvement. On September 26, 2017, clinicians noted that Mr. Sta Maria's cervical pain was improved, but his radicular symptoms were unchanged. On October 11, 2017, it was noted that Mr. Sta Maria had been considering returning to work for financial reasons, not medical reasons, but ultimately had concluded that his pain levels were too high to work at that time.

On November 3, 2017, Mr. Sta Maria was discharged from PT. While he had made some improvements, his neck and low back pain had increased towards the end of his course of PT, and as a result, he was discharged due to lack of progress/regressions with cervical pain.

Between his initial evaluation on August 8, 2017 and his discharge on November 3, 2017, Mr. Sta Maria had 16 sessions of physical therapy.

<u>Occupational Therapy</u>

At the recommendation of his other providers, Mr. Sta Maria pursued occupational therapy services, also at Emerson Hospital, beginning with an initial evaluation on September 11, 2017. At this time, clinicians noted decreased grip strength, pinch strength of right upper extremity and localized elbow and wrist pain. OT was recommended to address right elbow and wrist pain, with continued PT to address cervical and radiating symptoms as well as the concussion. At this evaluation, Mr. Sta Maria was noted to be unable to lift or carry his daughter, lift or carry groceries or heavier items, push heavy doors, or push himself up. Mr. Sta Maria was given exercised to do at home to help his symptoms.

On October 26, 2017, clinicians noted increased grip strength in right elbow flexion but decreased grip with elbow in extension. His pain was lower, but still at a 5 out of 10. He was able to carry his daughter at this time, but only for periods of 5 minutes at a time.

Mr. Sta Maria had eight sessions of OT between his initial evaluation on September 11, 2017 and his final appointment on October 26, 2017.

**Barron Chiropractic**

Mr. Sta Maria pursued chiropractic treatment at Barron Chiropractic & Wellness Center, beginning with an initial evaluation on December 22, 2017 to address neck pain, shoulder pain, and back pain. Of note, Dr. Barron noted that Mr. Sta Maria presented with "visible anxiety and depression," which had only manifested since the fall and concussion. He reported difficulty with lifting, bending over, reaching overhead.

7

On December 27, 2018, Mr. Sta Maria rated his upper back/neck pain at an 8 out of 10, and chest discomfort at an 8 out of 10. Dr. Barron gave Mr. Sta Maria an impairment rating of 5-8%. His initial neck pain disability index score was 72%.

Mr. Sta Maria continued with significant pain for subsequent visits. For example, on March 16, 2018, Mr. Sta Maria rated his neck pain as 8 out of 10, his chest pain as 8 out of 10, and his upper back pain as 7 out of 10. On May 25, 2018, Mr. Sta Maria rated his neck pain as a 9; chest pain as an 8; upper back pain as an 8; and trapezius pain as an 8. Dr. Barron indicated his progress was "very slow." These pain levels continued for the majority of his chiropractic care, underscoring the severity of his condition.

Between his initial evaluation on December 22, 2017 and a re-evaluation on December 7, 2018, Mr. Sta Maria's neck pain disability index score only improved from 72% to 68%. Mr. Sta Maria remained in treatment with only modest benefits.

Mr. Sta Maria is still in treatment with Dr. Barron. At the time records were obtained on in October 2019, Mr. Sta Maria had seen Dr. Barron for forty (54) sessions since his first appointment on December 22, 2017.

**Mental Health Counseling – Katherine Imhoff, LMHC**

Mr. Sta Maria has seen Katherine Imhoff, LMHC for counseling services since October 18, 2017, for symptoms related to his fall at Target. Initially, Ms. Imhoff diagnosed Mr. Sta Maria with unspecified anxiety disorder and major depressive disorder due to his fall. His initial symptoms included sleeping problems, anxiety, and depressive symptoms, including depressed mood, sadness, and irritability, all revolving around the fall and not being able to work. In January 2018, Ms. Imhoff changed Mr. Sta Maria's diagnosis to Posttraumatic Stress Disorder (PTSD) due to Mr. Sta Maria's symptoms including anger and thinking about the fall over and over.

In the winter of 2018, Mr. Sta Maria became more depressed and anxious. His primary care provider prescribed Duloxetine.

Mr. Sta Maria's therapy sessions centered exclusively around his fall and how that impacted his life, work, and relationships.

**Lost Wages**

At the time of the collision, Mr. Sta Maria was employed full-time as a CNA at Life Care Center of Acton with a wage of $17.04/hour. Mr. Sta Maria averaged 37.5 hours per week prior to the accident.

Due to his injuries, Mr. Sta Maria missed 22.14 weeks of work from July 30, 2017 through February 2, 2018.

25.43 weeks x 37.5 hours x $17.04/hour = $16,249.77 in lost wages

Additionally, I must note that Mr. Sta Maria was actually temporarily terminated by Life Care Center of Acton because he had been out of work so long due *solely* to his injuries from this fall. I spoke directly with Life Care to get Mr. Sta Maria's job back, but the stress and anxiety caused by this incident were significant and added to Mr. Sta Maria's pain and suffering. In short, due to the negligence of your insured, Mr. Sta Maria not only could not work, he was then terminated because he had been out on leave for so long.

1. **Economic Damages**

   **Medicals**

   | | | |
   |---|---|---|
   | Emerson Hospital | | $30,117.86 |
   | Acton Medical | | $3,108.00 |
   | Barron Chiro | | $7,013.00 |
   | K. Imhoff | | $3,600.00 |
   | CVS (Prescriptions) | | $257.91 |
   | | Total | $44,096.77 |
   | Lost Wages | | $16,249.77 |
   | **TOTAL ECONOMIC DAMAGES** | | **$60,346.54** |

2. **Non-Economic Damages**

   Pain & suffering/limitation of activities        $239,653.46

   **TOTAL DEMAND: $300,000.00**

III. **Conclusion**

Liability is clear in this case. My client slipped and fell on a water in the busiest area of a commercial store, an area with the most staff around but no signs or other warnings telling customers to be careful of the wet floor.

Mr. Sta Maria's resulting injuries were severe. He was diagnosed with a concussion, which brought with it wide-ranging symptoms including headaches, memory and concentration issues, vision problems, and psychiatric symptoms. In addition, my client had severe neck,

back, and shoulder pain, which necessitated physical therapy and chiropractic treatment, the latter of which is still ongoing. In the years that Mr. Sta Maria has been in chiropractic treatment, his neck pain has only improved slightly. Additionally, Mr. Sta Maria injured his elbow and wrist, requiring occupational therapy services. My client was dealing with significant symptoms that impacted every aspect of his life.

Mr. Sta Maria's neck and back pain is so severe that he has had to try a variety of interventions, all with little to no long-term improvement.

In short, as a result of the fall, Mr. Sta Maria was simply unable to do the things he was normally accustomed to doing.

This includes work. At the time of the fall, Mr. Sta Maria was working as a CNA in a nursing home. Due to the fall, Mr. Sta Maria was out of work for approximately six months. Additionally, Mr. Sta Maria had to deal with the stress of being terminated (temporarily, until I intervened).

Mr. Sta Maria also experienced a variety of psychiatric symptoms, including depression, anxiety, and PTSD, as a result of the fall and resulting concussion. These issues have necessitated significant ongoing counseling services.

It is difficult to put into words the extent to which this fall upended my client's entire life. This is a case where pain and suffering was, and is, clear. Demand is therefore made in the amount of $300,000.00. Please respond with a reasonable offer of settlement within thirty (30) days, in compliance with Chapter 93A.

Sincerely,

Christopher R. Wurster, Esq.

10

# EXHIBIT 2



**LEVINE-PIRO LAW**

Melissa A. Levine-Piro, Esq.
melissa@levinepirolaw.com

Christopher R. Wurster, Esq.
chris@levinepirolaw.com

Alexandra D. Ressa, Esq.
alexandra@levinepirolaw.com

Amanda Castro, Esq.
amanda@levinepirolaw.com

Kathleen A. Murphy, Esq.
katie@levinepirolaw.com

Christine M. Boutin, Esq.
Of Counsel
christine@levinepirolaw.com

Jared J. Kelly, Esq.
jared@levinepirolaw.com

163 Main Street
Maynard, MA
01754

(978) 637-2048
(978) 637-2182(f)

www.levinepirolaw.com

April 15, 2020

VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Target
86 Orchard Hill Park Drive
Leominster, MA 01453

RE:   My Client:          Bonifacio Sta Maria
      Date of Loss:       7/15/2017

To Whom It May Concern:

As you know, Levine-Piro Law, P.C. represents Mr. Bonifacio Sta Maria in his claim for personal injuries stemming from a fall that occurred on July 15, 2017 at the Target store in Leominster, Massachusetts. This letter is a demand for settlement, sent pursuant to the Massachusetts Consumer Act, M.G.L. c. 93A, §9.

Your failure to make a reasonable, written tender of relief within **thirty (30)** days of this demand may result in Target's liability for multiple damages, costs, and reasonable attorney's fees.

Attached, please find a copy of the demand letter I am sending to Sheryl Bruce at Sedgwick CMS, your insurance carrier or third-party administrator. That letter is incorporated herein by reference. Target's violations of Chapter 93A are spelled out in the demand to Ms. Bruce. The medical records and bills referenced in that letter are available to you upon request, and they are being provided to Ms. Bruce.

For the reasons enumerated in my letter to Ms. Bruce, demand is made in the amount of $300,000.00. Please respond with a reasonable offer of settlement within thirty (30) days, in compliance with Chapter 93A.

Sincerely,

Christopher Wurster

Christopher R. Wurster, Esq.

CC: Sheryl Bruce (by e-mail_

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

CHRISTOPHER WORSTER
Revilo Bird Law
163 MAIN ST.
MAYNARD, Mn 01754

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

TARGET
PL ORCHARD HIII PARK Dr
LEOMINSTER, MA
01453

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X S Johnston C19

☐ Agent
☑ Addressee

B. Received by (Printed Name)
OS F/O C19

C. Date of Delivery
4/8/20

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail®
☐ Registered
☐ Insured Mail
☐ Priority Mail Express™
☐ Return Receipt for Merchandise
☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7019 0700 0001 7250 4887

PS Form 3811, July 2013        Domestic Return Receipt

# EXHIBIT 3

## Chris Wurster

| | |
|---|---|
| **From:** | Chris Wurster |
| **Sent:** | Tuesday, July 7, 2020 5:34 PM |
| **To:** | Hansen, Colleen A. |
| **Subject:** | RE: 000267465G-0001 - STA MARIA, BONIFACIO  - 07/15/2017 |

Colleen,

With respect, your email does not make sense to me. You stated that if litigation begins in earnest you might take a stronger position on defense, but I simply have no idea what your position is at this time because no offer has been made. The only information I have been provided with is from the prior adjuster, who represented that the video does not support some aspect of my client's claim. I can't imagine a stronger position than that. I also cannot imagine why, if that were true, you would not produce the video now in negotiations when you know you're months away from having to produce it anyway, so I can only conclude that the video does not show what it has been represented to show.

Due to this unfortunate position, I am not inclined to delay service, however, in good faith, I will see what your offer is after you review the records I have obtained. I have obtained records for my client from July 2014-July 2017 and will shortly send you an email sharing those with you through Citrix ShareFile. They show no prior neck/back issues and nothing that would explain his severe symptoms following the fall at Target.

Please provide me with your offer by July 15, 2020. The records are not voluminous, so they should not take long to go through.

Thanks.

--
Christopher R. Wurster, Esq.
Levine-Piro Law, P.C.
163 Main Street
Maynard, MA 01754
(978) 637-2048 / (978) 637-2182 (fax)
www.levinepirolaw.com

*Additional Offices in Quincy and Boston

**From:** Hansen, Colleen A. <Colleen.Hansen@sedgwick.com>
**Sent:** Thursday, July 2, 2020 12:09 PM
**To:** Chris Wurster <chris@levinepirolaw.com>
**Subject:** RE: 000267465G-0001 - STA MARIA, BONIFACIO - 07/15/2017

Hi Chris,
Thanks for the courtesy copy of the complaint.  I had suggested that you hold off on service just to allow time for you to gather and submit the additional information that we had requested in order to properly evaluate your client's claim. Unfortunately, we are unable to provide a copy of the video outside of discovery.  If you feel that you need to serve the complaint at this time, I understand.

Once we receive the additional information requested, we will be happy to review and complete an evaluation of your client's claim in an effort to resolve the matter.  However once the case is moved into litigation, it is possible that a stronger position concerning the defense of this matter will be taken.

Thanks,

**COLLEEN HANSEN** | Claims Team Lead - Assistant
Sedgwick | ⊙**TARGET** Guest Reporting Center
P.O. Box 14453 | Lexington, KY 40512-4453
Toll-Free 1-800-553-8723 | ext. 32334
Direct 612-313-2334 | Fax 1-800-922-9165
Email Colleen.Hansen@sedgwick.com
www.sedgwick.com | Caring counts℠
*For real-time information, please access your claim on mySedgwick.com*

🌐 **sedgwick.**

Sedgwick is operational and managing claims.
Visit our COVID-19 update center
for the latest pandemic-related resources.

---

**From:** Chris Wurster [mailto:chris@levinepirolaw.com]
**Sent:** Monday, June 29, 2020 12:23 PM
**To:** Hansen, Colleen A.
**Subject:** RE: 000267465G-0001 - STA MARIA, BONIFACIO - 07/15/2017

Hi Colleen,

Just a brief update. I e-filed our complaint in Superior Court today. A courtesy copy is attached. When I get the tracking order and a stamped, filed version of the complaint back from the Court, I'll provide a courtesy copy to you. You asked me to hold off on service of this, and I'm happy to do so, provided you will share with me now the video that Target has of the incident involving my client. I know from the prior adjuster that there is a video, but she was unwilling to share it with me. I will undoubtedly be entitled to it now that we are in litigation, and I feel that it is necessary for me to see it in order to properly engage in negotiations. Please provide it to me at your earliest convenience. If you are unwilling to do so, unfortunately, it would not benefit my client to hold off on service of the complaint.

We have requested the records you are seeking (3 years prior) and once those are received, I will send them over to you. I am certainly hopeful that we will be able to resolve this, but must take certain actions in order to protect my client's rights, and to that end, I need the video of the incident.

Thank you.

--
Christopher R. Wurster, Esq.
Levine-Piro Law, P.C.
163 Main Street
Maynard, MA 01754
(978) 637-2048 / (978) 637-2182 (fax)
www.levinepirolaw.com

*Additional Offices in Quincy and Boston

---

**From:** Chris Wurster
**Sent:** Tuesday, June 9, 2020 2:55 PM
**To:** Hansen, Colleen A. <Colleen.Hansen@sedgwick.com>
**Subject:** RE: 000267465G-0001 - STA MARIA, BONIFACIO - 07/15/2017

Understood. I've contacted my client about obtaining new releases to gather the info you are requesting. I certainly have no problem providing it, both as a general rule and because you would no doubt entitled to it in discovery in any event. We will also provide the Medicare form to you as well. I'll be back in touch with the form soon. As I'm sure you know, sometimes getting records can take a while depending on how "together" the medical records department at the provider's office is (!), but we'll get them as quickly as we can and provide them to you.

Thanks.

--
Christopher R. Wurster, Esq.
Levine-Piro Law, P.C.
163 Main Street
Maynard, MA 01754
(978) 637-2048 / (978) 637-2182 (fax)
www.levinepirolaw.com

*Additional Offices in Quincy and Boston

**From:** Hansen, Colleen A. <Colleen.Hansen@sedgwick.com>
**Sent:** Tuesday, June 9, 2020 2:52 PM
**To:** Chris Wurster <chris@levinepirolaw.com>
**Subject:** RE: 000267465G-0001 - STA MARIA, BONIFACIO - 07/15/2017

Hi Christopher,
I did get the email you sent to Sheryl Bruce and I understand that the statute is approaching. If you need to file to protect the statute of limitation while the additional information is being sought, I completely understand. I would suggest that you simply hold off on serving the complaint until absolutely necessary after filing to allow time to secure and submit the requested information to us.

Unfortunately, I am unable to make an offer until we have ruled out Medicare's involvement and the chance of securing authority to make an offer without the prior medical records is slim.

Thanks,

COLLEEN HANSEN | Claims Team Lead - Assistant
Sedgwick | ⊙TARGET Guest Reporting Center
P.O. Box 14453 | Lexington, KY 40512-4453
Toll-Free 1-800-553-8723 | ext. 32334
Direct 612-313-2334 | Fax 1-800-922-9165
Email Colleen.Hansen@sedgwick.com
www.sedgwick.com | Caring counts℠
*For real-time information, please access your claim on mySedgwick.com*



Sedgwick is operational and managing claims.
Visit our COVID-19 update center
for the latest pandemic-related resources.

**From:** Chris Wurster [mailto:chris@levinepirolaw.com]
**Sent:** Tuesday, June 9, 2020 1:40 PM
**To:** Hansen, Colleen A.
**Subject:** RE: 000267465G-0001 - STA MARIA, BONIFACIO - 07/15/2017

3

Hi Colleen,

Thank you for reaching out. Did you receive the email that I sent to Sheryl Bruce last week? As you may know, the SOL on this case runs in mid-July, and therefore, I will need to file suit on this case in the next couple of weeks.

I do not have my clients prior records. What I can tell you for now is that he has reported to me that he did not have any prior neck issues. There is also one visit from just prior to the accident at Target, which is in the records I provided to Sedgwick, that gives him an essentially clean bill of health.

Are you able to make any kind of offer at this time? I understand if you need to wait to look at the prior records, but given the SOL, I did want to ask to at least see if a resolution is going to be possible. We can also simply file suit and hopefully continue to negotiate after suit is filed with a view towards an early resolution of this case, as it is my view that protracted litigation does not serve anyone's interests.

Thank you.

--
Christopher R. Wurster, Esq.
Levine-Piro Law, P.C.
163 Main Street
Maynard, MA 01754
(978) 637-2048 / (978) 637-2182 (fax)
www.levinepirolaw.com

*Additional Offices in Quincy and Boston

From: Hansen, Colleen A. <Colleen.Hansen@sedgwick.com>
Sent: Tuesday, June 9, 2020 1:27 PM
To: Chris Wurster <chris@levinepirolaw.com>
Subject: 000267465G-0001 - STA MARIA, BONIFACIO - 07/15/2017

Good Afternoon Mr. Wurster,
I have taken over the handling of your client's claim and I have completed my review of the voluminous documents you had submitted. However, it appears that we will require some additional information in order to complete our evaluation in this matter.

Please provide prior records on your client for 3 years preceding the incident at Target.  Given the nature of your client's profession and the significant disc desiccation in his cervical spine, we will need prior records in order to rule out any prior complaints pertaining to his neck.

Also, we are required to determine whether or not your client is a Medicare Beneficiary prior to entering into any negotiations on a claim.  Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (MMSEA) added mandatory reporting requirements with respect to Medicare beneficiaries who receive settlements, judgments, awards or other payment from liability insurance, no-fault insurance, or workers' compensation. Accordingly, we must collect the information on the attached form to determine if we are required to report this claim pursuant to the MMSEA requirements.

Please complete Sections I and II of the enclosed form and return it to me. If you are unwilling to provide your complete Social Security Number, it is acceptable for you to provide the last 5 digits. If you are unwilling to provide any Social Security information, please also complete Section III and provide your reasoning in the space provided. Make sure you have signed the form before returning it to me.

If you have questions about this form or the MMSEA please go to: http://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/Mandatory-Insurer-Reporting For-Non-Group-Health-Plans/Overview.html or contact the Benefits Coordination

& Recovery Center (BCRC). BCRC Customer Service Representatives are available to assist you Monday through Friday, from 8:00 a.m. to 8:00 p.m., Eastern Time, except holidays, at toll-free lines: 1-855-798-2627 (TTY/TDD: 1-855-797-2627 for the hearing and speech impaired). Thank you for your anticipated cooperation.

Thanks,

**COLLEEN HANSEN | Claims Team Lead - Assistant**
**Sedgwick | ⊙TARGET** Guest Reporting Center
P.O. Box 14453 | Lexington, KY 40512-4453
Toll-Free 1-800-553-8723 | ext. 32334
Direct 612-313-2334 | Fax 1-800-922-9165
Email Colleen.Hansen@sedgwick.com
www.sedgwick.com | **Caring counts℠**
*For real-time information, please access your claim on mySedgwick.com*



Sedgwick is operational and managing claims.
Visit our COVID-19 update center
for the latest pandemic-related resources.

Any personal data acquired, processed or shared by us will be lawfully processed in line with applicable data protection legislation. If you have any questions regarding how we process personal data refer to our Privacy Notice https://www.sedgwick.com/global-privacy-policy. Any communication including this email and files/attachments transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. If this message has been sent to you in error, you must not copy, distribute or disclose of the information it contains and you must notify us immediately (contact is within the privacy policy) and delete the message from your system.

Any personal data acquired, processed or shared by us will be lawfully processed in line with applicable data protection legislation. If you have any questions regarding how we process personal data refer to our Privacy Notice https://www.sedgwick.com/global-privacy-policy. Any communication including this email and files/attachments transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. If this message has been sent to you in error, you must not copy, distribute or disclose of the information it contains and you must notify us immediately (contact is within the privacy policy) and delete the message from your system.

Any personal data acquired, processed or shared by us will be lawfully processed in line with applicable data protection legislation. If you have any questions regarding how we process personal data refer to our Privacy Notice https://www.sedgwick.com/global-privacy-policy. Any communication including this email and files/attachments transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. If this message has been sent to you in error, you must not copy, distribute or disclose of the information it contains and you must notify us immediately (contact is within the privacy policy) and delete the message from your system.

# EXHIBIT 4

## Chris Wurster

| | |
|---|---|
| **From:** | Chris Wurster |
| **Sent:** | Wednesday, July 8, 2020 11:54 AM |
| **To:** | Hansen, Colleen A. |
| **Subject:** | RE: Sta Maria records |
| **Attachments:** | 6.24.2020 Sta Maria, Bonifacio - Mass General Hospital Medical Records - Sec.pdf; 7.6.2020 Sta Maria, Bonifaciio - Acton Medical Associates Medical Records - Sec.pdf |

Sending (attached) as password-protected. I will have my assistant call you with the password.

--
Christopher R. Wurster, Esq.
Levine-Piro Law, P.C.
163 Main Street
Maynard, MA 01754
(978) 637-2048 / (978) 637-2182 (fax)
www.levinepirolaw.com

*Additional Offices in Quincy and Boston

---

**From:** Hansen, Colleen A. <Colleen.Hansen@sedgwick.com>
**Sent:** Wednesday, July 8, 2020 11:13 AM
**To:** Chris Wurster <chris@levinepirolaw.com>
**Subject:** RE: Sta Maria records

I am unable to access this. Could you please resend in some other format?

**From:** mail@sf-notifications.com [mailto:mail@sf-notifications.com]
**Sent:** Tuesday, July 7, 2020 4:35 PM
**To:** Hansen, Colleen A.
**Subject:** Sta Maria records

**CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.**

# Citrix ShareFile

| |
|---|
| Attorney Levine-Piro Law has sent you files.                    Expires 8/6/20 |
| To download this file, you must first activate your account and set your personal password. |
| A note from Attorney : |

Christopher R. Wurster, Esq.
Levine-Piro Law, P.C.
163 Main Street
Maynard, MA 01754
(978) 637-2048 / (978) 637-2182 (fax)
www.levinepirolaw.com

*Additional Offices in Quincy and Boston



Trouble with the above link? You can copy and paste the following URL into your web browser:
https://levinepirolaw.sharefile.com/d-36a2986f63444ec8?a=c361de88359b3792

ShareFile is a tool for sending, receiving, and organizing your business files online. It can be used as a password-protected area for sharing information with clients and partners, and it's an easy way to send files that are too large to e-mail.

Powered By Citrix ShareFile 2020

Any personal data acquired, processed or shared by us will be lawfully processed in line with applicable data protection legislation. If you have any questions regarding how we process personal data refer to our Privacy Notice https://www.sedgwick.com/global-privacy-policy. Any communication including this email and files/attachments transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. If this message has been sent to you in error, you must not copy, distribute or disclose of the information it contains and you must notify us immediately (contact is within the privacy policy) and delete the message from your system.

# **EXHIBIT 5**

Sedgwick Claims Management Services, Inc.
P O Box 14453
Lexington, KY 40512-4453



sedgwick.

January 14, 2020

Christopher R. Wurster, Attorney at Law
Levine-Piro Law, P.C.
63 Great Road, Suite 101
Maynard, MA 01754

Re:   Our Client:        Target Corporation
      Our Claim File:    000267465G-0001
      Date of Loss:      07/15/2017
      Your Client:       Bonifacio Sta Maria

Dear Mr. Wurster:

Please be advised that I have been reassigned the handling of the above captioned claim.  Please direct all future correspondence to my attention.

In reviewing the file notes, it appears that your client has undergone extensive medical care following this incident.  I note that we have previously advised you that this incident shows a relatively minor slip and fall to the ground and that your client's contentions that he struck his head and lost consciousness are not accurate. While Mr. Sta Maria may have sustained an injury in this accident, we do not expect that a jury will consider any head injury in their evaluation of this claim.

At this time we would again ask that you submit any material that you would like considered as part of this claim.  Given the prolonged care, it will be necessary for us to have access to your client's medical records since January 1, 2015 to determine whether or not the care he has been receiving was due to injuries sustained in the accident at Target or due to prior medical conditions.  Please provide those records to us.  If you would like us to secure those records independently, please have your client complete and return the medical authorization form and provider list that was sent to your office back on August 10, 2017.

Thank you in advance for your attention to this matter.  I look forward to your response.

Sincerely,

Scott Robbins

Scott Robbins
Claims Team Lead - Assistant
Target Corporation Guest Reporting Center
(612)344-0542
Scott.Robbins@sedgwick.com
Sedgwick manages claims on behalf of TARGET CORPORATION.

File Number:  000267465G-0001





Target Guest Reporting Center | P.O. Box 14453 | Lexington, KY 40512-4453





## Client Information Form
File # 000267465G-0001

*Please complete this form and return*          **Firm Tax ID Number:** _____

**Client Name:** _____

**Client Address:** _____

**Date of Birth:** _____        **Social Security Number:** _____

**Marital Status:** _____        **Name of Spouse:** _____

**Employed at the time of incident:** _____    **Name of Employer:** _____

**Claiming Wage Loss:** _____        **Salary/Hourly Wage Rate:** _____

**Claimed Injuries:** _____

**Prior Injuries:** _____

**Theory of Liability:** _____

_____

**Treating Providers:**

1      Doctor/Facility:
       Address:
       Phone:
       Dates Treated:

2.     Doctor/Facility:
       Address:
       Phone:
       Dates Treated:

3.     Doctor/Facility:
       Address:
       Phone:
       Dates Treated:

4.     Doctor/Facility:
       Address:
       Phone:
       Dates Treated:

5.     Doctor/Facility:
       Address:
       Phone:
       Dates Treated:

File Number:  000267465G-0001





Target Guest Reporting Center | P.O. Box 14453 | Lexington, KY 40512-4453



1/14/2020          000267465G0001          562020011417759



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

COLLEEN HANSON
Sedgwick Claims Manage
PO BOX 14453
Lexington Ky 40512

9590 9402 5189 9122 6949 74

2. Article Number (Transfer from service label)

7019 0700 0001 7250 4894

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ___PATRICK AJAYI___
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

PATRICK AJAYI

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

LEXINGTON KENTUCKY USPS AUG 10 2020 40511-9791

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ _____ Mail
☐ _____ Mail Restricted Delivery
   00)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

USPS TRACKING #

9590 9402 5189 9122 6949 74

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

Christopher Wurster Esq.
Levine-Piro Law
163 Main Street
Maynard Ma 01754

3

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

MIDDLESEX SUPERIOR COURT
C.A. No: 20-1494

)
BONIFACIO STA MARIA,                 )
)
    Plaintiff,                       )
)
v.                                   )
)
TARGET CORPORATION,                  )
)
    Defendant                        )
)

6/29/2020

NH

**RECEIVED**

## MOTION FOR SPECIAL PROCESS SERVER

NOW COMES the Plaintiff, Bonifacio Sta Maria ("Plaintiff"), in the above-captioned matter

and, pursuant to Mass. R. Civ. P. 4(c) hereby respectfully moves this Honorable Court to appoint

Robert Sweeney of Constable Services, Cambridge, MA, or some other constable licensed to

serve civil process who is over the age of 18 and not a party to this action, as a special process

server in this action.

Respectfully submitted,

Dated: 6/29/2020

The Plaintiff,
BONIFACIO STA MARIA,
By His Attorney,

6/30/2020 Motion Allowed

Attest: _____

Deputy Assistant Clerk

( Doolin J.)

/s/ Christopher Wurster
Christopher Wurster, Esq. (BBO #679835)
Levine-Piro Law, P.C.
163 Main Street
Maynard, MA 01754
978-637-2048
Fax 978-737-2182
chris@levinepirolaw.com

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|

**PLAINTIFF(S):** BONIFACIO STA MARIA

**ADDRESS:** 163 MAIN STREET

MAYNARD, MA 01754

**COUNTY** Middlesex

**DEFENDANT(S):** TARGET CORPORATION

**ATTORNEY:** CHRISTOPHER R. WURSTER, ESQ.

**ADDRESS:** LEVINE-PIRO LAW, P.C.

163 MAIN STREET

MAYNARD, MA 01754

**BBO:** 679835

**ADDRESS:** 1000 NICOLLET MALL

MINNEAPOLIS, MN 55403

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B20 | Personal Injury - Slip and Fall | F | ☒ YES   ☐ NO |

***If "Other" please describe:**

| Is there a claim under G.L. c. 93A? | Is this a class action under Mass. R. Civ. P. 23? |
|---|---|
| ☒ YES   ☐ NO | ☐ YES   ☒ NO |

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

#### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ................................................................................... $_____
2. Total doctor expenses ..................................................................................... $_____
3. Total chiropractic expenses ............................................................................ $_____
4. Total physical therapy expenses ..................................................................... $_____
5. Total other expenses (describe below) ............................................................ $_____

Subtotal (A): $> 45,000

6/29/2020          NH

B. Documented lost wages and compensation to date ....................................................... $> 16,000
C. Documented property damages to date ........................................................................ $_____
D. Reasonably anticipated future medical and hospital expenses ...................................... $_____
E. Reasonably anticipated lost wages ............................................................................... $_____
F. Other documented items of damages (describe below) ................................................. $_____

Pain and suffering                    RECEIVED

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
Neck, back, shoulder injury; concussion and post-concussion syndrome with psych symptoms

TOTAL (A-F):$ > 61,000

#### CONTRACT CLAIMS
(attach additional sheets as necessary)

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

TOTAL: $_____

**Signature of Attorney/ Unrepresented Plaintiff: X**                    **Date:** Jun 29, 2020

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record: X**                    **Date:** Jun 29, 2020

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**AC Actions Involving the State/Municipality \***

| | | |
|---|---|---|
| AA1 | Contract Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AB1 | Tortious Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AC1 | Real Property Action involving Commonwealth, Municipality, MBTA etc. | (A) |
| AD1 | Equity Action involving Commonwealth, Municipality, MBTA, etc. | (A) |
| AE1 | Administrative Action involving Commonwealth, Municipality, MBTA,etc. | (A) |

**CN Contract/Business Cases**

| | | |
|---|---|---|
| A01 | Services, Labor, and Materials | (F) |
| A02 | Goods Sold and Delivered | (F) |
| A03 | Commercial Paper | (F) |
| A04 | Employment Contract | (F) |
| A05 | Consumer Revolving Credit - M.R.C.P. 8.1 | (F) |
| A06 | Insurance Contract | (F) |
| A08 | Sale or Lease of Real Estate | (F) |
| A12 | Construction Dispute | (A) |
| A14 | Interpleader | (F) |
| BA1 | Governance, Conduct, Internal Affairs of Entities | (A) |
| BA3 | Liability of Shareholders, Directors, Officers, Partners, etc. | (A) |
| BB1 | Shareholder Derivative | (A) |
| BB2 | Securities Transactions | (A) |
| BC1 | Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. | (A) |
| BD1 | Intellectual Property | (A) |
| BD2 | Proprietary Information or Trade Secrets | (A) |
| BG1 | Financial Institutions/Funds | (A) |
| BH1 | Violation of Antitrust or Trade Regulation Laws | (A) |
| A99 | Other Contract/Business Action - Specify | (F) |

**\*** Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

**†** Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

| | | |
|---|---|---|
| D01 | Specific Performance of a Contract | (A) |
| D02 | Reach and Apply | (F) |
| D03 | Injunction | (F) |
| D04 | Reform/ Cancel Instrument | (F) |
| D05 | Equitable Replevin | (F) |
| D06 | Contribution or Indemnification | (F) |
| D07 | Imposition of a Trust | (A) |
| D08 | Minority Shareholder's Suit | (A) |
| D09 | Interference in Contractual Relationship | (F) |
| D10 | Accounting | (A) |
| D11 | Enforcement of Restrictive Covenant | (F) |
| D12 | Dissolution of a Partnership | (F) |
| D13 | Declaratory Judgment, G.L. c. 231A | (A) |
| D14 | Dissolution of a Corporation | (F) |
| D99 | Other Equity Action | (F) |

**PA Civil Actions Involving Incarcerated Party †**

| | | |
|---|---|---|
| PA1 | Contract Action involving an Incarcerated Party | (A) |
| PB1 | Tortious Action involving an Incarcerated Party | (A) |
| PC1 | Real Property Action involving an Incarcerated Party | (F) |
| PD1 | Equity Action involving an Incarcerated Party | (F) |
| PE1 | Administrative Action involving an Incarcerated Party | (F) |

**TR Torts**

| | | |
|---|---|---|
| B03 | Motor Vehicle Negligence - Personal Injury/Property Damage | (F) |
| B04 | Other Negligence - Personal Injury/Property Damage | (F) |
| B05 | Products Liability | (A) |
| B06 | Malpractice - Medical | (A) |
| B07 | Malpractice - Other | (A) |
| B08 | Wrongful Death - Non-medical | (A) |
| B15 | Defamation | (A) |
| B19 | Asbestos | (A) |
| B20 | Personal Injury - Slip & Fall | (F) |
| B21 | Environmental | (F) |
| B22 | Employment Discrimination | (F) |
| BE1 | Fraud, Business Torts, etc. | (A) |
| B99 | Other Tortious Action | (F) |

**RP Summary Process (Real Property)**

| | | |
|---|---|---|
| S01 | Summary Process - Residential | (X) |
| S02 | Summary Process - Commercial/ Non-residential | (F) |

**RP Real Property**

| | | |
|---|---|---|
| C01 | Land Taking | (F) |
| C02 | Zoning Appeal, G.L. c. 40A | (F) |
| C03 | Dispute Concerning Title | (X) |
| C04 | Foreclosure of a Mortgage | (X) |
| C05 | Condominium Lien & Charges | (X) |
| C99 | Other Real Property Action | (F) |

**MC Miscellaneous Civil Actions**

| | | |
|---|---|---|
| E18 | Foreign Discovery Proceeding | (X) |
| E97 | Prisoner Habeas Corpus | (X) |
| E22 | Lottery Assignment, G.L. c. 10, § 28 | (X) |

**AB Abuse/Harassment Prevention**

| | | |
|---|---|---|
| E15 | Abuse Prevention Petition, G.L. c. 209A | (X) |
| E21 | Protection from Harassment, G.L. c. 258E | (X) |

**AA Administrative Civil Actions**

| | | |
|---|---|---|
| E02 | Appeal from Administrative Agency, G.L. c. 30A | (X) |
| E03 | Certiorari Action, G.L. c. 249, § 4 | (X) |
| E05 | Confirmation of Arbitration Awards | (X) |
| E06 | Mass Antitrust Act, G.L. c. 93, § 9 | (A) |
| E07 | Mass Antitrust Act, G.L. c. 93, § 8 | (X) |
| E08 | Appointment of a Receiver | (X) |
| E09 | Construction Surety Bond, G.L. c. 149, §§ 29, 29A | (A) |
| E10 | Summary Process Appeal | (X) |
| E11 | Worker's Compensation | (X) |
| E16 | Auto Surcharge Appeal | (X) |
| E17 | Civil Rights Act, G.L. c.12, § 11H | (X) |
| E24 | Appeal from District Court Commitment, G.L. c.123, § 9(b) | (X) |
| E25 | Pleural Registry (Asbestos cases) | |
| E94 | Forfeiture, G.L. c. 265, § 56 | (X) |
| E95 | Forfeiture, G.L. c. 94C, § 47 | (F) |
| E99 | Other Administrative Action | (X) |
| Z01 | Medical Malpractice  - Tribunal only, G.L. c. 231, § 60B | (F) |
| Z02 | Appeal Bond Denial | (X) |

**SO Sex Offender Review**

| | | |
|---|---|---|
| E12 | SDP Commitment, G.L. c. 123A, § 12 | (X) |
| E14 | SDP Petition, G.L. c. 123A, § 9(b) | (X) |

**RC Restricted Civil Actions**

| | | |
|---|---|---|
| E19 | Sex Offender Registry, G.L. c. 6, § 178M | (X) |
| E27 | Minor Seeking Consent, G.L. c.112, § 12S | (X) |

### TRANSFER YOUR SELECTION TO THE FACE SHEET

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES  ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF -** The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT -** If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
## MAY RESULT IN DISMISSAL OF THIS ACTION.

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2081CV01494 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Sta Maria, Bonifacio vs. Target Corporation | Michael A. Sullivan, Clerk of Court Middlesex County |
|---|---|

| TO: Christopher Wurster, Esq. Levine-Piro Law, PC 163 Main St Maynard, MA 01754 | COURT NAME & ADDRESS Middlesex Superior – Lowell 370 Jackson Street Lowell, MA 01852 |
|---|---|

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION**                                      **DEADLINE**

|  | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court |  | 09/28/2020 |  |
| Response to the complaint filed (also see MRCP 12) |  | 10/27/2020 |  |
| All motions under MRCP 12, 19, and 20 | 10/27/2020 | 11/27/2020 | 12/28/2020 |
| All motions under MRCP 15 | 10/27/2020 | 11/27/2020 | 12/28/2020 |
| All discovery requests **and depositions** served and non-expert depositions completed | 04/26/2021 |  |  |
| All motions under MRCP 56 | 05/25/2021 | 06/24/2021 |  |
| Final pre-trial conference held and/or firm trial date set |  |  | 10/22/2021 |
| Case shall be resolved and judgment shall issue by |  |  | 06/29/2022 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 06/30/2020 | ASSISTANT CLERK Brian F Burke | PHONE (978)453-0201 |
|---|---|---|

Date/Time Printed: 06-30-2020 11:22:42                                                                                SCV020i 08/2018

Sedgwick Claims Mgmt Services Inc
84 State St.
Boston, MA

BOB SWEENEY
CONSTABLE SERVICES
PO BOX 80018
STONEHAM MA 02180